**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| CHARLES CLINTON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BAXTER INTERNATIONAL INC., THE BOARD OF DIRECTORS OF BAXTER INTERNATIONAL INC., THE COMPENSATION COMMITTEE OF THE BOARD OF DIRECTORS OF BAXTER INTERNATIONAL INC., THE BAXTER INTERNATIONAL INC. ADMINISTRATIVE COMMITTEE, and THE INVESTMENT COMMITTEE OF THE BAXTER INTERNATIONAL INC. AND SUBSIDIARIES U.S. RETIREMENT SAVINGS PLAN,<br><br>Defendants. | **CIVIL ACTION NO.**: |

**<u>COMPLAINT</u>**

Plaintiff, Charles Clinton, ("Plaintiff"), by and through his attorneys, on behalf of the Baxter International Inc. and Subsidiaries U.S. Retirement Savings Plan (f/k/a the Baxter International Inc. and Subsidiaries Incentive Investment Plan) (the "Plan"),[1] himself and all others similarly situated, states and alleges as follows:

---

[1] "Effective October 1, 2020, the Baxter International Inc. and Subsidiaries Incentive Investment Plan was renamed the Baxter International Inc. and Subsidiaries U.S. Retirement Savings Plan." Baxter International Inc. and Subsidiaries U.S. Retirement Savings Plan, amended and restated effective January 1, 2021 ("Plan Doc."), at 1. The Plan is a legal entity that can sue and be sued. ERISA § 502(d)(1), 29 U.S.C. § 1132(d)(1). However, in a breach of fiduciary duty action such as this, the Plan is not a party. Rather, pursuant to ERISA § 409, and the law interpreting it, the relief requested in this action is for the benefit of the Plan and its participants.

## I.     INTRODUCTION

1.      This is a class action brought pursuant to §§ 409 and 502 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1109 and 1132, against the Plan's fiduciary, Baxter International Inc. ("Baxter" or the "Company"), the Board of Directors of Baxter (the "Board"), the Compensation Committee of the Board (the "Compensation Committee"), the Baxter International Inc. Administrative Committee (the "Administrative Committee"), and the Investment Committee of the Plan (the "Investment Committee") (collectively, the Company, the Board, the Compensation Committee, the Administrative Committee and the Investment Committee are referred to as the "Defendants") for breaches of its fiduciary duties.

2.      The Plan is a defined contribution retirement plan, established pursuant to 29 U.S.C. § 1002(2)(A) and § 1002(34) of ERISA, that enables eligible participants to make tax-deferred contributions from their salaries to the Plan. See Independent Auditor's Report attached to the 2023 Form 5500 for the Plan ("2023 Auditor's Report"), at 6.

3.      To safeguard plan participants and beneficiaries, ERISA imposes strict fiduciary duties of loyalty and prudence upon employers and other plan fiduciaries. Fiduciaries must act "solely in the interest of the participants and beneficiaries," 29 U.S.C. § 1104(a)(1)(A), with the "care, skill, prudence, and diligence" that would be expected in managing a plan of similar scope. 29 U.S.C. § 1104(a)(1)(B).  These twin fiduciary duties are "the highest known to the law." *Halperin v. Richards*, 7 F.4th 534, 546 (7th Cir. 2021) .

4.      The Department of Labor ("DOL") has explicitly stated that employers are held to a "high standard of care and diligence" and must, among other duties, both "establish a prudent

process for selecting investment options and service providers."[2]; *see also Tibble v. Edison Int'l*, 135 S. Ct. 1823, 1823 (2015) ("*Tibble I*") (reaffirming the ongoing fiduciary duty to monitor a plan's investment options).

5.     Under 29 U.S.C. § 1104(a)(1), a plan fiduciary must give substantial consideration to the cost of investment options. "Wasting beneficiaries' money is imprudent. In devising and implementing strategies for the investment and management of trust assets, trustees are obligated to minimize costs." Uniform Prudent Investor Act (the "UPIA"), § 7.

6.     "The Restatement … instructs that 'cost-conscious management is fundamental to prudence in the investment function,' and should be applied 'not only in making investments but also in monitoring and reviewing investments.'" *Tibble v. Edison Int'l*, 843 F.3d 1187, 1197-98 (9th Cir. 2016) (*en banc*) (quoting Restatement (Third) of Trusts, § 90, cmt. b) ("*Tibble II*").

7.     Additional fees of only 0.18% or 0.4% can have a large effect on a participant's investment results over time because "[b]eneficiaries subject to higher fees … lose not only money spent on higher fees, but also lost investment opportunity; that is, the money that the portion of their investment spent on unnecessary fees would have earned over time." *Tibble II*, 843 F.3d at 1198 ("It is beyond dispute that the higher the fees charged to a beneficiary, the more the beneficiary's investment shrinks.").

8.     The Supreme Court recently reiterated that interpreting "ERISA's duty of prudence in light of the common law of trusts" a fiduciary "has a continuing duty of some kind to monitor investments and remove imprudent ones" and a plaintiff may allege that a fiduciary breached the

---

[2] *See* U.S. Dep't of Labor, *A Look at 401(k) Plan Fees*, (Sept. 2019), at 2, available at https://www.dol.gov/sites/dolgov/files/EBSA/about-ebsa/our-activities/resource-center/publications/a-look-at-401k-plan-fees.pdf (last visited July 24, 2024).

duty of prudence by failing to properly monitor investments and remove imprudent ones. *Hughes v. Northwestern Univ.*, 142 S. Ct. 737, 741 (2022).

9.      Plaintiff alleges that during the putative Class Period, Defendants, as "fiduciaries" of the Plan, as that term is defined under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), breached the duties it owed to the Plan, to Plaintiff, and to the other participants of the Plan by, *inter alia*, failing to objectively and adequately review the Plan's investment portfolio, initially and on an ongoing basis, with due care to ensure that each investment option was prudent, in terms of performance.

10.      At all times during the Class Period, the Plan had over two billion dollars in assets under management. At the start of the Class Period in 2019, the Plan had $2,704,852,380 in assets under management. *See* 2019 Form 5500 for the Plan ("2019 Form 5500"), Schedule H at 2.

11.      By 2023, the Plan had $4,253,091,736 in assets under management. *See* 2023 Form 5500 for the Plan ("2023 Form 5500"), Schedule H at 2.

12.      The Plan's assets under management qualifies it as a jumbo plan in the defined contribution plan marketplace, and among the largest plans in the United States.  In 2021, only 0.2 percent (1,011 of 641,747) of plans in the country had more than $1 billion in assets under management.[3] In addition, this was true at the start of the Class Period in 2019 where only 0.1 percent (776 of 603,217) of 401(k) plans in the country were as large as the Plan.[4]

13.      As a jumbo plan, the Plan had substantial bargaining power regarding the fees and expenses that were charged against participants' investments.

---

[3] *See* The BrightScope/ICI Defined Contribution Plan Profile: A Close Look at Plans, 2021 at Ex. 1.2, p. 7., available at https://www.ici.org/system/files/2024-08/24-ppr-dcplan-profile-401k.pdf.

[4] *See* The BrightScope/ICI Defined Contribution Plan Profile: A Close Look at 401(k) Plans, 2019 at Ex. 1.2, p. 7, available at  https://www.ici.org/system/files/2022-09/22-ppr-dcplan-profile-401k.pdf.

14.     The Plan is also large in terms of the number of its participants. At the beginning of the Class Period, the Plan had 20,912 participants. *See* 2019 Form 5500, at 2. By 2023, the Plan had 29,238 participants. *See* 2023 Form 5500, at 2. For comparison, according to information derived from ERISApedia.com's database, a service that compiles all Form 5500s filed with the Dept. of Labor ("DOL") by retirement plans, in 2020, there were only 194 defined contribution plans (401k, 401a, and 403b) in the country with between 20,000 and 29,999 participants with account balances.

15.     With regard to the Plan's investments, Defendants breached their fiduciary duty of prudence by selecting and/or maintaining a certain stable-value investment with lower crediting rates when compared to available similar or identical investments with higher crediting rates. The crediting rate is the guaranteed rate of return for the investment fund.

16.     Specifically, Defendants allowed substantial assets in the Plan to be invested in a Stable Income Fund ("Baxter SIF"), that invested in synthetic guaranteed investment contracts ("GICs") offered by Metropolitan Tower Life Insurance Company, Prudential Insurance Company of America, RGA Reinsurance Company, and Voya Retirement Insurance and Annuity Company (the "Insurance Companies"), that provided significantly lower rates of return than comparable stable value funds that Defendants could have made available to Plan participants.

17.     A prudent fiduciary would not have included this underperforming investment option that also carried significantly more risk than other investment options that had similar goals, *i.e.,* preservation of investment assets.

18.     The Insurance Companies benefited significantly from participants in the Plan investing in the Baxter SIF. A prudent fiduciary who adequately monitored the Plan's investments and placed the interests of participants in the Plan above all would have recognized that the Baxter

SIF was benefitting the Insurance Companies at the expense of the participants in the Plan. The investments in the Baxter SIF were held and invested by the Insurance Companies, which kept the spread (the difference between the amount it earned on the investment and the amount it paid to the Plan's participants). The crediting rates that the Insurance Companies provided to the Plan were and are so low that the Insurance Companies reaped a windfall on the spread.

19.     During the putative Class Period, Defendants, as "fiduciaries" of the Plan, as that term is defined under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), breached the duties owed to the Plan, to Plaintiff, and to the other participants of the Plan by, *inter alia*, failing to objectively and adequately review the Plan's investment portfolio with due care to ensure that each investment option was prudent, in terms of cost and performance.

20.     Defendants' mismanagement of the Plan, to the detriment of participants and beneficiaries, constitutes a breach of the fiduciary duties of prudence, in violation of 29 U.S.C. § 1104. Their actions were contrary to actions of a reasonable fiduciary and cost the Plan and its participants millions of dollars.

21.     Based on this conduct, Plaintiff asserts claims against Defendants for breach of the fiduciary duty of prudence (Count I) and failure to monitor fiduciaries (Count II).

## II.     JURISDICTION AND VENUE

22.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it is a civil action arising under the laws of the United States, and pursuant to 29 U.S.C. § 1332(e)(1), which provides for federal jurisdiction of actions brought under Title I of ERISA, 29 U.S.C. § 1001, *et seq*.

23.     This Court has personal jurisdiction over Defendants because the Plan is administered in this District meaning Baxter transacts business in this District, resides in this

District, and/or has significant contacts with this District, and because ERISA provides for nationwide service of process.

24.     Venue is proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because some or all of the violations of ERISA occurred in this District and Defendants reside and may be found in this District. Venue is also proper in this District pursuant to 28 U.S.C. § 1391 because Baxter does business in this District and a substantial part of the events or omissions giving rise to the claims asserted herein occurred within this District.

## III.    PARTIES

### Plaintiff

25.     Plaintiff, Charles Clinton ("Clinton"), resides in Spring Grove, Illinois. During his employment, Plaintiff Clinton participated in the Plan. Clinton invested in the Baxter SIF in the Plan and suffered injury to his Plan account due to the significant underperformance of the Baxter SIF.

26.     Plaintiff has standing to bring this action on behalf of the Plan because he participated in the Plan and was injured by Defendants' unlawful conduct. Plaintiff is entitled to receive benefits in the amount of the difference between the value of his account currently, or as of the time his account was distributed, and what his account is or would have been worth, but for Defendants' breaches of fiduciary duties as described herein.

27.     Plaintiff did not have knowledge of all material facts necessary to understand that Defendants breached their fiduciary duties and engaged in other unlawful conduct in violation of ERISA until shortly before this suit was filed.

### Defendants

#### *Company Defendant*

7

28.     Baxter is the sponsor of the Plan and a named fiduciary of the Plan with a principal place of business at One Baxter Parkway, Deerfield, Illinois. *See* 2023 Auditor's Report, at 6 ("The Plan was created for the purpose of providing retirement benefits to United States employees of Baxter International Inc. (the Sponsor or the Company) and its subsidiaries."). Baxter, through its subsidiaries, provides a portfolio of healthcare products in the United States.

29.     The Company is a fiduciary of the Plan, within the meaning of ERISA Section 3(21)(A), 29 U.S.C. § 1002(21)(A). Baxter, directly or by acting through its Board, appointed the Investment Committee. *See* Plan Doc., at 61 ("The Investment Committee, consisting of at least three persons, will be appointed by the Board of Directors or its delegate."). Further, the Administrative Committee was appointed through Baxter or its Compensation Committee of the Board. *See id*. ("The Administrative Committee, consisting of at least three persons, will be appointed by the Compensation Committee of the Board of Directors."). Under ERISA, fiduciaries with the power to appoint have a concomitant fiduciary duty to monitor and supervise their appointees.

30.     Further, at all times, Baxter acted through its officers to perform Plan-related fiduciary functions. These officers were acting in the course and scope of their employment.

31.     Accordingly, Baxter during the putative Class Period is/was a fiduciary of the Plan, within the meaning of ERISA Section 3(21)(A), 29 U.S.C. § 1002(21)(A) because it had a duty to monitor the actions of the Investment Committee and the Administrative Committee.

### *Board Defendants*

32.     The Board appointed the members of the Investment Committee. *See* Plan Doc. at 61. As noted above, under ERISA, fiduciaries with the power to appoint have the concomitant fiduciary duty to monitor and supervise their appointees.

33.     Accordingly, each member of the Board during the putative Class Period (referred to herein as John Does 1-10) is/was a fiduciary of the Plan, within the meaning of ERISA Section 3(21)(A), 29 U.S.C. § 1002(21)(A) because each had a duty to monitor the actions of the Investment Committee.

34.     The Board and the unnamed members of the Board during the Class Period (referred to herein as John Does 1-10), are collectively referred to herein as the "Board Defendants."

### Compensation Committee Defendants

35.     The Compensation Committee appointed the member of the Administrative Committee. As noted above, under ERISA, fiduciaries with the power to appoint have the concomitant fiduciary duty to monitor and supervise their appointees.

36.     Accordingly, each member of the Compensation Committee during the putative Class Period (referred to herein as John Does 11-20) is/was a fiduciary of the Plan, within the meaning of ERISA Section 3(21)(A), 29 U.S.C. § 1002(21)(A) because each had a duty to monitor the actions of the Administrative Committee.

37.     The Compensation Committee and the unnamed members of the Compensation Committee during the Class Period (referred to herein as John Does 11-20), are collectively referred to herein as the "Compensation Committee Defendants."

### The Administrative Committee

38.     The Administrative Committee administered the Plan and served as a Named Fiduciary of the Plan within the meaning of Section 402(a)(2) of ERISA. The Administrative Committee's powers and duties included, among other things, "complete and unfettered discretion to construe and interpret the terms of the Plan", "prescribe procedures, rules and regulations to be

followed by … [p]articipants", and "make determinations as to the rights of … [p]articipants … under the Plan". Plan Doc., at 61.

39.     Each member of the Administrative Committee during the putative Class Period (referred to herein as John Does 21-30) is/was a fiduciary of the Plan, within the meaning of ERISA Section 3(21)(A), 29 U.S.C. § 1002(21)(A), during the Class Period, because each had control over Plan management and/or authority or control over management or disposition of Plan assets.

40.     Members of the Administrative Committee during the Class Period are collectively referred to herein (referred to herein as John Does 21-30) as the "Administrative Committee Defendants."

### The Investment Committee

41.     The Investment Committee exercised discretionary control over the management and disposition of the Plan's assets, and served as a Named Fiduciary within the meaning of Section 402(a)(2) of ERISA. The Investment Committee's powers and duties included, among other things, to: "establish and … revise the investment policy of the Plan, to communicate and consult with the Company, the Administrative Committee and the Trustee … regarding the investment policy applicable to the Plan as a whole", "determine the proper allocation of investment responsibilities with respect to the assets of the Plan", and "to appoint the Trustee and any Investment Managers or insurance institutions, to direct the establishment of any investment fund and to remove the Trustee and any Investment Managers or insurance institutions or appoint additional Trustees, Investment Managers or insurance institutions." Plan Doc., at 63.

42.     The Investment Committee and each of its members (referred to herein as John Does 31-40) were fiduciaries of the Plan during the Class Period, within the meaning of ERISA

10

Section 3(21)(A), 29 U.S.C. § 1002(21)(A), because each exercised discretionary authority over management or disposition of Plan assets.

43.     The Investment Committee and members of the Investment Committee during the Class Period (referred to herein as John Does 31-40), are collectively referred to herein as the "Investment Committee Defendants."

## IV.     CLASS ACTION ALLEGATIONS[5]

44.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of himself and the following proposed class ("Class"):

> All persons, except Defendants and any fiduciary of the Plan and their immediate family members, who were participants in or beneficiaries of the Baxter International Inc. and Subsidiaries U.S. Retirement Savings Plan (f/k/a the Baxter International Inc. and Subsidiaries Incentive Investment Plan) at any time between March 28, 2019 to the date of judgment (the "Class Period").[6]

45.     The members of the Class are so numerous that joinder of all members is impractical. The 2023 Form 5500 lists 29,238 Plan "participants with account balances as of the end of the plan year." 2023 Form 5500, at 2.

46.     Plaintiff's claims are typical of the claims of the members of the Class. Like other Class members, Plaintiff participated in the Plan and has suffered injuries as a result of Defendants' mismanagement of the Plan. Defendants treated Plaintiff consistently with other Class members,

---

[5] Although this is a proposed class action, the allegations in this complaint are alternatively pled in derivative fashion on behalf of the Plan because class certification is not necessarily required for Plaintiff to prosecute claims on behalf of the Plan and all participants. *See, e.g.*, *In re: Wilmington Trust Corp.*, 2013 WL 4757843, at *3 (D. Del. Sept. 4, 2013) (granting plaintiffs' motion to proceed derivatively on behalf of all plan participants without class certification, because of the nature of such claims). ERISA Section 502(a), 29 U.S.C. § 1132(a), authorizes pension plan participants to bring suit on behalf of a plan to recover losses to a plan.

[6] Plaintiff reserves his right to seek modification of the close of the Class Period in the event that further investigation/discovery reveals a more appropriate end period.

and managed the Plan as a single entity. Plaintiff's claims and the claims of all Class members arise out of the same conduct, policies, and practices of Defendants as alleged herein, and all members of the Class have been similarly affected by Defendants' wrongful conduct.

47.     There are questions of law and fact common to the Class, and these questions predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to:

        A.     Whether Defendants are a fiduciary of the Plan;

        B.     Whether Defendants breached their fiduciary duty of prudence by engaging in the conduct described herein;

        C.     The proper form of equitable and injunctive relief; and

        D.     The proper measure of monetary relief.

48.     Plaintiff will fairly and adequately represent the Class, and has retained counsel experienced and competent in the prosecution of ERISA class action litigation. Plaintiff has no interests antagonistic to those of other members of the Class. Plaintiff is committed to the vigorous prosecution of this action, and anticipates no difficulty in the management of this litigation as a class action.

49.     This action may be properly certified under Rule 23(b)(1). Class action status in this action is warranted under Rule 23(b)(1)(A) because prosecution of separate actions by the members of the Class would create a risk of establishing incompatible standards of conduct for Defendants. Class action status is also warranted under Rule 23(b)(1)(B) because prosecution of separate actions by the members of the Class would create a risk of adjudications with respect to individual members of the Class that, as a practical matter, would be dispositive of the interests of

other members not parties to this action, or that would substantially impair or impede their ability to protect their interests.

50.     In the alternative, certification under Rule 23(b)(2) is warranted because the Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Class as a whole.

**V.     THE PLAN**

51.     "The Plan is a defined contribution plan, the predecessor of which originally became effective on January 1, 1960." 2023 Auditor's Report, at 5.

52.     "Effective October 1, 2020, the Baxter International Inc. and Subsidiaries Incentive Investment Plan was renamed the Baxter International Inc. and Subsidiaries U.S. Retirement Savings Plan." Plan Doc., at 1.

53.     "The Baxter [Plan] offers a way to build income for your retirement years." Baxter International Inc. and Subsidiaries U.S. Retirement Savings Plan Summary Plan Description ("SPD"), at 3.

54.      "The [Plan] is a defined contribution plan, which means that the value of your account depends on the amount of contributions made and the performance of the investment funds." SPD, at 40.

55.     "Each newly hired eligible employee will be automatically enrolled in the Plan, with a pre-tax contribution rate initially equal to 4%, starting with the first paycheck following 30 days after hire, or as soon as administratively feasible after hire." SPD, at 3.

56.     Included in the Plan's available funds was the "Stable Income Fund." *Id*., at 16; *see also* 2023 Auditor's Report, at 7 ("Upon enrollment in the Plan, a participant may direct

contributions into any of 18 investment options: Stable Income Fund, Northern Trust S&P 500 Index Non-Lending Series Fund, Northern Trust International Index Non-Lending Series Fund, Northern Trust Emerging Markets Fund, Northern Trust Equity Market Index Fund, Prudential Core Plus Bond Fund, Vanguard Retirement Income Fund and eleven different Target Date Retirement Funds.").

57.     At the end of 2019, $561,432,687 in Plan assets were invested in the Baxter SIF. *See* Schedule of Assets (Held at the end of Year) as of December 31, 2019, attached to 2019 Form 5500, at 41.

58.     The Baxter SIF consists of four GICs (Metropolitan Tower Life Insurance Company, Prudential Insurance Company of America, RGA Reinsurance Company, and Voya Retirement Insurance and Annuity Company).[7]

59.     By the end of 2023, over $473 million in Plan assets were invested in the synthetic CIGs in the Baxter SIF. *See* Schedule of Assets (Held at the end of Year) as of December 31, 2023, attached to 2023 Form 5500, at 14.

## VI.     THE TOTALITY OF THE CIRCUMSTANCES DEMONSTRATES THAT DEFENDANTS FAILED TO ADMINISTER THE PLAN IN A PRUDENT MANNER

### A.     ERISA Fiduciaries Are Held to the Highest Standards Regarding Process and Methodology of Evaluating Investments

60.     As described in the "Parties" section above, Defendants were fiduciaries of the Plan.

61.     ERISA "imposes a 'prudent person' standard by which to measure fiduciaries' investment decisions and disposition of assets." *Fifth Third Bancorp v. Dudenhoeffer*, 134 S. Ct.

---

[7] In 2019, RGA Reinsurance Company was not included in the Baxter SIF. However, RGA Reinsurance Company was included in years 2020-2023.

2459, 2467 (2014) (quotation omitted). In addition to a duty to select prudent investments, under ERISA, a fiduciary "has a continuing duty to monitor [plan] investments and remove imprudent ones" that exist "separate and apart from the [fiduciary's] duty to exercise prudence in selecting investments." *Tibble I*, 135 S. Ct. at 1828; *see also Hughes*, 142 S. Ct. at 741.

62.     As stated by the DOL: ERISA "requires plan fiduciaries, when selecting and monitoring service providers and plan investments, to act prudently and solely in the interest of the plan's participants and beneficiaries. Responsible plan fiduciaries also must ensure that arrangements with their service providers are 'reasonable' and that only 'reasonable' compensation is paid for services. …" DOL 408(b)(2) Regulation Fact Sheet.

63.     The duty "…to act solely in the best interest of participants has been a key tenet of ERISA since its passage." "Best Practices for Plan Fiduciaries," at 36, published by Vanguard, 2019.[8]

64.     Acting in the sole interest of plan participants is all encompassing. A fiduciary must monitor all investment options in a 401(k) plan as a prudent investment professional. *See* the U.S. Department of Labor, Employee Benefits Security Administration (EBSA)'s "Meeting Your Fiduciary Responsibilities," at 2 ("The duty to act prudently is one of a fiduciary's central responsibilities under ERISA. It requires expertise in a variety of areas, such as investments."), available at https://www.dol.gov/sites/dolgov/files/EBSA/about-ebsa/our-activities/resource-center/publications/meeting-your-fiduciary-responsibilities.pdf.

65.     A prudent investment professional, and hence a fiduciary, must regularly evaluate a fund's performance history, the portfolio manager's experience and tenure, changes to the fund's

---

[8] Available at https://institutional.vanguard.com/iam/pdf/FBPBK.pdf?cbdForceDomain.

investment strategy, changes to the underlying assets in the investment, total assets under management within the fund, fees, and other relevant factors.

66.     With respect to investment returns, diligent investment professionals monitor the performance of their selected investments using appropriate industry-recognized "benchmarks" and prudently managed equivalents.

67.     The measurement of investments against prudently managed alternatives is critical given that these alternatives represent other investments available to a plan, which may increase the likelihood that participants reach/live their preferred lifestyle in retirement.

68.     Whether a plan fiduciary enlists the assistance of an investment manager, consultant, or advisor, the plan's fiduciaries are not relieved of fiduciary liability for selecting and monitoring the plan's investment options.

69.     It is black letter law that a fiduciary's duty to conduct an "independent investigation into the merits of a particular investment," is the "most basic of ERISA's investment fiduciary duties." *In re Unisys Savings Plan Litigation*, 74 F.3d 420, 435 (3d Circ. 1996). *Hughes*, 142 S. Ct. at 738 (noting ERISA fiduciaries are required to "conduct their own independent evaluation to determine which investments may by prudently included in the plan's menu of options.").

70.     To the extent plan fiduciaries have adopted an investment policy statement, those fiduciaries "must comply with the plan's written statements of investment policy, insofar as those written statements are consistent with the provisions of ERISA." *Lauderdale v. NFP Retirement, Inc.*, 2022 WL 17260510, at * 10 (S.D. Cal. Nov. 17, 2022). That is, the investment policy statement must be written with the sole interest of the plan participant in mind.

71.     Plaintiff did not have and does not have actual knowledge of the specifics of Defendants' decision-making process with respect to the Plan, including Defendants' processes

16

(and execution of such) for selecting, monitoring, and removing the Plan's investments because this information is solely within the possession of Defendants prior to discovery. *See Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 598 (8th Cir. 2009) ("If Plaintiffs cannot state a claim without pleading facts which tend systematically to be in the sole possession of defendants, the remedial scheme of [ERISA] will fail, and the crucial rights secured by ERISA will suffer.").

72.     In fact, in an attempt to discover the details of the Plan's mismanagement, Plaintiff wrote to the Plan administrator to request, among other things, "all written instruments" governing or pertaining to the Plan, including "Investment Policy Statements, and amendments, exhibits, or appendices thereto" and "Investment Management Contracts, or other instruments under which the Plan was established or operated, and all amendments, exhibits, or appendices thereto," as well as any committee's meeting minutes. This request was made on September 11, 2024.

73.     By letter dated October 10, 2024, the Plan's administrator responded to Plaintiff's request. No investment policy statement, to the extent it exists, or meeting minutes, to the extent they exist, were produced in response to Plaintiff's request.

74.     Reviewing meeting minutes, when they exist, is the bare minimum needed to peek into a fiduciary's monitoring process. But in most cases, even that is not sufficient. For, "[w]hile the absence of a deliberative process may be enough to demonstrate imprudence, the presence of a deliberative process does not … suffice in every case to demonstrate prudence. Deliberative processes can vary in quality or can be followed in bad faith. In assessing whether a fiduciary fulfilled her duty of prudence, we ask 'whether a fiduciary employed the *appropriate* methods to investigate and determine the merits of a particular investment,' not merely whether there were any methods whatsoever." *Sacerdote v. New York Univ.*, 9 F.4th 95, 111 (2d Cir. 2021) (emphasis in original).

17

75. For purposes of this Complaint, Plaintiff has drawn reasonable inferences regarding these processes and methods based upon several factors as described below.

76. Defendants' breaches of their fiduciary duties, relating to their overall decision-making, resulted in, *inter alia*, the selection (and maintenance) of the Baxter SIF in the Plan throughout the Class Period that wasted the assets of the Plan and the assets of participants because of unnecessary costs and underperformance.

**B.      Defendants Breached Their Fiduciary Duties by Causing the Plan to Offer the Baxter SIF**

**1.      Overview of GICs**

77. For defined-contribution retirement plans, stable value investments are intended to provide participants with an option that protects their assets and is shielded from risks of loss, hence why they are called Guaranteed Investment Contracts or GICs.

78. GICs are issued by insurance companies in the form of a fixed annuity contract. Pursuant to the terms of those contracts, the GICs provide for a guaranteed rate of return or "crediting rate" during a specified period.

79. Large plans often offer "synthetic" stable value funds, like the Baxter SIF.

**2.      The Plan's Inclusion of Baxter SIF**

80. At all relevant times, Defendants maintained the authority to exercise control over the Plan's investments, including the Plan's Baxter SIF.

81. The Insurance Companies establish the crediting rates for their underlying GICs with the Plan.

82. The Insurance Companies earn a "spread" equal to the difference between the crediting rate and the returns the Insurance Companies earn on the funds in their accounts.

### 3. There are Many GICs in the Marketplace with Competitive Crediting Rates

83.     The marketplace for GICs is robust with many insurance companies offering GICs with competitive rates.

84.     Throughout the Class Period, identical or substantially identical stable value funds with higher crediting rates, and hence lower spreads, were available to the Plan, but were not selected by Defendants.

85.     The Baxter SIF in the Plan had underwhelming crediting rates when compared against stable value GICs provided by other comparable carriers for other retirement plans:

| Year | Plan Name | No. of Participants | Plan Assets | Insurance Carrier | Crediting Rate[9] |
|------|-----------|--------------------|-------------|--------------------|---------------------|
| **2019** | Baylor College of Medicine Retirement Plan | 12,587 | $1,278,730,175 | Lincoln Financial Group | 4.29% |
| | Jackson National Life Insurance Company Defined Contribution Plan | 5,002 | $1,090,110,381 | Jackson National Life Insurance | 4.28% |
| | Holzer Health System 401(a) Profit Sharing Plan | 1,896 | $179,609,420 | American United Life Insurance Company | 3.98% |
| | Transamerica 401(k) Retirement Savings Plan | 15,140 | $2,020,965,905 | Transamerica Financial Life Insurance Company | 3.85% |

_____

[9] For crediting rates not identified in the plans' Form 5500s, the calculated yield is interest credited divided by the end of year balance.

| | | | | | |
|---|---|---|---|---|---|
| | American United Life Progress Sharing Plan and Trust | 3,051 | $377,919,056 | American United Life Insurance Company | 3.70% |
| | HCC Insurance Holdings Inc. 401(k) Plan | 2,515 | $355,957,124 | Massachusetts Mutual Life Insurance Company | 3.56% |
| | **Baxter Plan** | **20,912** | **$2,704,852,380** | **Metropolitan Life Insurance Company** | **2.48%** |
| | | | | **Prudential Insurance Company of America** | **2.58%** |
| | | | | **Transamerica Premier Life Insurance Company** | **3.25%** |
| 2020 | Baylor College of Medicine Retirement Plan | 12,905 | $1,493,377,139 | Lincoln Financial Group | 4.16% |
| | Alina 401(k) Retirement Savings Plan | 32,203 | $2,690,046,457 | Brighthouse Life Insurance Company | 3.72% |
| | HCC Insurance Holdings Inc. 401(k) Plan | 2,711 | $428,308,461 | Massachusetts Mutual Life Insurance Company | 3.56% |
| | American United Life Progress Sharing Plan and Trust | 2,699 | $435,970,029 | American United Life Insurance Company | 3.54% |
| | **Baxter Plan** | **20,987** | **$3,021,804,483** | **Metropolitan Tower Life Insurance Company** | **1.11%** |
| | | | | **RGA Company Reinsurance** | **1.06%** |
| | | | | **Prudential Life Insurance Company of America** | **1.11%** |
| | | | | **Voya Retirement and Annuity Insurance Company** | **1.06%** |

| | | | | | |
|---|---|---|---|---|---|
| 2021 | Gemba Group Annuity Plan | 969 | $118,565,852 | National Ohio Financial Services | 4.97% |
| | Baylor College of Medicine Retirement Plan | 13,391 | $1,692,013,731 | Lincoln Financial Group | 4.23% |
| | Holzer Health System 401(a) Profit Sharing Plan | 2,017 | $203,815,263 | American United Life Insurance Company | 4.02% |
| | American United Life Progress Sharing Plan and Trust | 3,183 | $493,267,284 | American United Life Insurance Company | 3.87% |
| | Gemba Group Annuity Plan | 969 | $118,565,852 | Principal Life Insurance Company | 3.84% |
| | **Baxter Plan** | **21,141** | **$3,313,884,147** | **Metropolitan Tower Life Insurance Company** | **1.91%** |
| | | | | **RGA Company Reinsurance** | **1.92%** |
| | | | | **Prudential Life Insurance Company of America** | **1.91%** |
| | | | | **Voya Retirement and Annuity Insurance Company** | **1.92%** |
| 2022 | International Imaging Materials Inc. Retirement and Investment Plan | 445 | $59,443,888 | Lincoln National Life Insurance Co. | 4.89% |
| | Baylor College of Medicine Retirement Plan | 14,036 | $1,434,738,254 | Lincoln Financial Group | 4.37% |

|  | American United Life Progress Sharing Plan and Trust | 3,235 | $439,262,320 | American United Life Insurance Company | 3.90% |
|---|---|---|---|---|---|
|  | Jackson National Life Insurance Company Defined Contribution Plan | 4,650 | $1,149,061,601 | Jackson National Life Insurance | 3.83% |
|  | Alina 401(k) Retirement Savings Plan | 34,554 | $2,678,277,538 | Brighthouse Life Insurance Company | 3.69% |
|  | Trugreen Profit Sharing and Retirement Plan | 11,408 | $371,495,784 | Massachusetts Mutual Life Insurance Company | 3.67% |
|  | **Baxter Plan** | **29,412** | **$3,756,465,948** | **Metropolitan Tower Life Insurance Company** | **2.13%** |
|  |  |  |  | **RGA Company Reinsurance** | **2.14%** |
|  |  |  |  | **Prudential Life Insurance Company of America** | **2.13%** |
|  |  |  |  | **Voya Retirement and Annuity Insurance Company** | **3.33%** |
| 2023 | Valley Hospital Retirement Defined Contribution Plan | 4,282 | $550,230,744 | Lincoln National Life Insurance Co. | 4.57% |
|  | Mattel, Inc. Personal Investment Plan | 7,427 | $1,167,576,000 | Metropolitan Tower Life Insurance Co. | 3.71% |
|  | Pomona Valley Hospital Medical | 4,219 | $525,201,271 | Lincoln National Life Insurance Co. | 3.64% |

| | | | | |
|---|---|---|---|---|
| | Center Retirement Savings Plan | | | | |
| | Auto-Owners Insurance Company Retirement Savings Plan | 8,582 | $772,874,102 | Auto-Owners Life Insurance Company | 3.48% |
| **Baxter Plan** | | **29,238** | **$4,253,091,736** | **Metropolitan Tower Life Insurance Company** | **2.72%** |
| | | | | **RGA Company Reinsurance** | **2.59%** |
| | | | | **Prudential Life Insurance Company of America** | **2.73%** |
| | | | | **Voya Retirement and Annuity Insurance Company** | **2.66%** |

86. Throughout the Class Period, the Baxter SIF underperformed the comparator funds by an average of over 45% as demonstrated in the table below.

| Year | Baxter SIF Average Rate of Return | Comparator Average Rate of Return | Baxter SIF Percentage of Underperformance |
|---|---|---|---|
| 2019 | 2.77% | 3.94% | 29.70% |
| 2020 | 1.09% | 3.75% | 70.93% |
| 2021 | 1.92% | 4.19% | 54.18% |
| 2022 | 2.43% | 4.06% | 40.15% |
| 2023 | 2.68% | 3.85% | 30.39% |
| Average Underperformance during Class Period | | 45.07% | |

87. In short, because the Plan held between $2.7 billion and $4.2 billion in assets under management at the start of the Class Period, it had considerable leverage to bargain for higher crediting rates.

88. A prudent fiduciary would have known that other providers of fixed annuities offer substantially identical, better-performing stable value investments. A prudent fiduciary could have

23

accomplished this goal by demanding higher crediting rates from the Insurance Companies and/or by submitting requests for proposals to the Insurance Companies and other providers of stable value investments.

89.     By selecting the Baxter SIF with underperforming crediting rates, Defendants failed to provide participants with an option that maximized the value of their investments.

90.     With the massive amount of assets under management in the Baxter SIF, the losses suffered by Plan participants were devastating.  Every additional expense imposed upon the participants compounds and reduces the value of their retirement savings over time. *Tibble v. Edison Int'l*, 575 U.S. 523, 525 (2015). For example, a 1% higher fee over 35 years makes a 28% difference in retirement assets at the end of a participant's career.[10]

**COUNT I**
**Breaches of Fiduciary Duty of Prudence**
**(Against Administrative Committee and Investment Committee Defendants)**

91.     Plaintiff re-alleges and incorporates herein by reference all prior allegations in this Complaint as if fully set forth herein.

92.     At all relevant times, the Administrative Committee and its members, and the Investment Committee and its members ("Prudence Defendants") were fiduciaries of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), in that it exercised discretionary authority or control over the administration and/or management of the Plan or disposition of the Plan's assets.

93.     As fiduciaries of the Plan, the Prudence Defendants were subject to the fiduciary duties imposed by ERISA § 404(a), 29 U.S.C. § 1104(a). These fiduciary duties included managing

---

[10] Look at 401(k) Plan Fees, UNITED STATES DEPT. OF LABOR at 2 (Sept. 2019), https://www.dol.gov/sites/dolgov/files/ebsa/about-ebsa/our-activities/resource center/publications/401k-plan-fees.pdf (accessed Feb. 14, 2025).

the assets of the Plan for the sole and exclusive benefit of Plan's participants and beneficiaries, and acting with the care, skill, diligence, and prudence under the circumstances that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims.

94.     The Prudence Defendants breached these fiduciary duties in multiple respects as discussed throughout this Complaint. Prudence Defendants did not make decisions regarding the Plan's investment lineup based solely on the merits of each investment and what was in the interest of Plan's participants. Instead, the Prudence Defendants selected and retained investment options in the Plan despite poor performance in relation to other comparable investments.

95.     As a direct and proximate result of the breaches of fiduciary duties alleged herein, the Plan suffered millions of dollars of losses due to excessive costs and lower net investment returns. Had Prudence Defendants complied with their fiduciary obligations, the Plan would not have suffered these losses, and Plan's participants would have had more money available to them for their retirement.

96.     Pursuant to 29 U.S.C. §§ 1109(a) and 1132(a)(2), the Prudence Defendants are liable to restore to the Plan all losses caused by their breaches of fiduciary duties, and also must restore any profits resulting from such breaches. In addition, Plaintiff is entitled to equitable relief and other appropriate relief for Defendants' breaches as set forth in their Prayer for Relief.

97.     The Prudence Defendants knowingly participated in each breach, knowing that such acts were a breach, and failed to make any reasonable and timely effort under the circumstances to remedy the breaches.

**COUNT II**
**Failure to Adequately Monitor Other Fiduciaries**
**(Asserted against the Company, the Board and the Compensation Committee Defendants)**

98.     Plaintiff re-alleges and incorporates herein by reference all prior allegations in this Complaint as if fully set forth herein.

99.     Baxter, the Board, and the Compensation Committee (the "Monitoring Defendants") had the authority to appoint and remove members of the Administrative Committee and Investment Committee, and the duty to monitor the Administrative Committee and Investment Committee and were aware that the Administrative Committee and Investment Committee Defendants had critical responsibilities as fiduciaries of the Plan.

100.    In light of this authority, the Monitoring Defendants had a duty to monitor the Administrative Committee and Investment Committee Defendants to ensure that the Administrative Committee and Investment Committee Defendants were adequately performing their fiduciary obligations, and to take prompt and effective action to protect the Plan in the event that the Administrative Committee and Investment Committee Defendants were not fulfilling those duties.

101.    The Monitoring Defendants also had a duty to ensure that the Administrative Committee and Investment Committee Defendants possessed the needed qualifications and experience to carry out their duties; had adequate financial resources and information; and reported regularly to the Monitoring Defendants.

102.    The Monitoring Defendants breached their fiduciary monitoring duties by, among other things:

> (a)     Failing to monitor and evaluate the performance of the Administrative Committee and Investment Committee Defendants or have a system in place for doing so, standing idly by as the Plan suffered significant losses as a result

26

of the Administrative Committee and Investment Committee Defendants'
imprudent actions; and

(b)     failing to remove Administrative Committee and Investment Committee
members whose performance was inadequate, all to the detriment of the Plan
and Plan's participants' retirement savings.

103.    As a consequence of the foregoing breaches of the duty to monitor, the Plan
suffered millions of dollars of losses. Had the Monitoring Defendants complied with their fiduciary
obligations, the Plan would not have suffered these losses, and the Plan's participants would have
had more money available to them for their retirement.

104.    Pursuant to 29 U.S.C. §§ 1109(a) and 1132(a)(2), the Monitoring Defendants are
liable to restore to the Plan all losses caused by their failure to adequately monitor the
Administrative Committee and Investment Committee Defendants. In addition, Plaintiff is entitled
to equitable relief and other appropriate relief as set forth in their Prayer for Relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that judgment be entered against Defendants on all claims
and requests that the Court awards the following relief:

A.      A determination that this action may proceed as a class action under Rule 23(b)(1),
or in the alternative, Rule 23(b)(2) of the Federal Rules of Civil Procedure;

B.      Designation of Plaintiff as Class Representative and designation of Plaintiff's
counsel as Class Counsel;

C.      A Declaration that the Defendants have breached their fiduciary duties under
ERISA;

D.      An Order compelling the Defendants to make good to the Plan all losses to the Plan resulting from Defendants' breaches of their fiduciary duties, including losses to the Plan resulting from imprudent investment of the Plan's assets, and to restore to the Plan all profits the Defendants made through use of the Plan's assets, and to restore to the Plan all profits which the participants would have made if the Defendants had fulfilled their fiduciary obligations;

E.      An order requiring the Company to disgorge all profits received from, or in respect of, the Plan, and/or equitable relief pursuant to 29 U.S.C. § 1132(a)(3) in the form of an accounting for profits, imposition of a constructive trust, as necessary to effectuate said relief, and to prevent the Defendants' unjust enrichment;

F.      Actual damages in the amount of any losses the Plan suffered, to be allocated among the participants' individual accounts in proportion to the accounts' losses;

G.      An order enjoining Defendants from any further violations of their ERISA fiduciary responsibilities, obligations, and duties;

H.      Other equitable relief to redress Defendants' illegal practices and to enforce the provisions of ERISA as may be appropriate, including appointment of an independent fiduciary or fiduciaries to run the Plan and removal of Plan fiduciaries deemed to have breached their fiduciary duties;

I.      An award of pre-judgment interest;

J.      An award of costs pursuant to 29 U.S.C. § 1132(g);

K.      An award of attorneys' fees pursuant to 29 U.S.C. § 1132(g) and the common fund doctrine; and

L.      Such other and further relief as the Court deems equitable and just.

Dated: March 28, 2025                         Respectfully submitted,

*/s/ Mark K. Gyandoh*
Mark K. Gyandoh, Esquire
James A. Maro, Esquire
**CAPOZZI ADLER, P.C.**
312 Old Lancaster Road
Merion Station, PA 19066
Email: markg@capozziadler.com
          jamesm@capozziadler.com
Tel.: (610) 890-0200
Fax: (717) 232-3080

*Counsel for Plaintiff and the Putative Class*