IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CHARLES CLINTON, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>BAXTER INTERNATIONAL INC., et al.,<br><br>    Defendants. | Civil Action No. 1:25-cv-03368<br><br>Honorable Lindsay C. Jenkins |

**MEMORANDUM OF LAW IN SUPPORT OF**
**<u>DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT</u>**

318453706v.9

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ................................................................................................. 1

II.     BACKGROUND ................................................................................................. 2

    A.      The Plan ................................................................................................. 2

    B.      Stable Value Funds ................................................................................ 3

    C.      Plaintiff's Claims .................................................................................. 4

III.    DISCUSSION ..................................................................................................... 6

    A.      Plaintiff Fails to State any Claim that Defendants Breached Their Duty of Prudence.................................................................................................. 7

        1.      Plaintiff Cannot Meet His Burden By Relying On Hindsight-Based Allegations That The SIF Was Not The Highest-Performing Stable Value Fund.......................................................................................... 8

        2.      Plaintiff's Barebone Statement That The Alternatives Are Comparators Fails To State A Claim of Imprudence................................. 9

        3.      Plaintiff's Claims That The SIF Underperformed Other Funds Are Speculative and Misleading. ...................................................... 11

    B.      Plaintiff's Monitoring Claim Fails to State any Claim for Relief (Count II)........ 15

IV.     CONCLUSION.................................................................................................... 15

318453706v.9

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abel v. CMFG Life Ins. Co.*,
No. 22-cv-449-wnc, 2024 WL 307489 (W.D. Wis. Jan. 26, 2024) ...................................7, 8, 9

*Albert v. Oshkosh Corp.*,
47 F.4th 570 (7th Cir. 2022) .......................................................................................7, 10, 15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...............................................................................................................6

*Barchock v. CVS Health Corp.*,
2017 WL 9324762 (D.R.I. Jan. 31, 2017) ............................................................................14

*Barchock v. CVS Health Corp.*,
886 F.3d 43 (1st Cir. 2018) ....................................................................................................8

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ...............................................................................................................7

*Bogie v. Rosenberg*,
705 F.3d 603 (7th Cir. 2013) ...............................................................................................12

*Cho v. Prudential Ins. Co. of Am.*,
2021 WL 4438186 (D.N.J. Sept. 27, 2021) ..........................................................................14

*Coppel v. SeaWorld Parks & Ent., Inc.*,
No. 21-cv-1430-RSH-DDL, 2024 WL 3086702 (S.D. Cal. Jan. 31, 2024) ......................10, 11

*Ellis v. Fid. Mgmt. Tr. Co.*,
883 F.3d 1 (1st Cir. 2018) ...................................................................................................4, 9

*Fifth Third Bancorp v. Dudenhoeffer*,
573 U.S. 409 (2014) ...............................................................................................................6

*Forman v. TriHealth, Inc.*,
563 F. Supp. 3d 752 (S.D. Ohio 2021) .................................................................................14

*Hecker v. Deere & Co.*,
556 F.3d 575 (7th Cir. 2009) .................................................................................................2

*Hughes v. Nw. Univ.*,
142 S. Ct. 737 (2022) .....................................................................................................1, 6, 9

318453706v.9

*Hughes v. Nw. Univ.*,
    63 F.4th 615 (7th Cir. 2023) ...................................................................................................1, 6

*Lalonde v. Mass Mutual Ins. Co.*,
    728 F. Supp. 3d 141 (D. Mass. Mar. 29, 2024) ...............................................................9, 11, 14

*Luckett v. Wintrust Fin. Corp.*,
    No. 22-cv-03968, 2023 WL 4549620 (N.D. Ill. July 14, 2023) ................................................7

*Matousek v. MidAmerican Energy, Co.*,
    51 F.4th 274 (8th Cir. 2022) ...................................................................................................10

*Rodriguez v. Hy-Vee, Inc.*,
    No. 4:22-cv-00072-SHL-HCA, 2022 WL 16648825 ..............................................................13

*Seven Arts Filmed Ent. Ltd. v. Content Media Corp. PLC*,
    733 F.3d 1251 (9th Cir. 2013) ................................................................................................12

*PBGC ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv.*
    *Mgmt. Inc.*,
    712 F.3d 705 (2d Cir. 2013).......................................................................................................6

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)....................................................................................................................2

*Tibble v. Edison International*,
    729 F.3d 1110 (9th Cir. 2013) ...................................................................................................3

*Woznicki v. Aurora Health Care Inc.*,
    No. 20-cv-1246-bhl, 2022 WL 1720093 (E.D. Wis. May 27, 2022)........................................12

**Statutes**

29 U.S.C. § 1002(34) .......................................................................................................................2

29 U.S.C. § 1104(a)(1)(B) ...............................................................................................................6

iii

## I.     __INTRODUCTION__

Plaintiff Charles Clinton is a participant in the Baxter International Inc. and Subsidiaries U.S. Retirement Savings Plan (the "Plan"). He alleges Baxter International Inc. ("Baxter") and the Investment Committee of the Plan (the "Investment Committee") (collectively, the "Defendants") breached their fiduciary duty of prudence under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et. seq.* ("ERISA") by maintaining as a Plan investment option the "Stable Income Fund" (the "SIF") which he contends "provided significantly lower rates of return than comparable stable value funds that Defendants could have made available to Plan participants." (ECF 1 at ¶ 16).

The Complaint fails to state any viable claim for relief and should be dismissed in its entirety, because it (1) is based entirely on improper hindsight-based comparisons, (2) lacks information sufficient to support the conclusory assertions that he selected meaningful comparators, and (3) is riddled with errors that contradict the documents on which Plaintiff purports to have relied.

As an initial matter, ERISA affords fiduciaries substantial discretion in administering plans, and "courts must give due regard to the range of reasonable judgments a fiduciary may make based on her experience and expertise." *Hughes v. Nw. Univ.*, 142 S. Ct. 737, 742 (2022). To state a claim, a plaintiff must "plausibly allege fiduciary decisions outside a range of reasonableness." *Hughes v. Nw. Univ.*, 63 F.4th 615, 630 (7th Cir. 2023). Disregarding this mandate, Plaintiff asserts the SIF was imprudent, because it allegedly had a lower crediting rate than other stable value funds. But there is no requirement that a fiduciary choose only those investments that ultimately receive the highest returns. Thus, alleging, with the benefit of hindsight, that a few other funds had higher crediting rates has no bearing on the prudence of the SIF.

1

318453706v.9

Further he offers no rationale as to why the Court should consider as meaningful comparators the alterative funds listed in the Complaint. In the context of a stable value fund— like the SIF—identifying appropriate comparators requires examining things *other* than crediting rates to assess if the funds are truly comparable. Plaintiff makes no attempt to do so in this case.

Finally, Plaintiff's putative crediting rate comparisons are deeply flawed. Despite basing his claims on the premise that the SIF's crediting rate was lower than funds in other plans, Plaintiff does not plead the crediting rate for the SIF or the putative comparators. He instead cites *estimated* crediting rates calculated by his lawyer and refuted by the documents on which he claims to rely. Because the documents on which he relies refute his faulty math (a proper area of inquiry on a motion to dismiss), he lacks a well-pleaded basis for his claim.

The Court should dismiss Plaintiff's Complaint in its entirety, with prejudice.

## II.     BACKGROUND

### A.     The Plan

The Plan is a defined contribution retirement plan, governed by ERISA. (ECF 1 at ¶¶ 2, 51; *see also* 2023 Form 5500 at 52, attached hereto as Ex. 1).[1] In a defined contribution plan (i.e. a 401(k) plan) each participant has her own individual account comprised of "the amount contributed to the participant's account, and any income, expenses, gains and losses, and any forfeitures of accounts of other participants which may be allocated to such participant's account." 29 U.S.C. § 1002(34). As of December 31, 2023, the Plan had over $4 billion in assets,

---

[1] Along with the pleadings, courts may consider at the motion to dismiss stage "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). The Court may therefore consider Forms 5500 filed with the Department of Labor ("DOL"), as well as the Plan's summary plan description ("SPD"), which are incorporated into the Complaint (*see, e.g.*, ECF 1 at ¶¶ 10–11 (citing Plan's Form 5500), 53-56 (citing and quoting from SPD), 85 & n.9 (stating information regarding putative comparator plans was taken from respective Form 5500s). *See Hecker v. Deere & Co.*, 556 F.3d 575, 582–83 (7th Cir. 2009).

318453706v.9

and more than 29,000 participants. (ECF 1 at ¶¶ 11, 14.) Baxter is the Plan sponsor. (ECF 1 at ¶ 28.) The Investment Committee is the named fiduciary as to investment-related decisions such as which investments to maintain in the Plan's investment lineup. (ECF 1 at ¶ 41.)

Baxter automatically enrolls eligible employees in the Plan upon hire, and participants can elect how much money to defer to the Plan and in which of the Plan's investment options to invest. (ECF 1 at ¶¶ 55–56.) One of the funds available in the Plan's investment lineup is the SIF. (ECF 1 at ¶ 56; *see also* <u>Ex. 1</u>, at 53). The SIF consists of four underlying synthetic guaranteed investment contracts. (ECF 1 at ¶ 58; *see also* <u>Ex. 1</u>, at 5-20).

The SIF is "designed to offer stable earnings from investments in interest-paying securities," and the "majority of the fund assets are invested in actively managed fixed income securities, such as corporate bonds and treasury notes. The fund also holds a small amount of cash for liquidity purposes." (*See* <u>Ex. 2</u>, Summary Plan Description, at 22.) The synthetic guaranteed investment contracts ("GICs") that underly the SIF "provide for a fixed return on principal over a specified time through fully benefit-responsive contracts," and "[t]he portfolio of assets underlying the synthetic GICs primarily includes fixed income commingled vehicles that invest in cash and cash equivalents, U.S. government and government agency issues, corporate credit and other fixed income obligations." (<u>Ex. 1</u>, at 54.) By the end of 2023, the SIF held over $473 million in Plan assets. (ECF 1 at ¶ 58; *see also* <u>Ex. 1</u>, at 61.)

### B.      Stable Value Funds

"For defined-contribution retirement plans, stable value investments are intended to provide participants with an option that protects their assets and is shielded from risks of loss." (ECF 1 at ¶ 77.) Stable value funds "emphasize capital preservation rather than maximization of returns," *Tibble v. Edison International*, 729 F.3d 1110, 1136 (9th Cir. 2013), and "generally consist[] of an underlying portfolio of high-quality, diversified, fixed-income securities" and use

3

318453706v.9

a crediting rate that "take[s] into account gains and losses over time and determines what amount of interest will be credited to investors, and at what intervals this will occur." *Ellis v. Fid. Mgmt. Tr. Co.*, 883 F.3d 1, 3 (1st Cir. 2018).

Stable value funds are an extremely common feature in defined contribution plans like the Plan. A recent study found, as of the end of 2024, 3 out of 4 defined contribution plans offered stable value funds, with participants investing more than $840 billion in those products.[2]

Given these volumes, it should come as no surprise that differences exist between stable value products. Indeed, the stable value market can be broken down into at least four segments: (1) individually managed accounts, (2) pooled funds, (3) insurance company general accounts, and (4) insurance company separate accounts.[3] Products in these segments differ in a host of ways, including with respect to ownership of the underlying assets (i.e., whether the plan or insurer owns the underlying investment holdings), transparency of underlying holdings (whether the plan has a right to know what the fund is invested in), exit provisions in the event a plan wants to remove the fund (including how fast a plan can exit the fund and what costs it might face to do so), fees (both how much the investment holder/insurers are paid, and how those fees are paid), credit ratings of the fund, protections for the plan and participants in the event of insurer default, and even the methodology for how crediting rates are determined.[4]

## C.    Plaintiff's Claims

Plaintiff claims that Defendants breached their fiduciary duty by allowing participants to invest in the SIF, as it allegedly "provided significantly lower rates of return than comparable stable value funds that [Defendants] could have made available to Plan participants." (ECF 1 at

---

[2]*See* SVIA, *Stable Value at a Glance* (Apr. 10, 2025), https://tinyurl.com/2693p6xc, at 2–3.
[3]*See* SVIA, *Stable Value at a Glance* (Dec. 31, 2024), https://tinyurl.com/yyt37f94, at 1.
[4]*Id.* at 2.

4

¶¶ 16, 91-97). Plaintiff further claims that "[t]hroughout the Class Period, identical or substantially identical stable value funds with higher crediting rates, and hence lower spreads, were available to the Plan, but were not selected." *Id*. at ¶ 84. To support his claim, Plaintiff identifies between four and six purported comparator plans and their supposed crediting rates, from 2019–2023, and asserts the SIF maintained a lower crediting rate than these purported comparators over that five-year period. (*See* ECF at ¶ 85).

Plaintiff alleges that these stable value funds were "identical or substantially identical" to the SIF (ECF 1 at ¶ 84) but offers no support for that conclusion. While Plaintiff alleges that "[l]arge plans often offer 'synthetic' stable value funds, like the [SIF]," (*see* ECF 1 at ¶ 79), he does not allege that any of the putative comparator plans used synthetic stable value funds. Indeed, other than identifying the insurance carrier, Plaintiff pleads *no* facts about the characteristics of any of the purported comparators. For instance, he nowhere alleges for the SIF or the alleged comparators: the manner in which assets are held, the exit provisions in the event a plan wants to remove these investment options, the protections each plan offers in the event of insurer default, the methodology for determining crediting rates, or any of the other factors that differentiate different stable value investments.

While he claims to plead the "crediting rates" for the SIF and the alleged comparators, Plaintiff admits in a footnote he has pleaded no such thing. He reveals the "crediting rates" he cites are *his own estimates*, not the actual crediting rates for the "comparators" or for the SIF. (*See* ECF 1 at ¶ 85 n.9.) Review of the Form 5500s on which the Complaint is purportedly based confirms the only actual "crediting rate" identified in the Complaint—for the SIF or any "comparator"—was for the Mattel, Inc. Personal Investment Plan in 2023. (*See* Ex. 3.)

5

## III.    DISCUSSION

To survive a Rule 12(b)(6) motion to dismiss, Plaintiff must plead "sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In the ERISA class action context, the Supreme Court has emphasized that a motion to dismiss is an "important mechanism for weeding out meritless claims[.]" *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014). "[T]he prospect of discovery in a suit claiming breach of fiduciary duty is ominous" and "elevates the possibility that a plaintiff with a largely groundless claim will simply take up the time of a number of other people, with the right to do so representing an in terrorem increment of the settlement value[.]" *PBGC ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 719 (2d Cir. 2013).

To plead a plausible claim for breach of the duty of prudence, Plaintiff must plead facts plausibly showing Defendants failed to act "with the care, skill, prudence, and diligence under the circumstances then prevailing." 29 U.S.C. § 1104(a)(1)(B). To assess whether an ERISA plaintiff has plausibly done so, the Court must perform a "context specific" analysis of the complaint's allegations, "[b]ecause the content of the duty of prudence turns on 'the circumstances . . . prevailing' at the time the fiduciary acts." *Hughes*, 595 U.S. at 177 (quoting *Dudenhoeffer*, 573 U.S. at 425). The court must also "give due regard to the range of reasonable judgments a fiduciary may make," *id.*, and Plaintiff must "plausibly allege fiduciary decisions outside a range of reasonableness." *Hughes,* 63 F.4th at 630. "How wide that range of reasonableness is will depend on 'the circumstances . . . prevailing' at the time the fiduciary acts." *Id*. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Iqbal*, 556 U.S. at 678. "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should . . . be

6

exposed at the point of minimum expenditure of time and money by the parties and the court." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 558 (2007).

  **A.  Plaintiff Fails to State any Claim that Defendants Breached Their Duty of Prudence.**

  Importantly, the "duty of prudence requires a fiduciary to make reasonable judgments; it does not require them to pick the best performing fund each year or even each decade." *Abel v. CMFG Life Ins. Co.*, No. 22-cv-449-wnc, 2024 WL 307489, at *6 (W.D. Wis. Jan. 26, 2024) (dismissing duty of prudence claims; claims of underperformance relative to other available options insufficient to plausibly plead challenged investments "fell outside the range of a fiduciary's reasonable judgments"). As such, it is well established that "the ultimate outcome of an investment is not proof of imprudence." *Albert v. Oshkosh Corp.*, 47 F.4th 570, 579 (7th Cir. 2022); *Abel*, 2024 WL 307489, at * 3 (citing *Patterson v. Morgan Stanley*, No. 16-cv-6568 RJS, 2019 WL 4934834, at 17 (S.D.N.Y. Oct. 7, 2019)) ("ERISA does not require clairvoyance on the part of plan fiduciaries, nor does it countenance opportunistic Monday-morning quarter-backing on the part of lawyers and plan participants who, with the benefit of hindsight, have zeroed in on the underperformance of certain investment options.").

  Instead of mere claims of underperformance, a plaintiff attempting to plead a plausible claim of imprudence based on circumstantial evidence "must provide a sound basis for comparison—a meaningful benchmark." *Albert*, 47 F.4th at 581 (quoting *Davis v. Washington Univ.*, 960 F.3d 478, 484 (8th Cir. 2020)). Where a complaint (even accepting the allegations as true) fails to provide the court with a basis to conclude comparisons are made to meaningful comparators, it fails to state a claim and should be dismissed. *Luckett v. Wintrust Fin. Corp.*, No. 22-cv-03968, 2023 WL 4549620, at *3 (N.D. Ill. July 14, 2023) (dismissing claims of imprudence where plaintiffs failed to plead "a sound basis for comparison).

318453706v.9

To meet his burden, Plaintiff must plead "specific factual allegations demonstrating that the comparator funds actually 'hold similar securities, have similar investment strategies, and reflect a similar risk profile' to the investments ultimately chosen by the fiduciaries." *Abel*, 2024 WL 307489, at *4. Plaintiff offers nothing to meet that burden. Indeed, he didn't even plead accurate "crediting rates" for the SIF or the alleged comparators.

1.      *Plaintiff Cannot Meet His Burden By Relying On Hindsight-Based Allegations That The SIF Was Not The Highest-Performing Stable Value Fund.*

Plaintiff's only support for the allegation that the SIF was an imprudent investment option is the assertion that other stable value funds had higher crediting rates than the SIF between 2019 and 2023. (*See* ECF 1 at ¶¶ 85–89.) Even accepting those allegations as true, the Complaint would fail. It is axiomatic that simply "pointing to another investment that has performed better . . . does not plausibly plead an imprudent decision." *Abel*, 2024 WL 307489 at *5. Further, the suggestion that fiduciaries must search for a stable value fund with the highest possible crediting rate (in addition to having no legal basis) conflicts with Plaintiff's own allegations. He alleges stable value funds "are intended to provide participants with an option that protects their assets and is shielded from risks of loss." (ECF 1 at ¶ 77.) Plaintiff does not contend that the SIF failed to meet those goals; indeed, his recitation of the crediting rates confirms the value of assets held in the SIF increased throughout the class period, and always had a positive credit rate (i.e., was shielded from risks of losses) thus meeting the objective Plaintiff alleges the SIF was "intended to provide."

In light of the goals of stable value investments, courts have routinely found plaintiffs cannot state a claim that a stable value find was imprudent merely by pointing to other funds with allegedly higher crediting rates. *See Barchock v. CVS Health Corp.*, 886 F.3d 43, 52-53 (1st Cir. 2018) (affirming dismissal of prudence claims involving SVF because allegations it

8

underperformed a few other funds did not state a plausible claim absent allegations that the SVF did not meet its objectives); *Lalonde v. Mass Mutual Ins. Co.*, 728 F. Supp. 3d 141, 156–57 (D. Mass. Mar. 29, 2024) (dismissing stable value fund claim; "simply selecting two alleged comparator funds with higher credit return rates over a seven-year period is the type of hindsight-based allegation which is insufficient to support a plausible inference of breach").

Moreover, Plaintiff has not (and cannot) plead that the Committee could have known of the crediting rates pled in the Complaint. Plaintiff purports to have determined "crediting rates" through reference to Form 5500s. (ECF 1 at ¶ 85 n.9.) But a Form 5500 for a given calendar year is not filed until the end of July of the subsequent calendar year.[5] Thus, the fiduciaries could not have undertaken this analysis in real-time in deciding whether to retain the SIF. This dooms the argument, as the prudence of fiduciary conduct is assessed based on the circumstances as they existed "at the time the fiduciary act[ed]." *See Hughes*, 595 U.S. at 177; *Abel*, 2024 WL 307489, at *4 (court cannot infer imprudence from performance comparisons based on data that would not have been available to fiduciaries at time of alleged breach).

> 2. *Plaintiff's Barebone Statement That The Alternatives Are Comparators Fails To State A Claim of Imprudence.*

It is understood that stable value funds "generally consist[] of an underlying portfolio of high-quality, diversified, fixed-income securities" and use a crediting rate that "take[s] into account gains and losses over time and determines what amount of interest will be credited to investors, and at what intervals this will occur." *Ellis v. Fid. Mgmt. Tr. Co.*, 883 F.3d 1, 3 (1st Cir. 2018). Not only that, stable value funds can take many forms, including collective investment trusts, separate account GICs, traditional GICs, synthetic GICs, and insurance

---

[5] *See* DOL, Form 5500 Instructions, http://bit.ly/3HWM9Jy at 4.

318453706v.9

company evergreen account solutions.[6] In light of these recognized differences, to determine if another investment option is a proper comparator for a stable value fund, courts look beyond the crediting rate, and consider "what the investment vehicles are, what their investment purposes are, or how they are managed." *Coppel v. SeaWorld Parks & Ent.*, *Inc.*, No. 21-cv-1430-RSH-DDL, 2024 WL 3086702, at *16 (S.D. Cal. Jan. 31, 2024) (dismissing imprudent retention claims alleging better performing comparators were "identical or substantially identical products" because allegations lacked any other detail to support their conclusion).

The Complaint fails to allege any facts about the characteristics of the putative comparator funds, including the type of stable value funds held in each plan, whether the plan owns the underlying assets, whether the funds are individually managed or pooled investments, or what restrictions might exist on the plans' ability to exit those funds or protect participants in the event of insurer default. Plaintiff instead resorts purely to isolated crediting rate comparisons. (ECF 1 at ¶ 85.) Without any of this information, it is impossible for this Court to make any inference as to whether these purported plans are true comparators. *See Matousek v. MidAmerican Energy, Co.*, 51 F.4th 274, 281 (8th Cir. 2022) (affirming grant of motion to dismiss; "On its own, the raw performance data provided by the plaintiffs falls short of providing a 'meaningful benchmark.' . . . . With so little information, we have no way of knowing whether the peer-group funds provide a 'sound basis for comparison.'"); *Albert*, 47 F.4th at 581 (affirming dismissal; "[A] complaint cannot simply make a bare allegation that . . . returns are too low. . . . Rather, it 'must provide a sound basis for comparison—a meaningful benchmark.'") (citations omitted).

---

[6]MetLife, *Stable Value Funds: Everything You Need to Know*, http://bit.ly/4kwqZQ7 (last accessed July 7, 2025).

10

"Simply labeling funds as 'comparable' or 'materially similar' is insufficient to establish that those funds are meaningful benchmarks against which to compare the performance of the challenged funds." *Coppel,* 2024 WL 3086702, at *15. Indeed, "[w]here a plaintiff cannot show that their comparator funds are sufficiently close to the challenged [stable value fund] to be meaningful comparators, allegations of under or overperformance do not create any inference of imprudence." *Id.* at *16. Conclusory assertion that funds are "identical or substantially identical" are insufficient. *See Lalonde*, 728 F. Supp. 3d at 141 (assertion that alternative stable value funds were "materially identical" was insufficient to support suitable comparisons).

### 3. Plaintiff's Claims That The SIF Underperformed Other Funds Are Speculative and Misleading.

Even if Plaintiff had pleaded facts to support that he has identified meaningful comparators, the Complaint would still fail as the calculations used to support his theory of underperformance are deeply flawed. The sole basis for Plaintiff's claim that the SIF was imprudent is that its crediting rates were supposedly lower than those of the "comparators." Plaintiff alleges the crediting rates were "guaranteed rate[s] of return" paid under the investment contracts underlying the SIF and putative comparator funds. (ECF 1 at ¶ 78.) Despite basing his claims on this premise and purporting to compare crediting rates between different plans to support his assertion that that SIF was imprudent, Plaintiff admits that the numbers he calls "crediting rates" in his Complaint are not the rates guaranteed by the investment contracts. Indeed, Plaintiff admits that—unless a crediting rate was disclosed in the Form 5500—the number identified as the "crediting rate" in the Complaint is instead an estimate calculated based on the "interest credited divided by the end of year balance" in the Form 5500. (ECF 1 at ¶ 85 n.9). Comparison of the Form 5500 filings for the plans referenced in the Complaint reveals that (1) of all the numbers in the Complaint, only one matches the crediting rate listed in a Form 5500

11

(the 2023 rate for the Mattel, Inc. Personal Investment Plan); and (2) he repeatedly calculated crediting rates that conflict with information in the Form 5500s on which he relied. (*See* Ex. 3.)

Plaintiff's estimates are not entitled to any weight. Even on a motion to dismiss it is "inappropriate" to defer to "an approximation . . . when . . . the calculations are facially and demonstrably wrong." *Woznicki v. Aurora Health Care Inc.*, No. 20-cv-1246-bhl, 2022 WL 1720093, at *3 (E.D. Wis. May 27, 2022). When a complaint attaches or incorporates a document, and then conflicts with that document, "the exhibit ordinarily controls, even when considering a motion to dismiss." *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013); *Seven Arts Filmed Ent. Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1254 (9th Cir. 2013) (court is *not* "required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences").

Here, to calculate crediting rates, Plaintiff divided the accrued interest set forth in the Form 5500s for that year by the year-end balance. (ECF 1 at ¶ 85 & n.9.) This makes no sense. Using a simple example to explain the error in his calculations: if a $100 balance accrued simple interest at a crediting rate of 5%, the end balance after a year would be $105. However, under Plaintiff's methodology, the $5 in interest credit would be divided by the $105 end balance. Thus, instead of calculating the correct rate of 5%, Plaintiff would *wrongly* estimate a crediting rate of 4.76%. Moreover, Plaintiff's methodology fails to consider the effect of money entering or exiting the funds during the year as again he only looks at the amount of money in the fund at the end of the year.[7]

---

[7]For instance, if a participant invested funds into the SIF near the end of the calendar year, Plaintiff's methodology would underestimate the crediting rate. Thus, an influx of an additional $100 at year-end in the prior example would cause Plaintiff to divide the $5 in interest credit by $205, and incorrectly estimate the crediting rate as 2.44%, when it was actually 5%.

12

Further establishing his calculations are wrong, Plaintiff's "crediting rates" also conflict with those listed by the comparators themselves in the Form 5500s. As illustrated in Exhibit 3, Plaintiff repeatedly calculated and alleged rates that were below minimum crediting rate guarantees, or otherwise in conflict with the crediting rates specified by the plans' own disclosures. (*See* Ex. 3.) Plainly, Plaintiff's calculations cannot be trusted or relied on to suggest fiduciary breach.

Plaintiff's calculations are also facially wrong with respect to the SIF. Plaintiff acknowledges that the SIF consists of four GICs. Thus, to calculate the crediting rate for the SIF, Plaintiff employed his crediting rate estimation method for each contract and averaged the results together. (*See* ECF 1 at ¶¶ 85–86.) Plaintiff's calculation—which took the simple arithmetic average of the underlying GICs, giving each equal weight in estimating the consolidated "rate" for the SIF—ignores that the SIF was not divided equally between those GICs (a fact which can be readily determined by the same data he relied on in the Forms 5500). (*See* Ex. 3.) The effect is that Plaintiff's calculations of the SIF's crediting rate—the foundational premise for his entire Complaint—are just plain wrong.

Setting aside these errors, the minor differences Plaintiff pleads between the Plan's crediting rate and those of the putative comparators are insufficient to support an inference of imprudence. Plaintiff's assertion that "the SIF underperformed the comparator funds by an average of over 45%" is an example of the misleading effect of using percentage-based comparisons when dealing with small numbers—a tactic recognized by courts in other cases. *See, e.g., Rodriguez v. Hy-Vee, Inc.*, No. 4:22-cv-00072-SHL-HCA, 2022 WL 16648825, at *2 n.3 (explaining percentage-based comparisons can be "misleading," even where mathematically

13

correct; "When the starting point for a comparison is low . . . even a small change . . . can produce a large change on a percentage basis.").

Here, the differences Plaintiff calculates between the SIF and the average rates he claims for the comparators—which range between 1.17% and 2.66% (*see* ECF 1 at ¶ 86)—demonstrate that any claim of "severe" underperformance rings hollow. Indeed, other courts have dismissed underperformance claims based on similarly small ranges. *See Forman v. TriHealth, Inc.*, 563 F. Supp. 3d 752, 764 (S.D. Ohio 2021) (underperformance ranging from 1.00% to "just over" 2.00% was "simply too small" to raise a plausible breach of fiduciary duty claim), *aff'd in relevant part*, 40 F.4th 443 (6th Cir. 2022); *Cho v. Prudential Ins. Co. of Am.*, 2021 WL 4438186, *10 (D.N.J. Sept. 27, 2021) (alleged underperformance of .07% to 3.71% not "sufficiently substantial" to state imprudence claim); *Barchock v. CVS Health Corp.*, 2017 WL 9324762, at *5 (D.R.I. Jan. 31, 2017), *aff'd*, 886 F.3d 43 at 45 (1st Cir. 2018) ("unreasonable to infer" that fund was a "severe outlier" when alleged underperformance ranged from .63% to 1.29%); *Lalonde*, 728 F. Supp. 3d at 156-57 (alleged underperformance based on hindsight insufficient to infer breach where comparator stable value funds outperformed challenged fund by between .75% and 2.5%).

To compound the issues with Plaintiff's comparisons, his sample size of comparators (four to six plans per year, often changing each year from 2019 through 2023) is simply too small to support an assertion that the SIF was imprudent. Plaintiff pleads there were more than 600,000 defined contribution plans during that timeframe. (ECF 1 at ¶ 12.) Together with the survey data saying 3 in every 4 plans had a stable value fund,[8] there were approximately 450,000 plans with stable value investments over that timeframe. At most, then, Plaintiff's sample size of

---

[8] *See* SVIA, *Stable Value at a Glance* (Apr. 10, 2025), https://tinyurl.com/2693p6xc, at 2–3.

14

318453706v.9

four to six alternatives would support an inference that the SIF was not in the top 0.0009–0.0013% of stable value funds by crediting rate. To find this limited sample sufficient to support a claim of fiduciary imprudence would hold fiduciaries to an impossible standard.

**B.      Plaintiff's Monitoring Claim Fails to State any Claim for Relief (Count II)**

In Count II of his Complaint, Plaintiff claims that Baxter Defendants failed to adequately monitor other fiduciaries. (ECF 1 at ¶¶ 98-104). This claim is wholly derivative of the underlying claim in Count I and must fail if Count I is dismissed. *See Albert*, 47 F.4th at 583 (affirming dismissal of duty to monitor claims, because dismissal of prudence claims was affirmed and "duty to monitor claims rise or fall with" underlying breach claim).

## IV.      <u>CONCLUSION</u>

To survive a motion to dismiss, Plaintiff must plead sufficient facts to support the assertion that retention of the SIF fell outside the "range of a fiduciary's reasonable judgments." Plaintiff failed to carry his burden, and had failed to allege any error in the fiduciaries' judgment. The Court should grant Defendants' motion and dismiss Plaintiff's Complaint with prejudice.

DATED:  July 7, 2025

By: */s/ Samuel M. Schwartz-Fenwick*
Samuel M. Schwartz-Fenwick
Thomas M. Horan
**SEYFARTH SHAW LLP**
233 South Wacker Drive
Suite 8000
Chicago, Illinois 60606-6448
Email:   sschwartz-fenwick@seyfarth.com
            thoran@seyfarth.com
Telephone:  (312) 460-5000
Facsimile:  (312) 460-7000

*Counsel for Defendants*

318453706v.9