**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

CHARLES CLINTON, individually and on
behalf of all others similarly situated,

        Plaintiff,

    v.

BAXTER INTERNATIONAL INC., THE
BOARD OF DIRECTORS OF BAXTER
INTERNATIONAL INC., THE
COMPENSATION COMMITTEE OF THE
BOARD OF DIRECTORS OF BAXTER
INTERNATIONAL INC., THE BAXTER
INTERNATIONAL INC.
ADMINISTRATIVE COMMITTEE, and THE
INVESTMENT COMMITTEE OF THE
BAXTER INTERNATIONAL INC. AND
SUBSIDIARIES U.S. RETIREMENT
SAVINGS PLAN,

        Defendants.

Case No. 1:25-cv-03368

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Charles Clinton ("Plaintiff"), on behalf of the Baxter International Inc. and Subsidiaries U.S. Retirement Savings Plan (the "Plan") respectfully submits this Opposition to Defendants' Motion to Dismiss. *See* ECF No. 19 ("MTD").

## I. INTRODUCTION

Under the Employee Retirement Income Security Act of 1974 (ERISA), "the duty of prudence" is "the highest known to the law." *Appvion, Inc. Ret. Sav. & Emp. Stock Ownership Plan by & through Lyon v. Buth*, 99 F.4th 928, 943 (7th Cir. 2024) ("*Appvion*") (citations omitted). Defendants' imprudent processes included the selection and maintenance of the Plan's Stable Income Fund ("SIF"), which had such "a low rate of return" that it did not "provide a meaningful retirement asset" compared to "a variety of stable value funds." *Abbott v. Lockheed Martin Corp.*, 725 F.3d 803, 806-07 (7th Cir. 2013) (the defendants' motion for summary judgment was denied); *see also* ECF No. 1, Complaint (or "Compl."), ¶¶ 9, 19, 76, 84.[1] Based on comparisons to similarly situated plans, Defendants failed to plausibly: (1) conduct adequate investigations into the prevailing market and alternative options; (2) conduct competitive bidding; (3) negotiate prudently; and (4) leverage the Plan's exceptionally large size – just like the upheld allegations in *Hughes v. Nw. Univ.*, 63 F.4th 615 (7th Cir. 2023) (*Hughes II*) (reversing dismissal on remand from the Supreme Court in *Hughes v. Nw. Univ.*, 595 U.S. 170 (2022) (*Hughes I*)).

Defendants ignore much of the Complaint's context and instead insert their own factual disagreements about Plaintiff's exacting calculations and choice of stable value fund ("SVF") comparisons. Defendants' arguments are based on incorrect factual disagreements and are supported by scant caselaw — most of which is out-of-circuit and do not involve SVFs. Courts routinely hold that these same arguments for dismissal are premature at best. *See Hughes II*, 63

---

[1] All undefined capitalized terms herein have the same meaning as in the Complaint.

F.4th at 628 ("a fiduciary's 'range of reasonable judgments' that may be made [are] alternative explanations [that] need not be conclusively ruled out at the pleadings stage."); *Miller v. AutoZone, Inc.*, 2020 WL 6479564, at *7 (W.D. Tenn. Sept. 18, 2020) (same) ("[A]ttacking the accuracy of Plaintiffs' comparison" to other SVFs was inappropriate on a motion to dismiss). *Daggett v. Waters Corp.*, 731 F. Supp. 3d 121, 137 n.18 (D. Mass. 2024) (Form 5500s "paint an incomplete picture and are far from dispositive in resolving the factual issues the parties raise."). For these reasons and more, Plaintiff respectfully requests that Defendants' motion be denied.

## II.     FACTS

A "fiduciary is required to conduct a regular review of its investment[;]" this is a "continuing duty" where a fiduciary is liable for "failing to properly monitor investments and remove imprudent ones." *Tibble I*, 575 U.S. at 530; *see also* Compl., ¶¶ 61, 66 (same). "Fiduciaries must also consider a plan's 'power ... to obtain favorable investment[s.]'" *Id*., at 328–29 (citation omitted). The measurement of investments against prudently managed alternatives is critical because these alternatives represent other investments available to help participants meet their retirement needs. *Id*., ¶ 67. Defendants chronically enabled the SIF to have lower guaranteed crediting rates of return ("rates") when compared to available similar or identical SVFs. *Id*., ¶¶ 15, 84, 85. Defendants failed to prudently investigate the prevailing marketplace and/or failed to prudently negotiate and contract for the rates available to other plans with similar (or less) bargaining power in the same prevailing marketplace. Plaintiff does not have actual knowledge of Defendants' decision-making process, because this information is solely in Defendants' possession prior to discovery. *Id*., ¶¶ 71-73. Plaintiff has drawn reasonable inferences based upon several factors. *Id*., ¶ 75.

Throughout the Class Period, only 0.1 percent of the 401(k) plans in the country were as large as the Plan in terms of assets under management. *See* Compl., ¶¶ 10-12. This makes the Plan an attractive client to investment institutions. SVFs "provide participants with an option that protects their assets and is shielded from risks of loss, hence why they are called Guaranteed Investment Contracts or GICs[,]" and these "GICs are issued by insurance companies" that "provide for a guaranteed rate of return or crediting 'rate' during a specified period." Compl., ¶¶ 77-78. SVFs "typically invest in a mix of short- and intermediate-term securities, such as Treasury securities, corporate bonds, and mortgage-backed securities." *Abbott*, 725 F.3d at 806. The marketplace for GICs is robust and competitive. *Id.*, ¶¶ 79, 83. The SIF is a synthetic SVF that invested in GICs offered by four "Insurance Companies." *Id.*, ¶ 16. A prudent fiduciary who adequately monitored the Plan's investments would have recognized that the SIF was benefitting the Insurance Companies at the expense of Plan participants, and would not have included SIF – or at least the rates it had – that also carried significantly more risk than other investment options that had similar goals, *i.e.*, preservation of investment assets. *Id.*, ¶¶ 17-18.

The Complaint charts 25 examples of Comparator SVFs in plans with similar (or less) bargaining power with substantially higher rates for each year from 2019-2023. *Id.*, ¶ 85. The ***highest*** rate for the SIF was 2.77%, while the ***lowest*** rate of the Comparator SVFs for the entire Class Period was 3.48%, with many crediting rates above 4%. *Id*. Throughout the Class Period, the SIF underperformed the Comparator SVFs by an ***average of over 45%***. *Id.*, ¶ 86. Many inferences of fiduciary processes and the marketplace can be drawn from these comparators. For instance, in 2019, the SIF's returns were reduced by more than eight times the reduction experienced by the average of the Comparators Funds. *Id.*, ¶ 86. The SIF's later rate increases were still insufficient as the rates remained significantly below the Comparator SVFs. *Id*. Hence,

Defendants failed to act in accordance with the prevailing standard of monitoring the performance of their investments against prudently managed alternatives. *Id.*, ¶ 67. A prudent fiduciary would have investigated the market and discovered that competing providers offered substantially identical, better-performing SVFs, and demanded higher rates from the Insurance Companies and/or submit requests for proposals to competing providers. *Id.*, ¶ 88.

## III.    ARGUMENT

### A.    Standard of Review

At the motion to dismiss stage, "the Court takes well-pleaded factual allegations as true and draws reasonable inferences in favor of the plaintiff." *Bayer HealthCare LLC v. Aeropres Corp.*, 727 F. Supp. 3d 738, 744 (N.D. Ill. 2024) (Jenkins, J.) (citation omitted). For ERISA specifically, there is no "defense-friendly standard" or "presumption of prudence." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 412 (2014). It is "sufficient for a plaintiff to plead facts indirectly" in ERISA cases, because "ERISA plaintiffs generally lack the inside information necessary to make out their claims in detail unless and until discovery commences." *Allen v. GreatBanc Tr. Co.*, 835 F.3d 670, 678 (7th Cir. 2016) (citation omitted); *see also Johnson v. Parker-Hannifin Corp.*, 122 F.4th 205, 219 (6th Cir. 2024) (same). "It is in this light that [courts] read the Supreme Court's directive [in *Hughes I*] to recognize the 'difficult tradeoffs' that an ERISA fiduciary faces, and the 'range of reasonable judgments' that may be made" as "alternative explanations [that] need not be conclusively ruled out at the pleadings stage." *Hughes II*, 63 F.4th at 628; *see also Mator v. Wesco Distribution, Inc.,* 102 F.4th 172, 187, 184 (3d Cir. 2024) (same). "Nothing in either *Albert* [*v. Oshkosh Corp.*, 47 F.4th 570 (7th Cir. 2022)] or *Hughes*" requires a plaintiff to plead an "unduly burdensome" list of details if using comparisons to state a claim.

*Acosta v. Bd. of Trs. of Unite Here Health*, 2024 WL 3888862, at *7 (N.D. Ill. Aug. 21, 2024); *see also Hughes II*, 63 F.4th at 632 (general allegations about plans and the marketplace sufficed).

Courts in ERISA cases refuse to consider a "disagreement over […] fund comparison[s]" using the defendants' proffered "data" from industry sources and public "filings", because "[d]efendants are not entitled to any inferences drawn from the data itself." *Karg v. Transamerica Corp.,* 2019 WL 3938471, at **6-7 (N.D. Iowa Aug. 20, 2019). Specifically, courts may not accept the defendants' "own analysis of Form 5500 materials" because the "arguments raise factual and legal disputes which cannot be resolved at this stage." *Daggett*, 731 F. Supp. 3d at 136-37; *see also Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc*., 99 F. Supp. 3d 1110, 1125-26 (C.D. Cal. 2015) (same). Non-government websites not referenced in a complaint are not noticeable, and even if the sources are credible, the inferences drawn from the websites are subject to dispute and should not be evaluated. *See Karg,* 2019 WL 3938471, at **6-7; *Wertymer v. Walmart, Inc*., 2024 WL 2126732, at *2 (N.D. Ill. Feb. 22, 2024) (Jenkins, J.) ("[T]he Court is not taking judicial notice of the fact that the USDA's standards are appropriate or the best definitions; it takes notice of the existence of the USDA standards themselves.").

B.    **The Complaint's Claims are Plausible**

1.    **Foundational Matters**

As a foundational matter, Plaintiff objects to Defendants' use of outside sources (non-governmental websites) and Defendants' compilation of artfully snipped sections of various Form 5500s (ECF No. 20-3), neither of which Defendants provide a legal basis for including at this stage. Defendants improperly attempt to use these sources to refute the well-pled allegations in the Complaint and ask this Court to draw inferences in Defendants' favor. *But see Karg,* 2019 WL

3938471, at \*\*6-7; *Daggett*, 731 F. Supp. 3d at 136-37. Nevertheless, Defendants' sources do not contradict the Complaint.

Another critical foundational matter is that an SVF is "a contract, not a mutual fund investment." *Disselkamp v. Norton Healthcare, Inc.*, 2019 WL 3536038, at \*5 (W.D. Ky. Aug. 2, 2019). SVFs "by nature, are different from other types of investment options" and "are defined by their predictability [*i.e.*, guaranteed returns], they offer a set return on investment, and their associated risk level is a creature of their structural design rather than their investment strategy." *Payne v. Hormel Foods Corp.*, 2024 WL 4228613, at \*6 (D. Minn. Sept. 18, 2024); *see also Abbott*, 725 F.3d at 806 ("SVFs are provided through 'wrap' contracts with banks or insurance companies that guarantee the fund's principal and shield it from interest-rate volatility."); Compl., ¶¶ 77-78. SVF rates can be bid on and renegotiated. *See* Compl., ¶¶ 87-88. Unlike SVFs, mutual fund returns are not guaranteed, and their expected results and evaluation framework may involve management styles, risk profiles, and underlying funds that influence the non-guaranteed returns. *See Johnson*, 122 F.4th at 210 (explaining these aspects). Thus, Defendants rely too heavily on mutual fund cases whose comparator and return analyses do not logically apply to SVFs.[2]

### 2. The imprudent process allegations are plausible

The Complaint's "facts support an inference that [Defendants] breached [their] fiduciary duty, either by failing to conduct an adequate inquiry into the" available rates for SVFs, "or by intentionally facilitating an improper transaction" by accepting a poor rate. *Allen*, 835 F.3d at 678–79. Given the SIF's incredibly low rates, Defendants' speculative assumptions that there may be

---

[2] *See Abel v. CMFG Life Ins. Co.*, 2024 WL 307489 (W.D. Wis. Jan. 26, 2024) and *Luckett v. Wintrust Fin. Corp.*, 2023 WL 4549620 (N.D. Ill. July 14, 2023) (challenging Blackrock Target Date Funds); *Cho v. Prudential Ins. Co. of Am.*, 2021 WL 4438186 (D.N.J. Sept. 27, 2021) (challenging mutual funds). *See also Albert*, 47 F.4th at 581 (challenging fees, not performance).

6

differences in the Comparator SVF's other characteristics "are not strong enough to justify dismissal." *Hughes II*, 63 F.4th at 633; *see also In re Unisys Sav. Plan Litig.,* 74 F.3d 420, 437 (3d Cir. 1996) ("*Unisys*") (the "terms of the Executive Life GICs" were "issues for trial" because "[t]he dramatic disparity between the interest rates that Executive Life offered and those offered by other" GICs inferred imprudence); *Perkins v. United Surgical Partners Int'l, Inc.*, 2024 WL 1574342, at *3 (5th Cir. Apr. 11, 2024) (the defendants' reasoning was "severely undercut by the Plaintiffs' allegation that the Plan's" contracted rates "were significantly [worse] than those of comparable plans."). In *Hughes II*, the plaintiffs stated a claim for imprudence by alleging that "services provided by competitor providers [we]re [all] comparable[;]" the marketplace was "highly competitive[;]" and prudent fiduciaries guaranteed reasonable recordkeeping fees, like guaranteeing reasonable returns, by "soliciting competitive bids" "and negotiating" by "leverage[ing] plan assets" before agreeing to a contractual rate. *Hughes II*, 63 F.4th at 632; *see also* Compl., ¶¶ 15,17, 83-88; *George v. Kraft Foods Glob., Inc*., 641 F.3d 786, 798–99 (7th Cir. 2011) (reversing summary judgment where the fiduciaries failed to "solicit[] competitive bids before extending Hewitt's contract."). The plaintiffs provided examples of other plans. *Id*.; *see also* Compl., ¶ 85. *Hughes II* is applicable to SVF cases. *See Payne*, 2024 WL 4228613, at *8 ("a prudent fiduciary would have leveraged the size of the plan to either negotiate a better deal" for the SVF or "replace it."); *Unisys*, 74 F.3d at 437 ("a reasonable factfinder could find that the investigations for the second and final GIC purchase were deficient." "The dramatic disparity between the interest rates" signaled imprudence); *Mazza v. Pactiv Evergreen Servs. Inc*., 2023 WL 3558156, at *2 (N.D. Ill. May 18, 2023) (the Plan's size meant it had "substantial bargaining power" that went unleveraged). The extreme rate reduction in 2019, *see* Compl., ¶ 86, demonstrates that Defendants should have known the rate change "was unreasonable and looked

at alternative options" and where "the same foundational" objectives are part of all contracts, and providers offered better rates for plans with "similar net assets." *Russell v. Illinois Tool Works, Inc.*, 2024 WL 2892837, at *2 (N.D. Ill. June 10, 2024). "[T]aken separately [...] these additional red flags would not have been enough [...] But [the court's] job is to read the complaint as a whole." *Appvion*, 99 F.4th at 947. Like *Appvion*, the Complaint thus plausibly alleges an inference of imprudent processes using several inferences, and does not "resort[] purely to isolated crediting rate comparisons." MTD at 10.

The deliberate act of agreeing to and renewing a contract for a set return also disproves Defendants' "hindsight" argument. MTD at 1, 8-9, 14; *see also Allen*, 835 F.3d at 680 ("whether the 22% decline in value […] was the result of normal economic forces or something more sinister is a matter for a later stage."). "It is reasonable to conclude that if a predictable investment continues to chronically underperform, one could draw a conclusion that the fiduciaries overseeing that fund have breached their duty." *Disselkamp*, 2019 WL 3536038, at *8 (referring to SVFs); *see also Payne*, 2024 WL 4228613, at *8 (because "stable value funds are intended to perform consistently over time […] it [is] plausible that a prudent fiduciary in the circumstances alleged 'would have acted differently.'"). Relatedly, Plaintiffs do not allege that there is a "requirement that a fiduciary choose only those investments that ultimately receive the highest returns." MTD at 1. The actual allegations are that the rate "difference is so significant that it provides some basis for inferring that defendants are using an imprudent process." *Lucero v. Credit Union Ret. Plan Ass'n*, 2023 WL 2424787, at *3 (W.D. Wis. Mar. 9, 2023); *see also Acosta*, 2024 WL 3888862, at *5 (such a "discrepancy" "demonstrate[d] not only consistency but some likelihood that the fiduciary failed to conduct regular reviews of its investment."). "[T]he Committee could have known of the crediting rates pled in the Complaint" were available for the same reasons the

8

fiduciaries of the Comparator SVFs knew – prudent investigations, negotiations, and bidding. MTD at 9. Defendants again rely on mutual fund cases, rather than SVF cases, to support their hindsight arguments. However, even in mutual fund cases, courts recognize that there is no hindsight bias where chronic underperformance raised "warning signs [that] would have caused a reasonably prudent fiduciary to act differently." *Int'l Bhd. of Teamsters Union Loc. No. 710 Pension Fund v. Bank of New York Mellon Corp.*, 2014 WL 497737, at *6 (N.D. Ill. Feb. 6, 2014); *see also Daggett*, 731 F. Supp. 3d at 138 ("the Plan Committee retained imprudent investments for an unreasonable period of time and an 'adequate investigation would have revealed' the investment's 'improviden[ce].'"). The process allegations are plausible.

### 3. The Comparator SVFs are meaningful

Defendants do not provide any citations, let alone binding precedent, to support their specific list of SVF characteristics that they believe matters at the pleading stage, nor how the list relates to Plaintiff's theory of liability. *See* MTD at 5, 10. "Nothing in either *Albert* or *Hughes*" support's Defendant's list of what they believe should be included, as the list "go[es] to the merits of Plaintiff['s]" claim, "rather than its legal sufficiency[,]" and would "require factual development and is inappropriate" at this stage. *Acosta*, 2024 WL 3888862, at *7-8. It strains credulity to believe that any of Defendant's characteristics are a more obvious explanation for the SIF's poor rates, rather than the plausible inference that Defendants were imprudent. Like here, the defendants in *Lacrosse* unavailingly argued that "Plaintiffs do not allege facts about the characteristics" of the funds. *Lacrosse v. Jack Henry & Assocs., Inc.*, 2024 WL 3564575, at *3 (W.D. Mo. July 11, 2024). The court disagreed. The plaintiffs plausibly alleged that the SVFs each "generate returns at a contractually fixed interest rate" and the differences actually "ha[d] no bearing on the fund's ability to offer higher crediting rates." *Id*. ("From the perspective of a plan participant or investor, they

9

[allegedly] provide the same benefit."); *see also Payne*, 2024 WL 4228613, at *7 (same). Indeed, Plaintiffs here are not "comparing apples and oranges" when there is "substantial overlap in the" underlying aspects. *Lucero*, 2023 WL 2424787, at *4; *see also Mator*, 102 F.4th at 182 (same). Simply put, Defendants raise premature factual disputes. *See id*., at *5; *Disselkamp*, 2019 WL 3536038, at *8 ("Defendants have submitted exhibits and engaged in detailed arguments concerning comparative credit ratings for the funds. […] A motion to dismiss is not, however, the appropriate vehicle for [these] arguments."); *Miller*, 2020 WL 6479564, at *7 (similar).

There are several other legally deficient issues with Defendants' list. First, the list is nothing more than non-obvious, speculative reasons for why Defendants continuously agreed to unreasonable rates. But "the Supreme Court's directive to recognize the 'difficult tradeoffs' that an ERISA fiduciary faces, and the 'range of reasonable judgments' that may be made, and to consider alternative explanations for the fiduciary conduct complained of" are "***alternative explanations [that] need not be conclusively ruled out at the pleading stage***." *Hughes II*, 63 F.4th at 628 (emphasis added); *see also Payne*, 2024 WL 4228613, at *4 n.2 (applying *Hughes II* to an SVF case). Second, Defendants ask this Court to adopt the very standard that virtually every Circuit, including this one, has refused to adopt because "an ERISA plaintiff alleging breach of fiduciary duty does not need to plead details to which she has no access." *Allen*, 835 F.3d at 678. This includes inaccessible contracts. *See Mator*, 102 F.4th at 181; *Parmer v. Land O'Lakes, Inc.,* 518 F. Supp. 3d 1293, 1307-08 (D. Minn. 2021) ("[T]he contract […] to which plaintiffs are not privy - cannot be used to defeat plaintiffs' [imprudence] claim at this stage" of an ERISA case).

Finally, it is important to note that the "characteristics" on Defendants' list are red herrings, because they are irrelevant to Plaintiff's theory of liability. Specifically: (1) "the type of stable value funds" does not affect Defendants' ability to achieve a better rate; (2) all SVFs "protect

[plaintiffs'] assets" so it does not matter "whether the plan owns the underlying assets[;]" (3) Defendants do not explain (nor would it matter) how *less* protection "in the event of insurer default" would logically justify a *lower* rate because Plaintiff would be taking on more risk. MTD at 10. Again, the SVFs in the Complaint all have the same essentials for comparator purposes.

Notably, in other sections, Defendants cite caselaw and (improperly referenced) websites that actually explain that all SVFs are substantially similar, especially in terms of assets, risks, and objectives. *See* MTD at 9 (quoting the summary judgment decision of *Ellis v. Fid. Mgmt. Tr. Co.*, 883 F.3d 1 (1st Cir. 2018)); MTD at 10 n.6.[3] Defendants' other out-of-circuit SVF cases are materially distinguishable in terms of theories of breach, and are also materially misrepresented by Defendants. For starters, *Barchock* did not hold that Defendants can escape liability simply because the funds "always had a positive credit rate" (*i.e.*, any return above 0.00%) and the SIF met its objective in this case and was always presumably prudent "[i]n light of the goals of stable value investments[.]" MTD at 8.[4] As a matter of law, "[i]f a prudent fiduciary would have discovered additional information that prompted a different investment course, then the Defendants' claim that the Plan is without loss is consequently without merit." *Olsen*, 180 F. Supp. 2d at 572 (denying the defendants' motion for summary judgment in an SVF case); *see also Russell*, 2024 WL 2892837, at *3 (disregarding the defendants' opinion "that the performance of the funds in this case was entirely satisfactory."). In *Barchock*, however, the issue was not the rate of return, but instead "***solely***" that the "cash-equivalent allocation 'departed radically' from both industry averages and the underlying financial logic of stable value management." *Barchock v. CVS Health Corp.*, 886 F.3d 43, 52 (1st Cir. 2018) (emphasis added). That SVF's ***fund-specific***

---

[3] Defendants cite Metlife's website, where an SVF provider details the overwhelming similarities.
[4] Nor does the SIF's increase in assets support Defendants' assumption that the credit rating was acceptable, as opposed to simply having more participants or more money invested. MTD at 8.

"stated objective of preserving capital while outperforming money market funds" was an explanation, whereas there is no similar allegation or central, specific objective here. *Id*., at 49.

*Lalonde* is also inapposite because Plaintiff is not alleging that Defendants should have "offer[ed] any particular type or mix of funds[,]" and the instant Complaint's comparisons include far more than two funds with "only a modest superiority." *Lalonde v. Massachusetts Mut. Ins. Co*., 728 F. Supp. 3d 141, 156 (D. Mass. 2024); *c.f.*, Compl., ¶¶ 85-86; *see also Payne*, 2024 WL 4228613, at **7-8 (distinguishing *Lalonde* and upholding allegations "that a prudent fiduciary would have leveraged the size of the plan to either negotiate a better deal with MassMutual or [] remove" the SVF). However, *Lalonde* also undermines Defendants' SVF comparator arguments. The court did *not* delve into the different types of SVFs, nor find that the SVFs were incomparable, but instead explicitly stated that the "[] Guaranteed Investment Account ("GIA")" and a "Separate Account Guaranteed Interest Contract" were "*similar*." *Lalonde*, 728 F. Supp. 3d at 148 (emphasis added). Defendants also attempt to mislead the Court about the similarities between this case and *Coppel v. SeaWorld Parks & Ent., Inc*., 2024 WL 3086702 (S.D. Cal. Jan. 31, 2024). *See* MTD at 10,11. *Coppel* did not dismiss the SVF fund claims. To the contrary, the court held that although the underperformance itself was not plausibly alleged, "underperformance is only one of the theories" regarding the SVF. *Coppel*, 2024 WL 3086702, at **16–17. The plaintiffs also alleged the fiduciaries "fail[ed] to competitively bid SVF providers," and "allowed MassMutual to retain excessive spread fees" which "***stated a claim***." *Id*. (emphasis added). The same is true here.

Lastly, Defendants use an improper website, to make a leaping conclusion that there are not enough comparators because there are/were so many SVFs in the existence. *See* MTD, at 14. The Complaint's 25 comparators are more than legally sufficient. *See* Compl., ¶ 85; *Hughes II*, 63 F.4th at 632 (four comparators were sufficient); *Mator*, 102 F.4th at 187 (same); *Payne*, 2024 WL

4228613, at *2 (two SVF comparators were enough). Further, Defendants' argument fatally ignores the allegation that the Plan was in the top 1% of plans regarding size, which enhanced its rate potential. *See Rodriguez v. Hy-Vee, Inc.*, 2022 WL 16648825, at *10 (S.D. Iowa Oct. 21, 2022) ("It is inconsistent for Defendants, on the one hand, to criticize Plaintiffs for not picking the right comparators […], yet also criticize them for not picking enough comparators based on the entire universe of 401(k) plans, the overwhelming majority (99.9%+) of which are far smaller than the Hy-Vee Plan."). Defendants' meaningful comparator arguments are unpersuasive.

### 4.      Plaintiff's calculations are plausible

"[T]he calculated yield is interest credited divided by the end of year balance." Compl., ¶ 85 n. 9. Contrary to Defendants' misrepresentation of this footnote, Plaintiff does not use mere "estimates" and does not "admit[]" that the crediting rates are inaccurately pled. MTD at 5; *see also id.*, at 2, 11-13. Calculations using year-end, or annual, data available in Form 5500s are routinely upheld plausible in ERISA cases, even though it may be assumed that underlying plan numbers (as data input) fluctuate during any given year. *See, e.g., Mator; Lucero*, 2023 WL 2424787, at *4 n.7; *Mazza*, 2023 WL 3558156, at *2. Defendants offer no law in support of their position that Plaintiff's method is incorrect. *See* MTD at 12. Nevertheless, allegations involving estimates are also plausible. *See Allen*, 835 F.3d at 673 (using "the estimated value of the stock").

"Even if accepted as true, the 5500 form would not respond to the entirety of Plaintiffs' allegations, nor would it undermine Plaintiffs' allegations." *Coppel*, 2024 WL 3086702, at *10. Defendants' own improper exhibit confirms that there is imprecise data on crediting rates in the Form 5500s, so exact calculations are warranted. For example, Defendants state "N/A" for the crediting rate information for several plans, and other plans provide only ranges or average yields. *See* ECF No. 20-3, generally. Critically, Plaintiff's calculations either fall within the ranges or

13

below the averages provided in the Form 5500s. *Id.*[5] Hence, Plaintiff's calculations are not "facially wrong with respect to the SIF" nor contradicted by the Form 5500s. MTD at 13.[6]

### 5. The extent of underperformance is significant

Throughout the Class Period, the SIF underperformed the Comparator SVFs consistently, and "by an average of over 45%." Compl., ¶¶ 85-86. This was not "minor." MTD at 13; *see Allen*, 835 F.3d at 680 ("we are obliged to take as true the plaintiffs' alleged" fact that "the interest rate" was "unreasonabl[e] […] The district court should not have dismissed this claim as 'conclusory'"); *see also Lau v. Metro. Life Ins. Co.*, 2016 WL 5957687, at *5 (S.D.N.Y. Aug. 22, 2016) ("At this stage, the Court cannot definitively conclude that the minimum rate of return was reasonable."); *Olsen v. Hegarty*, 180 F. Supp. 2d 552, 569 (D.N.J. 2001) ("neither may the Court conclude that these same duties were not violated simply because the [stable value] Fund did not suffer huge actual losses."); *Russell v. Illinois Tool Works, Inc.*, 2024 WL 2892837, at *3 (N.D. Ill. June 10, 2024) (arguments that "the performance of the funds in this case was entirely satisfactory [… is] insufficient to warrant dismissal.").

Defendants' argument that there is some threshold minimum for alleging underperformance is unpersuasive and supported by mostly out-of-circuit cases involving mutual funds and material misrepresentations of SVF cases. *But see* § III.B.1, *supra*. Additionally, Defendants misrepresent the case of *Forman v. TriHealth, Inc.*, 563 F.Supp.3d 752 (S.D. Ohio 2021), where the Sixth Circuit never "*aff'd in relevant part*" the holding that "underperformance ranging from 1.00% to 'just over' 2.00% was 'simply too small.'" MTD at 14 (quoting *Forman*,

---

[5] The fact that Plaintiff's precise calculations "were below minimum crediting rate guarantees" only enhances Plaintiff's allegations that the comparator had better rates. MTD at 13.

[6] Defendants' logic "that the SIF was not divided equally between those GICs" MTD at 13, also does not undermine the Complaint, because even if the underlying GIC with the highest rate was 100% of the SIF, the rate would still be lower than all of the Comparator SVFs. *See* Compl., ¶ 85.

563 F.Supp.3d at 764). The Sixth Circuit actually reversed that holding in part because the "fund *guarantees* worse returns" than the comparator. *Forman v. TriHealth, Inc*., 40 F.4th 443, 451 (6th Cir. 2022) (emphasis in original). That is the breach here – Defendants contractually guaranteed worse returns. *See* Compl., ¶¶ 86-88. Defendants also misrepresent *Rodriguez*, *see* MTD at 13, where the court actually held that considering investment *fees*, that are charged as basis points, in terms of percentages is "***mathematically accurate***" but could "potentially" be "misleading." *Rodriguez*, 2022 WL 16648825, at *2 n.3 (emphasis added). Using percentage comparisons are nonetheless well-pled, accurate allegations. *See Acosta*, 2024 WL 3888862, at *5 ("similarly situated funds accrued significantly lower administrative costs' by at least 'ten percent across the board."). Defendants misrepresent *Barchock*, where "the *Complaint d[id] not compare [the comparators'] returns with the actual returns of the CVS Stable Value Fund*" whatsoever. *Barchock*, 2017 WL 9324762, at *3 (emphasis added). Lastly, as Defendants point out, the most underperformance in *Lalonde* was 2.5%, much lower than the differences here. *See* MTD at 14. Plus, *Lalonde* had a different theory of liability.

In sum, Plaintiff has stated a plausible claim for imprudence in Count I. Therefore, Count II is also plausible because it is "derivative of the underlying claim in Count I." MTD at 15.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' motion to dismiss Plaintiff's Complaint, or in the alternative, grant Plaintiff leave to amend. With respect to this Court's rules, any purported relevant deficiencies identified by Defendants may be cured by amendment.

Dated: August 18, 2025                      Respectfully submitted,

                                            **CAPOZZI ADLER, P.C.**

*/s/ Mark K. Gyandoh*
Mark K. Gyandoh, Esquire
James A. Maro, Esquire
312 Old Lancaster Road
Merion Station, PA 19066
Email: markg@capozziadler.com
      jamesm@capozziadler.com
Tel.: (610) 890-0200

*Counsel for Plaintiff and the Putative Class*

16

## CERTIFICATE OF SERVICE

I hereby certify that on August 18, 2025, a true and correct copy of the foregoing document was filed with the Court utilizing its ECF system, which will send notice of such filing to all counsel of record.

By: /s/ *Mark K. Gyandoh*
Mark K. Gyandoh, Esq.