IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CHARLES CLINTON, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>   v.<br><br>BAXTER INTERNATIONAL INC., et al.,<br><br>        Defendants. | Civil Action No. 1:25-cv-03368<br><br>Honorable Lindsay C. Jenkins |

## DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS

319964666v.11

Plaintiff offers no meaningful response to the Motion. His claims rest entirely on the assertion that Defendants breached their fiduciary duties by maintaining the Stable Income Fund ("SIF") as a Plan investment option, when—according to Plaintiff, based on impermissible hindsight—other stable value funds ("SVF") had higher rates of return. To plead a plausible claim of imprudence, Plaintiff "must provide a sound basis for comparison—a meaningful benchmark." *Albert v. Oshkosh Corp.*, 47 F.4th 570, 581 (7th Cir. 2022) (quoting *Davis v. Wash. Univ. in St. Louis*, 960 F.3d 478, 484 (8th Cir. 2020)). Rather than pleading any details as to why the putative comparator SVFs provide a meaningful benchmark, he offers only the conclusion that the "comparators" and the SIF are "identical or substantially identical." (ECF 1 at ¶ 84.)

The Complaint fails to state a claim because Plaintiff failed to plead how his alleged comparators were similar to the SIF and further pleaded no well-pled facts alleging underperformance. In his response, Plaintiff argues his only burden is to identify funds with higher rates of return than the SIF. He disclaims needing to describe the characteristics of those comparators or otherwise support his conclusion they are "identical" to the SIF. But that argument is belied by the case law he cites and also ignores binding Supreme Court precedent. To state a claim for relief, he must plead facts that support his conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[1] The Court should dismiss the Complaint with prejudice.

## DISCUSSION

### I. Plaintiff Has Pleaded No Facts To Show Meaningful Comparators.

It is axiomatic that a plaintiff attempting to plead a claim of imprudence "must provide a sound basis for comparison—a meaningful benchmark." *Albert*, 47 F.4th at 581 (quoting *Davis*,

---

[1] For the reasons detailed in the Motion and herein, because Count II is a derivative claim and Count I should be dismissed with prejudice as a matter of law, Count II should also be dismissed.

319964666v.11

960 F.3d at 484). While courts recognize ERISA plaintiffs often lack access to details of fiduciary process (and so will allow for certain inferences in pleadings), the same cannot be said for details regarding the challenged funds and selected comparators, which can be researched and should be pleaded. *See Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 822–23 (8th Cir. 2018); *Forman v. TriHealth, Inc.*, 40 F.4th 443, 451 (6th Cir. 2022) ("The plaintiff . . . must do the work of showing that the comparator investment has sufficient parallels to prove a breach of fiduciary duty."). Funds that have different characteristics or investment strategies are not meaningful comparators, even if a plaintiff labels them "comparable" in the complaint. *See Meiners*, 898 F.3d at 823–24 (affirming dismissal where plaintiff failed to identify meaningful comparator). "[T]he complaint must state facts to show the funds or services being compared are, indeed, comparable. The allegations must permit an apples-to-apples comparison." *Remied v. NorthShore Univ. HealthSystem*, No. 22-cv-2578, 2024 WL 3251331, at *13 (N.D. Ill. July 1, 2024) (quoting *Matney v. Barrick Gold of N. Am.*, 80 F.4th 1136, 1149 (10th Cir. 2023)). Plaintiff fails to meet his burden as he simply pled, without any exposition or explanation, the conclusory allegation that his alleged comparators were similar to the SIF.

Plaintiff proffers no substantive response as to why, or how, the alleged comparators are appropriate. The law is clear—Plaintiff bears the burden to plausibly show the Court *why* his cherry-picked alternatives are meaningful comparators for the SIF. *See Matousek v. MidAmerican Energy, Co.*, 51 F.4th 274, 281 (8th Cir. 2022) ("[R]aw performance data . . . falls short of providing a 'meaningful benchmark.'" (citation omitted)); *Albert*, 47 F.4th at 581 ("[A] complaint cannot simply make a bare allegation that . . . returns are too low. . . . Rather, it 'must provide a sound basis for comparison—a meaningful benchmark.'" (citations omitted)).

2

319964666v.11

If anything, the cases on which Plaintiff relies to justify his deficient pleading only further demonstrate why the Complaint fails. For example, the court in *Lacrosse* found the plaintiff there adequately pled that two alleged comparator funds were meaningful benchmarks where plaintiff alleged those comparators were similar in structure (fixed annuity products) and risk tolerance to the challenged investment option. *Lacrosse v. Jack Henry & Assocs., Inc.*, Case No. 23-cv-05088, 2024 WL 3564575, at *3–4 (W.D. Mo. July 11, 2024). In contrast, the Complaint is completely devoid of facts demonstrating this type of commonality.

Similarly, in *Payne v. Hormel Foods Corp.*, No. 24-cv-545, 2024 WL 4228613, at *6 (D. Minn. Sept. 18, 2024), the court held that for a plaintiff to show a meaningful benchmark, he "must not only identify less expensive or better performing options as comparators, but those alternative options must also be similar enough to raise a plausible inference that a prudent investor in like circumstances would not have selected the challenged investment." The *Payne* Court noted that as part of assessing the pleadings, a court can consider such factors as similarity of "structure, objectives, strategy, and risk profile." *Id.* The plaintiff in *Payne*, unlike the Plaintiff in this case, pled that the alleged comparator fund and the fund at issue both shared "the same structure, purpose, and risk profile." *Id.* at *7. As a result, the Court held that the funds were meaningful benchmarks and allowed the complaint to proceed. *Id.*

Judged against the standards in the very cases he cites, Plaintiff failed to plead why his alleged comparators are similar. He labels his comparators as "identical," but does not plead any details that would support a conclusion like the one in *Payne* that any of the "comparator" SVFs he selected share the "same structure, purpose, and risk profile" as the SIF. *Id. Payne* underscores Defendants' point that Plaintiff failed to plausibly plead meaningful comparators. Defendants do not raise any issue of fact, but instead only assert that Plaintiff's pleadings are deficient.

319964666v.11

*Mazza v. Pactiv Evergreen Services, Inc.*, No. 22 C 5052, 2023 WL 3558156 (N.D. Ill. May 18, 2023), is similarly unhelpful to Plaintiff. In *Mazza*, the court held the plaintiff properly pled the comparator recordkeepers were meaningful comparators. *Id.* at *3. In reaching that conclusion, the court noted the amended complaint included:

> [A]llegations that recordkeepers for mega retirement plans like [the plan in question] all provide the same level and quality of services with insignificant variation in price, suggesting that the Plan's [recordkeeping] fees were excessive compared to the services the Plan received based on comparisons to other plans using recordkeepers that provided comparable services for less.

*Id.* The plaintiff in *Mazza* pleaded an apples-to-apples comparison of recordkeeping fees charged for similar services provided to similarly-sized retirement plans, thus providing the court a meaningful basis from which to infer potential imprudence. *Id.* The court allowed that complaint to proceed not because (as Plaintiff suggests) there is no need for a plaintiff to plead meaningful comparators, but instead because that plaintiff there pleaded meaningful comparators. *See id.*

Plaintiff's claim that, as contracts, SVFs face a different pleading burden than mutual funds is false, as is his related contention that Defendants "rely too heavily on mutual fund cases." (*See* ECF 30 at 6–7.) ERISA contains one duty of prudence, which applies with equal force to all fiduciary conduct. Plaintiff himself relies on *Mazza*—a case whose sole issue is the prudence of recordkeeping fees—which has nothing to do with investment performance (and is certainly not limited to stable value funds). It always requires a plaintiff attempting to plead imprudence through comparisons to alternatives in the market to adequately plead "a sound basis for comparison." *See Albert*, 47 F.4th at 581 (citation and internal quotations omitted). Further, the publicly available Form 5500 filings provide a detailed explanation of the SIF, giving Plaintiff the requisite detail to identify meaningful comparators. (*See* Mot. Ex. 1 at 54).

Unlike in the cases on which Plaintiff relies, the Complaint lacks any facts showing his cherry-picked SVFs are meaningful comparators. Instead, Plaintiff labels the alleged

4

comparators "identical or substantially identical" to the SIF. (*See* ECF 1 at ¶ 84.) However, "[s]imply labeling funds as 'comparable' or 'materially similar' is insufficient to establish that those funds are meaningful benchmarks against which to compare the performance of the challenged funds." *Coppel v. SeaWorld Parks & Ent., Inc.*, No. 21-cv-1430, 2024 WL 3086702, at *15 (S.D. Cal. Jan. 31, 2024) (citation omitted). Plaintiff asserts *Coppel* did not dismiss the SVF claims, yet concedes the court held the SVF underperformance claims were not plausibly pleaded (in other words, failed to state a claim). (*See* ECF 30 at 13.) As Defendants assert in the Motion, *Coppel* found the SVF underperformance claims failed to state a claim because—like Plaintiff's claims here—they were based exclusively on conclusory statements, not facts. 2024 WL 3086702 at *16. Simply saying something is a comparator fails under *Coppel*, and compels dismissal here.

Plaintiff further attempts to avoid the deficiencies in his pleading by encouraging the Court to ignore Defendants' citations to "non-governmental websites" providing background information on the differences between different types of "stable value funds." (*See* ECF 30 at 6-7.) Defendants' citation to secondary sources regarding the different types and characteristics of investments that can be categorized as "stable value funds" is intended to provide the Court with background on the type of investment challenged here. (*See* ECF 19 at 4, 8-9)[2] Plaintiff does not that contend *anything* about those publicly available publications is incorrect, and actually asserts the "sources do not contradict the Complaint." (ECF 30 at 7.)

---

[2] Defendants do not use "improper websites" to refute Plaintiff's Complaint. Defendants merely cite these sources, the authenticity of which Plaintiff does not dispute, as background regarding SVFs to underscore that to plead comparators, Plaintiff needs to plead facts reflecting "why" his comparators are similar to the SIF. This is a proper basis for citing documents in a motion to dismiss. *See, e.g., Hecker v. Deere & Co.*, 556 F.3d 757 (7th Cir. 2009) (finding court acted within discretion in considering documents not mentioned in complaint, when offered for a "limited purpose," "publicly available," relevant to questions before the court, and "concededly authentic").

5

That said, the Court need not rely on the background to grant the motion. Indeed, with or without acknowledging that there are different segments of the stable value market, and that those segments differ materially from one another, Plaintiff's Complaint should be dismissed because it makes no attempt to support its conclusory assertion that the comparators cited present meaningful benchmarks for the challenged fund. Plaintiff cannot excuse these deficiencies by claiming that even if his comparator rates do not align with the Form 5500s, the Court should still find the crediting rate differential between the SIF and these "comparators" stark enough to demonstrate an imprudent fiduciary process. (*See* ECF 30 at 8.) Defendants do not dispute that a plaintiff can plead a valid process-based prudence claims by pleading meaningful comparisons that support an inference that the process must have been flawed (as is confirmed by Plaintiff's citation to *Hughes II*). (*See* ECF 30 at 8.) But for any disparity between crediting rates to support an inference of imprudence, Plaintiff must first show he is drawing an apples-to-apples comparison. Otherwise, his Complaint leaves open the possibility that the investments performed differently not because one was imprudent, but because they were designed to perform differently. "Comparing apples and oranges is not a way to show that one is better or worse than the other." *Davis*, 960 F.3d at 485.

The Motion detailed how Plaintiff could have made such a showing. (ECF 19 at 13–15.) Yet, Plaintiff provides the court with *no* details as to "what the investment vehicles are, what their investment purposes are, or how they are managed," the court cannot assess whether the comparators are sufficient to plausibly suggest underperformance. *See Coppel*, 2024 WL 3086702, at *15–16 (holding plaintiff failed to plead plausible underperformance claim, because claim rested solely on conclusory assertion that better performing comparators were "identical or substantially identical products" and lacked any other detail to support their conclusion).

6

319964666v.11

## II.    Plaintiff's Calculations are Speculative and Misleading.

Plaintiff attempts to brush aside the conflicts between the allegations in his Complaint and the documents on which he purportedly relied—going so far as to claim that those conflicts actually support the plausibility of his Complaint. (*See* ECF 30 at 14–15 & n.5–6.) But the defects identified by Defendants do the exact opposite. They demonstrate the complaint is not "well-pleaded." *See Burlet v. Baldwin*, 452 F. Supp. 3d 801, 805 n.1 (N.D. Ill. 2020) ("[When evaluating] motions to dismiss, the Court must accept all *well-pleaded* facts in the Complaint as true and draw all permissible inferences in favor of the plaintiff[]." (emphasis added)). A plaintiff cannot "state a claim to relief that is plausible on its face," *Iqbal,* 556 U.S. at 678, when the source on which he relies inconvertibly is at odds with his alleged fact. *See Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013) (noting when a complaint attaches or incorporates a document, then conflicts with it, "the exhibit ordinarily controls, even considering a motion to dismiss").

In the Complaint, Plaintiff sets forth various crediting rates for his "comparator" SVFs, derived from reference to those plans' Form 5500 filings. (*See* ECF 1 at ¶ 85.) Plaintiff states the crediting rates listed in the Complaint are either: 1) the crediting rate disclosed in the Form 5500, if one was disclosed, or 2) if none was disclosed, a number his lawyer calculated by dividing the "interest credit" in the Form 5500 "by the end of year balance." (ECF 1 at 85 n.9.) None of these rates are well-pled, for the reasons detailed in the Motion and which Plaintiff fails to contradict. In short, the Form 5500s on which Plaintiff purportedly relied conflict with the crediting rates Plaintiff pleads. (*See* ECF 20-3.) These allegations are thus not well-plead under *Bogie*.

While Plaintiff defends the use of estimated rates in his Opposition (while conceding the numbers in his Complaint are *not* correct crediting rates), the "methodology" employed to calculate the rates in the complaint is unreliable, replete with errors, and should be given no weight. The issue with Plaintiff's pleaded rates is not necessarily that they are estimates, but

7

instead that (1) he admits to using an inconsistent methodology for determining the alleged crediting rates, and (2) the estimates are mathematically unsound. Among their many shortcomings, detailed in the Motion and ignored in the Opposition, his calculations do not consider the effect of money entering or exiting the funds during the year, as he looks at the amount of money in the fund at the end of the year. (*See* ECF 19 at 16–17.) Even on a motion to dismiss, it is "inappropriate" to defer to "an approximation . . . when . . . the calculations are facially and demonstrably wrong." *Woznicki v. Aurora Health Care Inc.*, No. 20-cv-1246, 2022 WL 1720093, at *3 (E.D. Wis. May 27, 2022). Plaintiff's crediting rates are not well-pleaded.

**III.    Plaintiff Cannot Plead Underperformance Based on a Cherry-Picked Sampling.**

Plaintiff does not dispute the well-established rule that his claims cannot rest on hindsight. Indeed, it is a central ERISA tenet that "the duty of prudence turns on 'the circumstances . . . prevailing' at the time the fiduciary acts." *Hughes v. Nw. Univ.*, 595 U.S. 170, 177 (2022) (citing 29 U.S.C. § 1104(a)(1)(B)). Plaintiff cites *Disselkamp v. Norton Healthcare, Inc.*, No. 3:18-cv-00048, 2019 WL 3536038, at *8 (W.D. Ky. Aug. 2, 2019), which held "[d]efendants correctly point out that any attempt by Plaintiffs to rely on hindsight to prove this breach is improper." Instead, Plaintiff seeks to camouflage the hindsight-based nature of his claims by labeling the SIF a "chronic" underperformer, such that it must have been imprudent to "agree[] to and "renew[]" the underlying contracts at the time they did so. (*See* ECF 60 at 9.)

But Plaintiff's claims of "chronic" underperformance still rest on his baseless comparisons to the cherry-picked alternative funds in his Complaint, without establishing they present a meaningful benchmark and despite their constituting a minuscule sample of SVFs in the market. (*See* ECF 19 at 18–19.) Plaintiff's limited sample size—together with the reality that he had the benefit of hindsight in choosing the highest-performing alleged comparators—dooms his attempt to plead that the SIF was an underperformer, let alone a "chronic" one.

8

Comparison of the SIF to the small, cherry-picked sample size in the Complaint does not plausibly support Plaintiff's claim, because "simply 'pointing to another investment that has performed better . . . does not suffice to plausibly plead an imprudent decision.'" *Abel v. CMFG Life Ins. Co.*, No. 22-cv-449, 2024 WL 307489, at *5 (W.D. Wis. Jan. 26, 2024) (citation omitted). The cases on which Plaintiff relies reinforce this point. In each, the courts found that the plaintiffs provided bases to believe the comparisons in the complaint offered a meaningful benchmark that could have been used *at the time a decision was made*. *See Russell v. Ill. Tool Works, Inc.*, No. 22 C 2492, 2024 WL 2892837, at *2 (N.D. Ill. June 10, 2024) (plaintiff stated a claim when he pleaded that at the time fiduciary decided to retain recordkeeper, other vendors provided the same range of services for lower fees); *Lucero v. Credit Union Ret. Plan Ass'n*, 22-cv-208, 2023 WL 2424787, at *5 (W.D. Wis. Mar. 9, 2023) (same); *Acosta v. Bd. of Trs. of Unite Here Health*, No. 22 C 1458, 2024 WL 3888862, at *6–7 (N.D. Ill. Aug. 21, 2024) (same). In contrast, Plaintiff offers no support that his cherry-picked samples were meaningful and thus would have been used by a prudent fiduciary during the relevant time period in this case.

Plaintiff's citation to *Allen v. Greatbanc Trust Co.*, 835 F.3d 670 (7th Cir. 2016), is similarly unavailing. *Allen* alleged fiduciaries should have anticipated a drop in value of stock when they entered into the transaction that caused the drop. *Id.* at 680. The allegations turned on what the fiduciaries knew when they entered a transaction, not a hindsight analysis. *Id.*

Equally inapt are Plaintiff's attempts to circumvent the cases cited in the Motion. Defendants properly cited *Barchock v. CVS Health Corp.*, No. 16-061, 2017 WL 9324762 (D.R.I. Jan. 31, 2017), *aff'd* 886 F.3d 43 (1st Cir. 2018). There, the First Circuit affirmed the dismissal of an imprudence claim where plaintiff alleged the fund in question underperformed between .63% to 1.29% against comparators. *See* 886 F.3d at 55. The appellate court held it was

9

"unreasonable to infer" that the fund in question was a "severe outlier," when the alleged underperformance, as the district court found, ranged between .63% to 1.29%. *Id.* at 52. As in *Barchock,* Plaintiff's percentage-based claim of "severe" underperformance is unfounded.[3]

Plaintiff does not dispute Defendants' summary of the holding of *Forman v. TriHealth, Inc.*, 563 F. Supp. 3d 753 (S.D. Ohio 2021). Plaintiff takes issue with the citation noting "*aff'd in relevant part*" by the Circuit Court. This citation accurately reflects the appellate court did not disturb the part of the lower court's holding variances in rates raised by plaintiffs were "simply too small" to state a claim. *See id.* at 764; *Forman.*, 40 F.4th at 449-50. Equally bereft of merit is Plaintiff's feigned outrage at the citation to *Rodriguez v. Hy-Vee, Inc.*, No. 4:22-cv-00072, 2022 WL 16648825 (S.D. Iowa Oct. 21, 2022). Defendant cited this case for its proposition that "[w]hen the starting point for a comparison is low . . . even a small change . . . can produce a large change on a percentage basis." *Id.* at *2 n.3. This is simple arithmetic and applies regardless of whether referencing interest rates or crediting rates. Indeed, Plaintiff proves the potentially misleading effect of percentage-based comparisons in his Opposition, by arguing the SIF underperformed "by an average of over 45%," when what he is actually referring to is a difference of less than 2%. (*See* ECF 30 at 15.)

**CONCLUSION**

Plaintiff failed to carry his burden and offered no meaningful response to the arguments in the motion to dismiss. The Court should grant the motion and dismiss the Complaint with prejudice.

---

[3] As in *Barchock*, the court in *Lalonde v. Mass Mutual Ins. Co.*, 728 F. Supp. 3d 141, 156-57 (D. Mass. 2024) found mere allegation of "two alleged comparator funds with higher credit return rates over a seven-year period is the type of hindsight-based allegation which is insufficient to support a plausible inference of breach." Contrary to Plaintiff's specious statements, Defendants accurately cited this case.

319964666v.11

DATED: September 8, 2025

By: */s/ Samuel M. Schwartz-Fenwick*

Samuel M. Schwartz-Fenwick
Thomas M. Horan
**SEYFARTH SHAW LLP**
233 South Wacker Drive
Suite 8000
Chicago, Illinois 60606-6448
Email: sschwartz-fenwick@seyfarth.com
thoran@seyfarth.com
Telephone: (312) 460-5000
Facsimile: (312) 460-7000

*Counsel for Defendants*

11

319964666v.11