IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

CHARLES CLINTON, individually and on
behalf of all others similarly situated,

Plaintiffs,

v.

BAXTER INTERNATIONAL INC., et al.,

Defendants.

Civil Action No. 1:25-cv-03368

Honorable Lindsay C. Jenkins

**PLAINTIFF'S SUPPLEMENTAL MEMORANDUM
OF SUPPLEMENTAL AUTHORITY**

## I. INTRODUCTION

Plaintiff Charles Clinton respectfully submits this supplemental memorandum submitting

the decision in *Carter v. Sentara Healthcare Fiduciary Comm.*, No. 25-CV-16, 2025 WL 2427614

(E.D. Va. Aug. 11, 2025) (previously filed as ECF No., 32-1, Exhibit A), in accordance with this

Court's Order entered by the Clerk on October 9, 2025. *See* ECF No. 35.

*Carter* is helpful to the Court because, like here, the plaintiffs alleged that the defendants

breached their fiduciary duty of prudence under the Employee Retirement Income Security Act of

1974 (ERISA), focusing on the plan's stable value investment ("SVF"), also known as a

guaranteed investment contract ("GIC"). The court evaluated and rejected many of the same

arguments Defendants[1] here make in support of their Motion to Dismiss. *See* ECF No. 19

("MTD"). The court in *Carter* based its holdings on the same factual and legal reasoning set forth

in Plaintiffs' Opposition to Defendants' Motion to Dismiss Plaintiffs' Complaint (ECF No. 30)

---

[1] "Defendants" refers to Baxter International Inc. and the Investment Committee of the Plan. All
capitalized terms not defined herein shall have the same meaning as defined in Plaintiffs' Opp.

1

("Opp."). Critically, the court applied the same Supreme Court precedent as Plaintiff and applied Fourth Circuit precedent that mirrors Seventh Circuit precedent in ERISA cases. *Carter* is persuasive in many ways and supports denying the MTD.

## II.    LEGAL FRAMEWORK

Undoubtedly, the court in *Carter* applied the correct legal framework for 12(b)(6) Motions and ERISA pleading standards. First, "[c]ourts 'accept as true all well-pled facts in the complaint and construe them in the light most favorable to [the plaintiff]." *Carter*, 2025 WL 2427614, at *1 (quoting *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)); *see also* Opp., at 4 (same, quoting *Bayer HealthCare LLC v. Aeropres Corp.*, 727 F. Supp. 3d 738, 744 (N.D. Ill. 2024) (Jenkins, J.)). Also like the Opp., the court pointed to Supreme Court precedent in *Fifth Third Bancorp.* to reiterate that "[t]here is no presumption of prudence for fiduciaries—courts must use a context-specific analysis." *Id.*, at *2 (citing *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014)); *see also* Opp., at 4 (same). As discussed herein, the court's application of Fourth Circuit precedent in ERISA cases also mirrors Seventh Circuit precedent in ERISA cases.

## III.    *CARTER'S* ANALYSIS MIRRORS SEVENTH CIRCUIT PRECEDENT

### A.    Imprudent Processes in Addition to Underperformance

Like in *Carter*, "the Complaint [] plausibly alleges an inference of imprudent processes using several inferences, and does not 'resort[] purely to isolated crediting rate comparisons'" as Defendants incorrectly insist. Opp., at 8 (quoting MTD at 10). While other "courts found that underperformance alone is insufficient[,]" the claims here and in *Carter* are distinguishable because "they do not merely plead that the Committee failed to respond to the [GICs'] underperformance" but also alleges the defendants "'failed to implement a prudent process for selecting, retaining, or monitoring' the [GICs] and provides several examples of what a prudent

process would look like" including "'[r]equest[s] for [p]roposals.'" *Carter*, 2025 WL 2427614, at *6; *see also* Compl., ¶¶ 15,17, 83-88 (alleging similar process failures to conduct requests for proposals to investigate the marketplace and adequately negotiate rates); Opp., at 2 (same). *Carter* accords with Seventh Circuit precedent upholding similar allegations regarding request for proposals (*i.e.*, competitive bidding) "'and negotiating' by 'leverag[ing] plan assets' before agreeing to a contractual rate." Opp., at 7 (quoting *Hughes v. Nw. Univ.*, 63 F.4th 615, 632 (7th Cir. 2023) ("*Hughes II*"), and citing *George v. Kraft Foods Glob., Inc.*, 641 F.3d 786, 798–99 (7th Cir. 2011)). Moreover, the Court recognized that inferential process allegations were sufficient considering the limited information available to plaintiffs at this stage. *See Carter*, 2025 WL 2427614, at *4; *see also* Opp., at 4, quoting *Allen v. GreatBanc Tr. Co.*, 835 F.3d 670, 678 (7th Cir. 2016) (It is "sufficient for a plaintiff to plead facts indirectly" in ERISA cases, because "ERISA plaintiffs generally lack the inside information necessary to make out their claims in detail unless and until discovery commences."); Opp., at 8 ("whether" the rate "was the result of normal economic forces or something more sinister is a matter for a later stage." *Allen*, 835 F.3d at 680). Indeed, the inferences of imprudent processes were plausible because "if the Committee had no process for monitoring the GIBC, its decisions were not within a 'range of reasonable judgments.'" *Carter*, 2025 WL 2427614, at *6 (quoting *Hughes v. Nw. Univ.*, 595 U.S. 170, 177 (2022) ("*Hughes I*")).

### B.    Threshold of Underperformance

The holding in *Carter* aligns with Seventh Circuit precedent in *Allen*, where the Seventh Circuit held that courts "are obliged to take as true the plaintiffs' alleged" fact that "the interest rate" was "unreasonabl[e] […] The district court should not have dismissed this claim as 'conclusory.'" Opp., at 14 (quoting *Allen*, 835 F.3d at 678 and listing cases). Like here, the

3

defendants in *Carter* cited district court decisions to support their position that underperformance of less than 4% is "is insufficient to plead underperformance as a matter of law." *Carter*, 2025 WL 2427614, at *5 (listing cases involving mutual fund challenges). The court was unpersuaded. "[T]his kind of bright-line rule seems inappropriate at the motion-to-dismiss stage" *id.*, because "the Fourth Circuit has said that "[w]hat counts as an imprudent investment that must be removed depends on the circumstances." *Id.*, at *5 n.6 (quoting *Stegemann v. Gannett Co., Inc.*, 970 F.3d 465, 475 (4th Cir. 2020)); *accord Hughes II*, 63 F.4th at 628 (reiterating the Supreme Court's holdings that "the context specific inquiry is key"); *Albert v. Oshkosh Corp.*, 47 F.4th 570, 575 (7th Cir. 2022) ("The Supreme Court rejected this portion of our analysis because '[s]uch a categorical rule is inconsistent with the context-specific inquiry that ERISA requires.'"); *Allen*, 835 F.3d 670. Thus, "the Court reasonably infers that 1.36% is sufficient underperformance for the Committee to intervene." *Carter*, 2025 WL 2427614, at *6. Likewise, the degree of underperformance in the instance case "was not 'minor'" Opp., at 14 (quoting MTD at 13), but actually worse than in *Carter* and sufficiently alleged. *See id.*, at 3 ("the SIF underperformed the Comparator SVFs by an average of over 45%" on a relative basis and often "above 4%" on an absolute basis). Again, *Carter* emphasized that underperformance is only one aspect of the Complaint, because, like here, imprudent processes were also alleged. *See* Section II.A. *supra*.

### C.     Meaningful Benchmark Analysis

The MTD incorrectly insists that the Court find that that Plaintiffs have failed to offer a meaningful benchmark based on a specific list of characteristics that Defendants believe must be pled and are not similar amongst the SIF and comparisons. *See* Opp., at 7-9. Defendant's arguments are based on out-of-circuit precedent. *Id*. The court in *Carter* disagreed with this same framework for several apt reasons. *See Carter*, 2025 WL 2427614, at *7 (the defendant's "main

objection" was that the "historical crediting rate[]" comparisons "d[id] not consider other critical information that the Eighth Circuit has deemed necessary" and the "comparison funds pleaded in the Complaint are not comparable" using Eighth Circuit criteria). Although the defendants cited district courts in the Fourth Circuit applying the Eighth Circuit's standards, the court "ha[d] reason to believe the Fourth Circuit might disagree" with other Circuits imposing a meaningful benchmark required, *id*, at \*6 n.11, because the Fourth Circuit repeatedly refused to "create a firm boundary beyond which underperformance could not plausibly give rise to a duty to intervene." *Carter*, 2025 WL 2427614, at., \*5 n.6 (relying on *Stegemann*, 970 F.3d at 475 and *Tatum v. RJR Pension Inv. Comm.*, 761 F.3d 346, 358 (4th Cir. 2014)). This same logic applies to the Seventh Circuit, because "'[n]othing in either *Albert* [*v. Oshkosh Corp.*, 47 F.4th 570 (7th Cir. 2022)] or *Hughes* [*II*]'" requires a plaintiff to plead an 'unduly burdensome' list of details if using comparisons to state a claim." Opp., at 4-5 (quoting *Acosta v. Bd. of Trs. of Unite Here Health*, 2024 WL 3888862, at \*7 (N.D. Ill. Aug. 21, 2024)); *see also Abbott v. Lockheed Martin Corp.*, 725 F.3d 803, 806-07 (7th Cir. 2013) (the defendants' motion for summary judgment was denied where the challenged fund had such "a low rate of return" that it did not "provide a meaningful retirement asset" compared to "a variety of stable value funds.").

*Carter* rightly instructs that, because the plaintiffs alleged factual reasons for why the comparators were meaningful, the defendant's "disagree[ment] with that comparison […] does not render the plaintiffs' allegations of underperformance insufficient as a matter of law. At most, the Committee raises a factual dispute that should not be adjudicated here." *Carter*, 2025 WL 2427614, at \*7; *see also id.*, at \* 6 ("the Committee's argument is highly factual," which indicates that the questions of "benchmarks is more appropriate for summary judgment."). The defendants also criticized the plaintiffs' "alternative measure" showing that the fund's "standard deviations

[was] below the average rate of" comparators, "[b]ut the plaintiffs do not fail to allege underperformance merely because they use a measure with which the Committee disagrees." *Carter*, 2025 WL 2427614, at *5 n.7. Because "[w]hether underperformance measured by standard deviation is enough to prompt a reasonably prudent fiduciary to intervene is a matter for summary judgment." *Id*. Similarly, Defendants here criticize (and misconstrue) Plaintiffs well-pled calculations, but Defendants arguments are premature. *See* Opp., at 13-14.

## IV.    CONCLUSION

For these reasons, and for the reasons Plaintiffs set forth in their Opposition, Plaintiffs respectfully request that the Court deny Defendants' Motion to dismiss.

Respectfully submitted, this 23rd day of October, 2025.

**CAPOZZI ADLER, P.C.**

*/s/ Mark K. Gyandoh*
Mark K. Gyandoh, Esquire
James A. Maro, Esquire
312 Old Lancaster Road
Merion Station, PA 19066
Telephone: (610) 890-0200
Facsimile: (717) 233-4103
Email: markg@capozziadler.com
        jamesm@capozziadler.com

*Counsel for Plaintiff and the Putative Class*

6

**CERTIFICATE OF SERVICE**

I hereby certify that on October 23, 2025, a true and correct copy of the foregoing document was filed with the Court utilizing its ECF system, which will send notice of such filing to all counsel of record.

By: */s/ Mark K. Gyandoh*
Mark K. Gyandoh, Esq.