IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CHARLES CLINTON and MICHAEL LEDBETTER, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> BAXTER INTERNATIONAL INC., et al., <br><br> Defendants. | Civil Action No. 1:25-cv-03368 <br><br> Honorable Lindsay C. Jenkins |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

323090156

## TABLE OF CONTENTS

I.  BACKGROUND ................................................................................................ 2

    A.  Plaintiffs Failed To Plead Meaningful Benchmarks. ........................................... 2

II.  DISCUSSION ................................................................................................... 6

    A.  Standard of Review ............................................................................................. 6

    B.  Plaintiffs Fail to Show There Were Year-In, Year-Out Better-Performing Alternatives That Cast Doubt on the Investment Committee's Process. ................ 6

    C.  Short-Term Credit Rate Differences Do Not Make A Stable Value Fund Superior. ............................................................................................................... 8

    D.  Plaintiffs' Claims Of Underperformance Are Not Based On Meaningful Benchmarks. ...................................................................................................... 10

    E.  Plaintiffs' Claims Of Underperformance Are Overstated and Misleading. .......... 15

    F.  Plaintiffs' Monitoring Claim Fails to State Any Claim For Relief (Count II). ....................................................................................................... 15

III.  CONCLUSION ................................................................................................. 15

323090156

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abel v. CMFG Life Ins. Co.*,
 No. 22-cv-449, 2024 WL 307489 (W.D. Wis. Jan. 26, 2024)......................................7, 10, 12

*Albert v. Oshkosh Corp.*,
 47 F.4th 570 (7th Cir. 2022) ............................................................................... *passim*

*Anderson v. Intel Corp. Inv. Pol'y Comm.*,
 137 F.4th 1015 (9th Cir. 2025) ...............................................................................................2

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009)..................................................................................................................6

*Barchock v. CVS Health Corp.*,
 886 F.3d 43 (1st Cir. 2018)......................................................................................................9

*Baumeister v. Exelon Corp.*,
 No. 21-CV-6505, 2023 WL 6388064 (N.D. Ill. Sept. 29, 2023) ...........................................12

*Beldock v. Microsoft Corp.*,
 No. C22-1082, 2023 WL 3058016 (W.D. Wash. Apr. 24, 2023)..............................................8

*Bogie v. Rosenberg*,
 705 F.3d 603 (7th Cir. 2013) ...................................................................................................3

*Bracalente v. Cisco Sys., Inc.*,
 No. 5:22-CV-04417, 2023 WL 5184138 (N.D. Cal. Aug. 11, 2023) ...................................8, 9

*Coyer v. Univar Sols. USA Inc.*,
 No. 1:22 CV 0362, 2022 WL 4534791 (N.D. Ill. Sept. 28, 2022)............................................8

*Dale v. NFP Corp.*,
 658 F. Supp. 3d 620 (N.D. Ill. 2023) .....................................................................................11

*Davis v. Wash. Univ. in St. Louis*,
 960 F.3d 478 (8th Cir. 2020) ..................................................................................................10

*DeBruyne v. Equitable Life Assurance Soc'y*,
 920 F.2d 457 (7th Cir. 1990) ....................................................................................................9

*Enstrom v. SAS Inst.*,
 No. 5:24-CV-105-D, 2025 WL 685219 (E.D.N.C. Mar. 3, 2025)............................................8

ii

*Fifth Third Bancorp v. Dudenhoeffer*,
573 U.S. 409 (2014)..................................................................................................6

*Gosse v. Dover Corp.*,
No. 22 C 4254, 2025 WL 2996795 (N.D. Ill. Oct. 24, 2025) .....................................11

*Hall v. Cap. One Fin. Corp.*,
No. 1:22-CV-00857, 2023 WL 2333304 (E.D. Va. Mar. 1, 2023)...........................8

*Hecker v. Deere & Co.*,
556 F.3d 575 (7th Cir. 2009) ........................................................................3, 4, 5, 9

*Hughes v. Northwestern Univ.*,
63 F.4th 615 (7th Cir. 2023) .............................................................................10, 12

*Hughes v. Nw. Univ.*,
595 U.S. 170 (2022)..................................................................................... *passim*

*Iannone v. AutoZone, Inc.*,
344 F.R.D. 319 (W.D. Tenn. 2023) ........................................................................14

*Lalonde v. Mass. Mutual Ins. Co.*,
728 F. Supp. 3d 141 (D. Mass. Mar. 29, 2024) ...................................................7, 14

*Lard v. Marmon Holdings, Inc.*,
No. 1:22-CV-4332, 2023 WL 6198805 (N.D. Ill. Sept. 22, 2023).......................8, 12

*Lard v. Mormon Holdings*,
No. 22-cv-04332, 2025 WL 1383269 (N.D. Ill. May 13, 2025)...........................8, 9

*Loomis v. Exelon Corp.*,
658 F.3d 667 (7th Cir. 2011) .....................................................................................9

*Luckett v. Wintrust Fin. Corp.*,
No. 22-CV-03968, 2023 WL 4549620 (N.D. Ill. July 14, 2023)............................12

*Luckett v. Wintrust Financial Corp.*,
No. 22-cv-03968, 2024 WL 3823175 (N.D. Ill. Aug. 14, 2024) ...............................9

*Matney v. Barrick Gold of N. Am.*,
80 F.4th 1136 (10th Cir. 2023) ...............................................................................11

*Mator v. Wesco Dist., Inc.*,
102 F.4th 172 (3d Cir. 2024) .....................................................................................6

*Meiners v. Wells Fargo & Co.*,
898 F.3d 820 (8th Cir. 2018) .............................................................................10, 11

323090156

iv

*Miller v. AutoZone, Inc.*,
   2020 WL 6479564 (W.D. Tenn. Sept. 18, 2020)........................................................4

*Rodriguez v. Hy-Vee, Inc.*,
   No. 4:22-cv-00072, 2022 WL 16648825 (S.D. Iowa Oct. 21, 2022) ......................................15

*Smith v. CommonSpirit Health*,
   37 F.4th 1160 (6th Cir. 2022) ......................................................................8, 14

**Statutes**

29 U.S.C. § 1104(a)(1)(B) ...............................................................................6

**Other Authorities**

ERISA Advisory Council, *Advisory Council Report on Stable Value Funds and
   Retirement Security in the Current Economic Conditions*, Employee Benefits
   Sec. Admin. (2009), https://www.dol.gov/agencies/ebsa/about-ebsa/about-
   us/erisa-advisory-council/2009-stable-value-funds-and-retirement-security-in-
   the-current-economic-conditions ....................................................................3, 4, 13

323090156

The Court dismissed the original Complaint because, in lieu of a consistent benchmark plausibly alleging imprudence "year-in, year-out," Plaintiff identified different comparators each year. As such, he failed to provide a reason to question Defendants' process. In the Amended Complaint, Plaintiff repleads the initial set of deficient comparators and adds two new funds alleged to cover the entire class period: a fund in the Shands Jacksonville Retirement Plan and one in the Auto-Owners Insurance Company Retirement Savings Plan. They do not cite the Shands Plan's SVF, but a different fund entirely. What's left, then, is a single SVF, selected with the benefit of hindsight, that allegedly outperformed the SIF over a five-year time period.

The Court already held identifying an allegedly better performing alternative does not plausibly suggest imprudence because "the ultimate outcome of an investment is not proof of imprudence.'" (ECF 39 at 9 (quoting *Albert v. Oshkosh Corp.*, 47 F.4th 570, 579 (7th Cir. 2022)).) As the Court held, a lesser pleading burden would mean "by a plaintiff's cherry-picking—all but a handful of funds each year would be subject to [claims of imprudence]." (*Id.*) This would produce absurd results and conflict with the Supreme Court's admonition that "courts must give due regard to the to the range of reasonable judgments a fiduciary may make." *Hughes v. Nw. Univ.*, 595 U.S. 170, 177 (2022). Despite the clarity of the dismissal order, Plaintiffs again failed to meet their burden. The Amended Complaint rests solely on a cherry-picked, hindsight-aided comparison to one allegedly better-performing, but differently structured, stable value fund.

Indeed, by relying on outcome-driven comparisons, Plaintiffs ignore the Court's admonition that "the ultimate outcome of an investment is not proof of imprudence." (ECF 39 at 9.) To plead a claim, a plaintiff must explain why the alleged comparator funds are a "meaningful benchmark." Where funds have different characteristics, that one outperformed the other does not plausibly suggest imprudence. *See Albert*, 47 F.4th at 581–82 (affirming dismissal of claims based

on comparing plan's actively managed funds to passively managed funds; passive funds were not "meaningful benchmark[s]" because active funds had potential for higher returns). For that reason, "simply labeling funds as 'comparable' or 'a peer' is insufficient to establish that those funds are meaningful benchmarks against which to compare the performance of the [Plan's] funds." *Anderson v. Intel Corp. Inv. Pol'y Comm.*, 137 F.4th 1015, 1023 (9th Cir. 2025) (citation omitted), *cert. granted sub nom. Anderson v. Intel Corp. Inv.*, No. 25-498, 2026 WL 120679 (U.S. Jan. 16, 2026).[1] Putative comparators are not "meaningful benchmarks" where they have "different aims, different risks, and different potential rewards." *Id.* (internal quotations and citation omitted).

Plaintiffs again fail to plead a meaningful benchmark. This is readily apparent from the pleadings, as an ERISA Advisory Council report Plaintiffs incorporate by reference into the Amended Complaint undercuts their conclusory assertion that all SVFs are essentially fungible. The details in that report make clear that different types of SVFs are structured differently, carry different risk profiles, and would be expected to carry different crediting rates. When considered alongside Plaintiffs' allegations, the detailed descriptions in the report make clear Plaintiffs have only pleaded that differently designed products perform differently, not that the SIF is imprudent.

As the Amended Complaint does not remedy the defects that resulted in dismissal of the original pleading, the Court should dismiss it with prejudice.

## I.    BACKGROUND

### A.    Plaintiffs Failed To Plead Meaningful Benchmarks.

It is clear Plaintiffs intend a review of the Amended Complaint to leave the reader with the sense that all SVFs are fungible. This impression is gutted, however, by a report Plaintiffs

---

[1] On January 16, 2026, the Supreme Court granted *certiorari* in *Anderson*, to consider whether a plaintiff alleging investment underperformance must plead facts establishing a "meaningful benchmark."

2

incorporated into their pleading. *See* ERISA Advisory Council, *Advisory Council Report on Stable Value Funds and Retirement Security in the Current Economic Conditions*, Employee Benefits Sec. Admin. (2009), https://www.dol.gov/agencies/ebsa/about-ebsa/about-us/erisa-advisory-council/2009-stable-value-funds-and-retirement-security-in-the-current-economic-conditions (cited in ECF 45 ¶ 66 n.10).[2] Far from being fungible, this report details that there are many different kinds of investments that fall within the catch-call phrase of a stable value fund including "traditional Guaranteed Investment Contracts (GICs), separate accounts contracts and synthetic GICs." These funds differ in their goals and their structure.

The SIF is a synthetic GIC, which Plaintiffs assert is "often" the type of stable value fund included in large plans. (ECF 45 ¶¶ 14, 69.) The Amended Complaint contains no allegations about the SIF's underlying holdings, risks, or investment strategy. It does, however, acknowledge the SIF has had 3–4 wrap providers throughout the class period. (ECF 45 ¶ 14.) As a synthetic GIC, and as explained in the report cited by Plaintiffs, the plan owns the underlying assets, and crediting rates are reset formulaically based on the actual performance of the assets.[3] The insurers, known as "wrap providers," contract to guarantee payment of the return rate based on the performance of that portfolio of assets. *Id.* As Plaintiffs' counsel has conceded in other filings,[4] synthetic GICs are generally understood to be "the least risky [type of stable value fund] because principal is

---

[2] Where a plaintiff cites a document in its complaint, the document is concededly authentic, and the facts it contains are central to the claim presented, courts can consider those documents as part of the pleadings on a motion to dismiss. *See Hecker v. Deere & Co.*, 556 F.3d 575, 582 (7th Cir. 2009). And when an exhibit incorporated into the complaint conflicts with the complaint, "the exhibit ordinarily controls." (ECF 39 at 10 n.11 (citing *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013).)

[3] ERISA Advisory Council, *Advisory Council Report on Stable Value Funds and Retirement Security in the Current Economic Conditions*, Employee Benefits Sec. Admin. (2009), https://www.dol.gov/agencies/ebsa/about-ebsa/about-us/erisa-advisory-council/2009-stable-value-funds-and-retirement-security-in-the-current-economic-conditions

[4] *See Lagafuaina v. Mitchell Int'l, Inc*., Case No. 3:25-cv-03018 (S.D. Cal), Compl., ECF 1 at ¶ 83 (characterizing traditional GICs as riskier options than alternatives with multiple insurers and plan-ownership of underlying assets).

3

guaranteed by multiple wrap providers and plan participants own the assets of the underlying funds." *Miller v. AutoZone, Inc.*, 2020 WL 6479564, at *5 (W.D. Tenn. Sept. 18, 2020).

Though Plaintiffs concede they are "often" the choice for large plans, neither of the two funds Plaintiffs cite in the Amended Complaint (the Auto-Owners Insurance Company Retirement Savings Plan ("AOIC Plan") and the Shands Jacksonville Retirement Plan ("Shands Plan")) are synthetic GICs. (ECF 45 ¶ 78.) Review of the Form 5500s for these plans confirm that they are not meaningful benchmarks of the SIF.[5]

The AOIC Plan Form 5500 confirms its stable value fund is a traditional GIC, backed by the general account of Auto-Owners Life Insurance Company ("AOLIC"), a wholly owned subsidiary of the plan sponsor. (Ex. A, 2023 AOIC Form 5500 at 34.) In contrast to a synthetic GIC, the report Plaintiffs cite explains traditional GICs are "contracts with an insurance company that guarantee a fixed rate of return backed by the assets of the insurer's general account."[6] Thus the insurer—not the plan—owns the underlying assets. *Id.* Crediting rates for these products can be fixed (*i.e.*, guaranteed at a certain amount), indexed, or reset periodically based on underlying investment performance. *Id.* As Plaintiffs previously pleaded, traditional GICs can be lucrative for insurers because ownership of the underlying investments allows them to benefit from "spread" (*i.e.*, the difference between investment earnings and amounts paid through crediting rates). (ECF 1 ¶¶ 18, 82.) These profit opportunities for insurers do not exist in synthetic GICs (perhaps explaining why the Amended Complaint no longer alleges Defendants failed to monitor the SIF's

---

[5] Because Plaintiffs reference the Form 5500s in their complaint, the court may consider them at this posture. *See Hecker*, 556 F.3d at 582.

[6] ERISA Advisory Council, *Advisory Council Report on Stable Value Funds and Retirement Security in the Current Economic Conditions*, Employee Benefits Sec. Admin. (2009), https://www.dol.gov/agencies/ebsa/about-ebsa/about-us/erisa-advisory-council/2009-stable-value-funds-and-retirement-security-in-the-current-economic-conditions.

spreads). Plaintiffs cannot credibly maintain the SIF is interchangeable with a traditional GIC while relying on a report that details myriad ways in which they differ.

Plaintiffs' discussion of the Shands Plan cannot save their claim. Plaintiffs point to an investment they label a "GIC" in the Shands Plan, offered by Variable Annuity Life Insurance Company ("VALIC"). (ECF 45 ¶ 78.) The Form 5500 they rely on says otherwise. The SVF identified by the Shands' Plan is *not* the VALIC contract, but instead the "Lincoln Financial Group Stable Value Account." (*See* Ex. B, 2023 Shands Plan Form 5500 at 47.) Plaintiffs never mention this fund.

The VALIC contract Plaintiffs mislabel as a stable value fund is a fixed account product that held just over $27,000 at the end of 2023, encompassing investments from just 43 participants. (*See* Ex. B at 13–15.) According to SEC filings made by VALIC,[7] the two VALIC products in the Shands Plan, the Fixed Account Plus product referenced by Plaintiffs and the Short-Term Fixed Account product, invest in VALIC's general account and provide fixed-return investment opportunities at disclosed minimum rates, with restrictions on participants' ability to remove money from the fund once they have invested in it. (*See* Ex. C, SEC Form N-4, VALIC Separate Account A, at 15, 20, 39.) Plaintiffs cannot claim as a meaningful benchmark for the SIF a fund that is not even held out as a stable value investment. Indeed, Plaintiffs' decision to omit the Shands Plan's stable value investment, as well as one of its two VALIC contracts, in search of a "benchmark" that supports their underperformance claims highlights the cherry-picked nature of their Amended Complaint.

---

[7] The Court may consider publicly-available documents for descriptions of relevant investment options at the pleading stage. *See Hecker*, 556 F.3d at 583.

323090156

Plaintiffs also continue to use different samples in each year and do not allege anything different about the remaining putative comparators. (*Compare* ECF 1 ¶ 85, *with* ECF 45 ¶¶ 85, 88, 92, 95, 99.) The Court already found these allegations deficient and based on faulty math. (*See* ECF 39 at 11 & n.13.)[8]

## II.     DISCUSSION

### A.     Standard of Review

To survive a Rule 12(b)(6) motion to dismiss, Plaintiffs must plead "sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In the ERISA class action context, the Supreme Court has emphasized that a motion to dismiss is an "important mechanism for weeding out meritless claims[.]" *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014).

To plead a plausible claim for breach of the duty of prudence, Plaintiffs must plead facts plausibly showing Defendants failed to act "with the care, skill, prudence, and diligence under the circumstances then prevailing." 29 U.S.C. § 1104(a)(1)(B). To assess whether an ERISA plaintiff has plausibly done so, the Court must perform a "context specific" analysis of the complaint's allegations, "[b]ecause the content of the duty of prudence turns on 'the circumstances . . . prevailing' at the time the fiduciary acts." *Hughes*, 595 U.S. at 177 (quoting *Dudenhoeffer*, 573 U.S. at 425).

### B.     Plaintiffs Fail to Show There Were Year-In, Year-Out Better-Performing Alternatives That Cast Doubt on the Investment Committee's Process.

In dismissing the original Complaint, the Court stated plainly that "[i]t is axiomatic that 'the ultimate outcome of an investment is not proof of imprudence.'" (ECF 39 at 9 (quoting *Albert*,

---

[8] "[I]f allegations are based on incorrect arithmetic, common sense says they are not well-pled." *Mator v. Wesco Dist., Inc.*, 102 F.4th 172, 190 (3d Cir. 2024).

6

323090156

47 F.4th at 579).) The Court therefore explained, to plead a viable claim, Plaintiff "must show—at minimum—that there were year-in, year-out better-performing alternatives that cast doubt on the Investment Committee's process for monitoring and renewing its own funds." *Id.*

Where the original Complaint identified no alleged comparator funds alleged to outperform the SIF on a "year-in, year-out" basis, the Amended Complaint now contains one—the proprietary product AOIC offers to participants in its own plan.[9] A single allegedly higher-performing alternative in the market does not meet this Court's requirement that Plaintiffs provide an alternative that casts doubt on Defendants' process. Indeed, this Court already found "simply 'pointing to another investment that has performed better . . . does not plausibly plead an imprudent decision.'" (ECF 39 at 4 (citing *Abel v. CMFG Life Ins. Co.*, No. 22-cv-449, 2024 WL 307489, at *5 (W.D. Wis. Jan. 26, 2024).)

Plaintiffs' reliance on a single "year-in, year-out" comparator rings all the more hollow when considered against their allegations about the prevalence of stable value products in defined contribution plans. Plaintiffs allege there are more than 600,000 defined contribution plans in the United States. (ECF 45 ¶ 11.) Plaintiffs cannot state a claim where, from that large sample size, they have found one plan with a stable value fund that allegedly outperformed the SIF from 2019–2023. *See Lalonde v. Mass. Mutual Ins. Co.*, 728 F. Supp. 3d 141, 156–57 (D. Mass. Mar. 29, 2024) ("[S]imply selecting two alleged comparator funds with higher credit return rates over a seven-year period is the type of hindsight-based allegation which is insufficient to support a plausible inference of breach.").

---

[9] While Plaintiffs assert the Shands Plan presents a second example, they have not used that plan's SVF as a comparator in their Amended Complaint. (*Compare* ECF 45 ¶ 78 (referencing VALIC contract in Shands Plan), *with* Ex. B at 47 (identifying Lincoln Financial Group Stable Value Account as Shands Plan's SVF).)

323090156

"[C]ourts do not 'infer imprudence every time a fiduciary retains a fund that fails to turn in best-in-class performance for any specific period.'" *Lard v. Marmon Holdings, Inc.*, No. 1:22-CV-4332, 2023 WL 6198805, at *4 (N.D. Ill. Sept. 22, 2023) (quoting *Coyer v. Univar Sols. USA Inc.*, No. 1:22 CV 0362, 2022 WL 4534791, at *6 (N.D. Ill. Sept. 28, 2022)). This is even more true when plaintiffs—as they do here—merely point to underperformance during "a five-year snapshot of the lifespan of a fund that is supposed to grow for fifty years" because "[p]recipitously selling a well-constructed portfolio in response to disappointing short-term losses . . . is one of the surest ways to frustrate the long-term growth of a retirement plan." *Smith v. CommonSpirit Health*, 37 F.4th 1160, 1166 (6th Cir. 2022) (affirming dismissal of imprudent investment claim premised on underperformance). Courts routinely hold that allegations of five years of underperformance (*i.e.*, what Plaintiffs allege here) fail to state a claim. *See, e.g.*, *Lard v. Mormon Holdings*, No. 22-cv-04332, 2025 WL 1383269, at *3 (N.D. Ill. May 13, 2025); *Beldock v. Microsoft Corp.*, No. C22-1082, 2023 WL 3058016, at *3 (W.D. Wash. Apr. 24, 2023); *Enstrom v. SAS Inst.*, No. 5:24-CV-105-D, 2025 WL 685219, at *5 (E.D.N.C. Mar. 3, 2025); *Hall v. Cap. One Fin. Corp.*, No. 1:22-CV-00857, 2023 WL 2333304, at *6 (E.D. Va. Mar. 1, 2023); *Bracalente v. Cisco Sys., Inc.*, No. 5:22-CV-04417, 2023 WL 5184138, at *4 (N.D. Cal. Aug. 11, 2023).

### C. Short-Term Credit Rate Differences Do Not Make A Stable Value Fund Superior.

Plaintiffs previously alleged that stable value funds are "intended to provide participants with an option that protects their assets and is shielded from risks of loss." (*See* ECF 39 at 1–2 (quoting ECF 1 ¶ 77.) Plaintiffs nowhere allege the SIF failed to meet these aims. Plaintiffs do not, for example, allege the SIF lost money, or failed to provide a conservative investment or stable returns to participants. Instead, Plaintiffs claim the SIF was imprudent *only* because it had a lower crediting rate than Plaintiffs' cherry-picked comparators. (ECF 45 ¶¶ 77–100.)

8

Faced with similar allegations, the court in *Barchock v. CVS Health Corp.* affirmed dismissal of claims of imprudence that were only based on allegations that a stable value fund's crediting rate was lower than crediting rates offered by other stable value products. *See* 886 F.3d 43, 49–50 (1st Cir. 2018). The court found such allegations failed to show how the challenged fund was imprudent, where its goals were *not* maximizing profits, but instead "preserving capital while outperforming money market funds." *Id.* at 49.

While the Seventh Circuit has not considered investment underperformance allegations since the Supreme Court's 2022 *Hughes* opinion altered the pleading standard, its precedent aligns with *Barchock* and like cases from other circuits. In the context of investment fees, for example, the Seventh Circuit has long recognized that "nothing in ERISA requires every fiduciary to scour the market to find and offer the cheapest possible fund (which might, of course, be plagued by other problems)." *See Loomis v. Exelon Corp.*, 658 F.3d 667, 670 (7th Cir. 2011) (quoting *Hecker*, 556 F.3d at 586). This principle applies with equal force to investment performance; fiduciaries are not required to chase the highest-performing investment options which, like cheaper funds, might be "plagued by other problems" that provide reasons for fiduciaries not to select them for the plan (including, for example, the risk taken on in pursuit of higher returns). *Id.*

Fiduciaries are not held liable for failing to select (in advance) the highest-performing investments because the duty of prudence "requires prudence, not prescience." *DeBruyne v. Equitable Life Assurance Soc'y*, 920 F.2d 457, 465 (7th Cir. 1990). In gauging fiduciary performance, "courts use a standard that is 'process-based, not outcome-based.'" *Luckett v. Wintrust Financial Corp.*, No. 22-cv-03968, 2024 WL 3823175, at *3 (N.D. Ill. Aug. 14, 2024). The mere fact that one fund outperformed another "is not actionable." *Lard*, 2025 WL 1383269,

9

at \*3. The duty of prudence "does not require [fiduciaries] to pick the best performing fund each year or even each decade." *Abel v. CMFG Life Ins. Co.*,2024 WL 307489, at \*6.

Plaintiffs' claims of imprudence here are based solely on performance. This is exactly the type of hindsight-based standard that has been repeatedly rejected.

**D. Plaintiffs' Claims Of Underperformance Are Not Based On Meaningful Benchmarks.**

Rather than only pleading that a different fund performed better, a plaintiff seeking to support a plausible claim of impudence must provide "detailed allegations" showing there is a "sound basis" for the comparison they are making. *Albert*, 47 F.4th at 581–82 (quoting *Davis v. Wash. Univ. in St. Louis*, 960 F.3d 478, 484 (8th Cir. 2020 and *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 822 (8th Cir. 2018)). Threadbare allegations that do not show comparators are meaningfully similar such that there is a "sound basis for comparison" are insufficient and warrant dismissal. *Id.*.

As this Court noted in dismissing Plaintiff's initial complaint, subsequent to *Albert*, the Seventh Circuit held a plaintiff stated a claim for excessive recordkeeping fees, based on allegations that the market for recordkeepers was "highly competitive" and the services provided by the various providers were "fungible," such that the plan at issue could have gotten essentially the same services for a lower price. (ECF 39 at 5 (citing *Hughes v. Northwestern Univ.*, 63 F.4th 615, 632 (7th Cir. 2023)).) *Hughes* does not in any way excuse the deficient pleadings in the Amended Complaint. Indeed, in *Hughes*, the court concluded a "context specific" review of the allegations plausibly suggested the fiduciaries could have obtained equivalent recordkeeping from a cheaper provider, making the imprudence claims plausible. *Hughes*, 63 F.4th at 633–64. It stressed, however, that future cases would depend on the specific pleadings and circumstances facing the fiduciaries in those cases. *Id.* at 634.

10

Neither *Albert* nor *Hughes* considered the pleading of investment underperformance claims. But, as the Court already found, they "set the contours for prudence analysis under ERISA" in the Seventh Circuit. (ECF 39 at 5.) To borrow the Court's framing of the issue, this case "fall[s] on the *Albert* side of the dividing line." (ECF 39 at 6); *see also Gosse v. Dover Corp.*, No. 22 C 4254, 2025 WL 2996795, at *4 (N.D. Ill. Oct. 24, 2025) (noting where plaintiffs do not plead facts sufficient to show apples-to-apples comparison, the complaint is closer to *Albert* than *Hughes*). In *Albert*, the court affirmed dismissal of the "Actively Managed Funds Theory" because it found comparison between the fees of actively and passively managed investment options did not present a "meaningful benchmark." 47 F.4th at 581–82. The Court explained that while the challenged funds had higher fees than the plaintiffs' comparators, they also carried the possibility of higher returns, and thus for pleading purposes the comparisons failed to state a claim. *Id.* In short, a plaintiff cannot simply declare a fund a suitable benchmark. Rather, they must plead context-specific evidence to demonstrate the benchmark is meaningful.

This reasoning in *Albert* accords well with recent decisions from other circuits that, to serve as a "meaningful benchmark" for underperformance claims, comparator funds must "have similar investment strategies, similar investment objectives, or similar risk profiles." *Matney v. Barrick Gold of N. Am.*, 80 F.4th 1136, 1148 (10th Cir. 2023); *Meiners*, 898 F.3d at 822-23 (rejecting fiduciary breach claim because challenged fund had different allocation to bonds than comparator funds, which made it not a meaningful benchmark).

The *Albert* framework has also consistently been relied on post-*Hughes* by sister courts in this district. *See, e.g.*, *Gosse*, 2025 WL 2996795, at *6 (applying *Albert* and *Hughes*) (dismissing claims where plaintiff failed to account for differences between challenged plan and comparator plans that prevented apples-to-apples comparison); *Dale v. NFP Corp.*, 658 F. Supp. 3d 620, 637

11

323090156

(N.D. Ill. 2023) (applying *Albert*) (comparison between different share class of fund was not "meaningful benchmark" because less-expensive share class had lower liquidity and therefore was not "apples-to-apples comparison"); *Baumeister v. Exelon Corp.*, No. 21-CV-6505, 2023 WL 6388064, at *5 (N.D. Ill. Sept. 29, 2023) (applying *Albert*) (plaintiffs failed to show meaningful comparators where they failed to account for differences apparent from the pleadings); *Lard*, 2023 WL 6198805, at *5 ("Simply pleading that the comparator funds 'match the goals'" of challenged funds'" without allegations as to "additional qualities of the proposed comparator funds to establish a sound basis of comparison, such as investment strategy, management style, or risk profile" failed to state a claim); *Luckett v. Wintrust Fin. Corp.*, No. 22-CV-03968, 2023 WL 4549620, at *4 (N.D. Ill. July 14, 2023) ("Plaintiff's comparators do not provide a sound basis for comparison in order to state an imprudence claim.").

That *Albert* remains controlling in the Circuit post-*Hughes* makes sense, as it aligns with the context-specific approach taken by the Seventh Circuit in *Hughes.* In *Hughes*, the court found plaintiffs plausibly alleged a claim, because they plausibly pleaded recordkeepers provided undifferentiated services and were "fungible," and so only differed on price. *Hughes*, 63 F.4th at 632.

Rather than offer any actual detail about their comparators, Plaintiffs point to alleged generic similarities between the SIF and seemingly all stable value funds to justify labeling them "identical or substantially identical stable value funds." (*See* ECF 45 ¶¶ 73, 77.) To show they have provided a meaningful benchmark, Plaintiffs must do more than identify "some similarities" between the SIF and their comparators. *Abel*, 2024 WL 307489, at * 4. They have not done so.

Plaintiffs nowhere point to a synthetic GIC that out-performed the SIF in each year of the class period. This is a material defect in the pleading. In the Amended Complaint, Plaintiffs

12

reference the "Advisory Council Report on Stable Value Funds and Retirement Security in the Current Economic Conditions." (ECF 45 ¶ 66 n.10 & ¶ 67 n.11.) That report details the different types of products that fall under the umbrella of "stable value funds" and the material ways in which they differ from each other.[10]

Because this report, cited in their pleading, details *differences* between the SIF and other types of stable value investments (like the alleged comparators), it guts Plaintiffs' conclusory and unsupported statement that the SIF is "substantially identical" to the alleged comparators. For example, the report describes the different types of stable value products as having different risk profiles, with synthetic GICs being structured to offer greater protections (*i.e.*, less risk) to participants than do traditional GICs.[11] It also describes the material ways in which the credit rate setting processes can differ. In a traditional GIC, depending on contract terms, rates may include guarantees (*i.e.*, be guaranteed not to fall below a contractual threshold, regardless of underlying investment performance), be tied to an index (without regard to how the underlying assets are invested), or can be reset based on investment performance. In synthetic GICs, they are formulaically tied to the performance of the plan's underlying investment holdings (*i.e.*, they are *not* subject to setting by the insurers). This difference also disproves Plaintiffs' suggestion that the fiduciaries could have simply "demanded" higher crediting rates from the insurers for the SIF, because the insurers do not set those rates.

As discussed above, the AOIC Plan has a traditional GIC, with assets held in the general account of a subsidiary insurer of the Plan sponsor. Given the differences between traditional and

---

[10] ERISA Advisory Council, *Advisory Council Report on Stable Value Funds and Retirement Security in the Current Economic Conditions*, Employee Benefits Sec. Admin. (2009), https://www.dol.gov/agencies/ebsa/about-ebsa/about-us/erisa-advisory-council/2009-stable-value-funds-and-retirement-security-in-the-current-economic-conditions.
[11] *Id.*

13

synthetic GICs spelled out in the ERISA Advisory Council Report, comparison between this contract and the SIF must be rejected. *See Lalonde*, 728 F. Supp. 3d at 156 (traditional GIC where assets are held in insurer's general account was not suitable comparator for separate account).

The same reasoning prevents reliance on comparison to the contract from the Shands Plan. Plaintiffs ignore the stable value fund in that plan, in favor of one they think better supports their narrative. But that VALIC contract covered only 43 people at the end of 2023, and was a fixed rate investment, held in an insurer's general account, that carried significant restrictions on participants' ability to remove their money from the fund. (Ex. B at 13; Ex. C at 15, 20, 39.) It also outperformed the Shands Plan's own stable value investment, and another VALIC contract in the same plan—both of which Plaintiffs ignored. This sort of blatant cherry-picking undermines the plausibility of the pleading. *CommonSpirit*, 37 F.4th at 1167 (rejecting claims based on selective comparisons); *see also Iannone v. AutoZone, Inc.*, 344 F.R.D. 319, 335–36 (W.D. Tenn. 2023) (professing skepticism of assessing a stable value fund's performance using admittedly cherry-picked comparators). Plaintiffs' selective comparison effectively concedes that a representative sample would disprove their assertions. The inclusion of *only* those data points supporting their underperformance hypothesis is achievable only with the benefit of hindsight.

There is even less pleaded in the Amended Complaint about Plaintiffs' other putative comparators, which are—as in the first Complaint—a rotating set of 4 to 6 other plans, changing from year-to-year to support their underperformance theory. (*See* ECF 45 ¶¶ 85, 88, 92, 95, and 99.) In each case, these comparator plans are described, like traditional GICs, as being insured by a single-insurer—in direct contrast to the multi-insurer synthetic GIC nature of the SIF. (*Id.*) Due to differences between those types of products, and as discussed with respect to the AOIC Plan, these cannot be suitable comparators. Moreover, re-pleading these same allegations that were

14

already dismissed for failure to state a claim does nothing to cure Plaintiffs' continued failure to "identify a uniform sample." (ECF 39 at 9.)

### E. Plaintiffs' Claims Of Underperformance Are Overstated and Misleading.

Apart from these dispositive errors, the Amended Complaint fails as the minor differences Plaintiffs plead between the SIF's crediting rate and those of the putative comparators are insufficient to support an inference of imprudence. Plaintiffs' assertion that the "SIF underperformed the comparator funds by an average of over 42%" is an example of the misleading effect of using percentage-based comparisons when dealing with small numbers. *See, e.g.*, *Rodriguez v. Hy-Vee, Inc.*, No. 4:22-cv-00072, 2022 WL 16648825, at *2 n.3 (S.D. Iowa Oct. 21, 2022) (explaining percentage-based comparisons can be "misleading," even where mathematically correct). Here, the differences Plaintiffs calculate between the SIF and the average rates they claim for the comparators—which range between 1.02% and 2.61% (*see* ECF 45 ¶ 100)—demonstrate that any claim of "severe" underperformance rings hollow. Indeed, courts have dismissed underperformance claims based on similarly small ranges. (*See* ECF 19 at 18 (collecting cases).)

### F. Plaintiffs' Monitoring Claim Fails to State Any Claim For Relief (Count II).

In Count II, Plaintiffs claim Defendants failed to adequately monitor other fiduciaries. (ECF 45 ¶¶ 114–20). This claim is wholly derivative of Count I and must fail if Count I is dismissed. *See Albert*, 47 F.4th at 583 (affirming dismissal of duty to monitor claims because "duty to monitor claims rise or fall with" underlying breach claim).

### III. CONCLUSION

Plaintiffs have not pleaded sufficient facts to support the assertion that retention of the SIF fell outside the "range of a fiduciary's reasonable judgments." The Court should grant Defendants' motion and dismiss Plaintiffs' Amended Complaint with prejudice.

Respectfully submitted,

*s/Samuel M. Schwartz-Fenwick*
Samuel M. Schwartz-Fenwick
Sschwartz-fenwick@seyfarth.com
Thomas M. Horan
Thoran@seyfarth.com
Mario D. Nimock
MNimock@seyfarth.com
**SEYFARTH SHAW LLP**
233 South Wacker Drive
Suite 8000
Chicago, Illinois 60606-6448

*Counsel for Defendants*

16

323090156

17

## CERTIFICATE OF SERVICE

I, Samuel M. Schwartz-Fenwick, an attorney, do hereby certify that I have caused a true and correct copy of the foregoing DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT to be presented to the Clerk of the Court for filing and uploading to the CM/ECF system, which will send notification of such filing to all counsel of record.

s/ *Samuel M. Schwartz-Fenwick*
Samuel M. Schwartz-Fenwick

17

323090156