## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CHARLES CLINTON, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>    v.<br><br>BAXTER INTERNATIONAL INC., THE BOARD OF DIRECTORS OF BAXTER INTERNATIONAL INC., THE COMPENSATION COMMITTEE OF THE BOARD OF DIRECTORS OF BAXTER INTERNATIONAL INC., THE BAXTER INTERNATIONAL INC. ADMINISTRATIVE COMMITTEE, and THE INVESTMENT COMMITTEE OF THE BAXTER INTERNATIONAL INC. AND SUBSIDIARIES U.S. RETIREMENT SAVINGS PLAN,<br><br>      Defendants. | Case No. 1:25-cv-03368 |

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
## <u>PLAINTIFF'S AMENDED COMPLAINT</u>

**TABLE OF CONTENTS**

I.      INTRODUCTION ....................................................................................................1

II.     FACTS .....................................................................................................................3

III.    ARGUMENT ...........................................................................................................6

      A.      Standard of Review.....................................................................................6

      B.      Clinton's imprudent process allegations remain implausible ...................7

      C.      The Comparator SVFs are meaningful ....................................................10

      D.      The Rates Alleged are Plausible ..............................................................14

IV.    CONCLUSION......................................................................................................15

## TABLE OF AUTHORITIES

PAGE(S)

**Cases**

*Abel v. CMFG Life Ins. Co.*,
2024 WL 307489 (W.D. Wis. Jan. 26, 2024) ...............................................................................11

*Abbott v. Lockheed Martin Corp.*,
725 F.3d 803 (7th Cir. 2013) ................................................................................... 1, 9, 10

*Acosta v. Bd. of Trs. of Unite Here Health*,
2024 WL 3888862 (N.D. Ill. Aug. 21, 2024) ............................................................... 1, 8

*Albert v. Oshkosh Corp.*,
47 F.4th 570 (7th Cir. 2022) ..................................................................................... 1, 10

*Allen v. GreatBanc Tr. Co.*,
835 F.3d 670 (7th Cir. 2016) ................................................................................... 6, 7, 8

*Barchock v. CVS Health Corp.*,
886 F.3d 43 (1st Cir. 2018) ............................................................................................ 9

*Baumeister v. Exelon Corp.*,
2023 WL 6388064 (N.D. Ill. Sept. 29, 2023) .............................................................................11

*Brotherston v. Putnam Invs., LLC,*
907 F.3d 17 (1st Cir. 2018) ......................................................................................... 10

*Carter v. Sentara Healthcare Fiduciary Comm.*,
2025 WL 2427614 (E.D. Va. Aug. 11, 2025) ...................................................... 7, 8, 15

*Cunningham v. Cornell Univ.*,
604 U.S. 693 (2025) .................................................................................................. 6, 7

*Dale v. NFP Corp.,*
658 F. Supp. 3d 620 (N.D. Ill. 2023) .............................................................................11

*Ellis v. Fid. Mgmt. Tr. Co.*,
883 F.3d 1 (1st Cir. 2018) ...................................................................................... 10, 12

*Fifth Third Bancorp v. Dudenhoeffer*,
573 U.S. 409 (2014).................................................................................................... 6

*Gaines v. BDO USA, LLP*,
663 F. Supp. 3d 821 (N.D. Ill. 2023) ........................................................................ 13

*Gosse v. Dover Corp.*,
2025 WL 2996795 (N.D. Ill. Oct. 24, 2025)............................................................................11

*Hecker v. Deere & Co.*,
556 F.3d 575 (7th Cir. 2009) ................................................................................... 13

*Hughes v. Nw. Univ.*,
595 U.S. 170 (2022) ("*Hughes I*") ......................................................................... 6, 7

*Hughes v. Northwestern Univ.*,
63 F.4th 615 (7th Cir. 2023) ("*Hughes II*")......................................................1, 7, 10, 11

*Iannone v. AutoZone, Inc.*,
344 F.R.D. 319 (W.D. Tenn. 2023) ........................................................................ 13

*Lacrosse v. Jack Henry & Assocs.*,
2024 WL 3564575 (W.D. Mo. July 11, 2024) ........................................................2, 9, 11

*Lard v. Marmon Holdings, Inc.*,
2023 WL 6198805 (N.D. Ill. Sept. 22, 2023) .......................................................... 11

*Lau v. Metropolitan Life Ins. Co.,*
2016 WL 5957687 (S.D.N.Y. August 22, 2016) ...................................................... 15

*Lucero v. Credit Union Ret. Plan Ass'n*,
2023 WL 2424787 (W.D. Wis. Mar. 9, 2023)........................................................... 8

*Luckett v. Wintrust Fin. Corp.*,
2023 WL 4549620 (N.D. Ill. July 14, 2023)..............................................................11

*Matney v. Barrick Gold of N. Am.*,
80 F.4th 1136 (10th Cir. 2023) .................................................................................11

*Mazza v. Pactiv Evergreen Servs. Inc.*,
2023 WL 3558156 (N.D. Ill. May 18, 2023) ............................................................ 14

*Meiners v. Wells Fargo & Co.*,
898 F.3d 820 (8th Cir. 2018).....................................................................................11

*Miller v. Astellas US LLC*,
2021 WL 1387948 (N.D. Ill. Apr. 13, 2021)...................................................... 10, 13, 14

*Miller v. AutoZone, Inc.*,
2020 WL 6479564 (W.D. Tenn. Sept. 18, 2020).........................................8, 9, 11, 15

iii

*Payne v. Hormel Foods Corp.*,
2024 WL 4228613 (D. Minn. Sept. 18, 2024) ....................................................................*Passim*

*Perkins v. United Surgical Partners Int'l, Inc.*,
2024 WL 1574342 (5th Cir. Apr. 11, 2024) ..................................................................... 8

*Rodriguez v. Hy-Vee, Inc.*,
2022 WL 16648825 (S.D. Iowa Oct. 21, 2022) ...................................................... 14, 15

*Russell v. Illinois Tool Works, Inc.*,
2024 WL 2892837 (N.D. Ill. June 10, 2024) .................................................................. 15

*Smith v. CommonSpirit*,
37 F.4th 1160 (6th Cir. 2022) .....................................................................................11, 14

*Somers v. Cape Cod Healthcare, Inc.*,
No. 23-cv-12946, 2024 WL 4008527 (D. Mass. August 30, 2024) ............................. 15

*Tibble v. Edison Int'l*,
575 U.S. 523 (2015)....................................................................................................... 3

*In re Unisys Sav. Plan Litig.*,
74 F.3d 420 (3d Cir. 1996) ("*Unisys*") .......................................................................... 8, 14

*Walter v. Kerry Inc.*,
2022 WL 1720095 (E.D. Wis. May 27, 2022) ............................................................. 14

*Wood v. Prudential Ret. Ins.*,
2016 WL 5940946 (D. Conn. Sept. 19, 2016) ................................................................ 8

*Zimmerman v. Cedars-Sinai Med. Ctr.*,
2024 WL 1135773 (C.D. Cal. Feb. 18, 2024)..................................................................11

**Other Sources**

The Employee Retirement Income Security Act of 1974 .......................................................*Passim*

Charles Clinton ("Plaintiff") respectfully submits this Opposition to Defendants' Motion to Dismiss, Dkt. 48.

## I. INTRODUCTION

In the Court's prior Memorandum Opinion and Order ("Order") (Dkt. 29), the Court aptly held that although the "'outcome of an investment is not proof of imprudence[,]'" (Order at 4 quoting *Albert v. Oshkosh Corp.*, 47 F.4th 570, 579 (7th Cir. 2022)), ERISA "fiduciaries, however, have 'a continuing duty to monitor trust investments and remove imprudent ones.'" *Id.*, (quoting *Hughes v. Northwestern Univ.*, 63 F.4th 615, 626, 636 (7th Cir. 2023) ("*Hughes II*"). Indeed, Defendants'[1] imprudent processes include the selection and retention of the Plan's Stable Income Fund ("SIF"), which had such "a low rate of return" that it did not "provide a meaningful retirement asset" compared to "a variety of stable value funds[,]" or "SVFs." *Abbott v. Lockheed Martin Corp.*, 725 F.3d 803, 806-07 (7th Cir. 2013).

After going into great depth in applying *Hughes II* and *Albert* to the context of SVF cases, the Court rejected all but one of Defendants' arguments, because "nothing in either decision 'suggests that [p]laintiffs must identify every possible'" aspect "'in exhaustive detail, to allow for a meaningful comparison[,]'" but rather, ERISA plaintiffs "need only "'identify a reason why this comparison is possible.'" Order at 6 (quoting *Acosta v. Bd. of Trs. of Unite Here Health*, 2024 WL 3888862, at *7 (N.D. Ill. Aug. 21, 2024)). The Court agreed that "differences exist among SVFs," such as synthetic versus general account GICs [guaranteed income funds], which have different risk levels, numbers of wrap providers, and underlying asset ownership. *Id.*, at 7. Nevertheless, "where the complaint alleges only that all stable value funds provide plan participants a low-risk

---

[1] All undefined terms shall have the same meaning defined in the Order. "Defs' Br." refers to the Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiff's Amended Complaint, Dkt. 49.

option, any differences in degree (and their relevance) are questions for another day." Order at 8. "'[F]rom the perspective of a plan participant or investor," all SVFs "provide the same benefit[:] […] a conservative, stable rate of return.'" *Id*., at 8 (quoting *Lacrosse v. Jack Henry & Assocs*., 2024 WL 3564575, at *3 (W.D. Mo. July 11, 2024)). The allegations about the comparability of SVFs in Plaintiff's First Amended Complaint ("FAC") (Dkt. 45) and the caselaw surrounding SVFs and ERISA pleading standards have not changed since this Court's Order.

Despite this Court's careful and thorough analysis of the Parties' arguments, prior caselaw, and definitions of various types of SVFs, Defendants now regurgitate the same arguments this Court previously rejected.[2] However, the FAC now cures the sole deficiency causing dismissal: the failure to use the same investment comparator for every year. *See* Order at 4; FAC, ¶¶ 83-98. Also, the FAC includes a footnote citation to a report stating that all SVFs share the same core similarities. Defendants' paltry attempt to obtain dismissal based on these two changes is another attempt to insert Defendants' exact same, rejected factual disputes about whether the differences between SVF types and irrelevant contract terms matter. Moreover, Defendants mischaracterize Plaintiff's cited report, a severely outdated prospectus, and Form 5500s, to ask this Court to improperly draw inferences in Defendants' favor. Reading Defendants' sources actually contradict Defendants' mischaracterizations and supports what Plaintiff alleges: the SVFs described in the FAC share core similarities, with any differences being inconsequential. Because the FAC cures the Court's sole reason for dismissal, and because Defendants do not raise any substantive new arguments, Plaintiff respectfully requests that Defendants' Motion to Dismiss be denied in its entirety.

---

[2] The Court also accepted Plaintiff's Form 5500 calculations for rate comparisons, which were sufficient based on the limited information available to Plaintiff at this stage. *See* Order, at 11.

2

**II.      FACTS[3]**

A "fiduciary is required to conduct a regular review of its investment with the nature and timing of the review contingent on the circumstances[,]" but in all cases, this is a "continuing duty." *Tibble v. Edison Int'l*, 575 U.S. 523, 530 (2015); FAC, ¶¶ 4, 7, 49. "Fiduciaries must also consider a plan's 'power ... to obtain favorable investment[s.]'" *Id*., at 328–29 (citation omitted). Throughout the Class Period, the Plan had an exceptionally high participant count and was in the top 0.2 percent of 401(k) plans nationwide in terms of assets under management, giving the Plan tremendous leverage for better investments. FAC, ¶¶ 9-12. Defendants employed deficient processes by, *inter alia*, failing to leverage the Plan's bargaining power, negotiate, and explore other SVF providers for the SIF. *Id*., ¶¶ 103-04. Had Defendants done so, they would have known that other GIC providers offered substantially similar, better-performing GICs and obtained similar rates. *Id*.

All GICs provide for a guaranteed crediting rate of return, or "rate," during a specified period. *Id*., ¶ 68. The marketplace for GICs offers competitive rates. *Id*., ¶ 76. In only two footnotes does Plaintiff cite the 2009 "ERISA Advisory Council Report ["EACR"] on Stable Value Funds and Retirement Security in the Current Economic Conditions" to support that all SVFs are "a conservative, fixed income investment vehicle that provides a relatively stable rate of return" and "can be managed via guaranteed insurance contracts ("GICs"), 'in which the fund manager holds or invests in a single group annuity contract issued directly to the retirement plan and the plan sponsor receives a direct guarantee.'" *Id*., ¶¶ 66 n.10, 67 n.11. The EACR's "purpose […] was to determine whether the Department should provide" guidelines about SVFs and included "a wide

---

[3] Plaintiff was denied access to documentation of Defendants' processes. *See* FAC, ¶¶ 60-64.

3

variety of interested parties and viewpoints."[4] The conclusion and consensus among the witnesses was that "[b]ecause of the protection provided by the issuer or wrapper, plan participants have long considered Stable Value Funds as one of the most secure investments they can make," even though participants do not have an understanding of SVFs' nuances. *Id*. The overwhelming similarities and minute differences between SVFs discussed in the EACR is no different from the differences this Court considered previously. *See* Order at 8.

The SIF is a Synthetic GIC that chronically provided significantly lower rates than comparable SVFs that Defendants could have made available to Plan participants. FAC, ¶¶ 14, 55, 79. The SIF's Form 5500 states that "[t]he investment contracts used by the Plan are fully benefit-responsive." *Id*., ¶ 72. "Events that […] would limit the ability of the Plan to transact at contract value with participants" ("event risks") are, per the "Plan Sponsor" only a "remote" possibility. *Id*. Using information provided in Form 5500s, the SIF's rates can be compared to other SVFs whose terms are: (1) fully benefit-responsive; (2) do not permit the insurance companies to terminate the agreements before the end of the contract; and (3) whose contracts are with creditworthy insurance carriers. *Id*., ¶ 73. The FAC includes several comparisons that meet this criterion. Comparing Plan investments against prudently managed alternatives is critical because these alternatives represent other investments available to a plan. *Id*., ¶ 55. Because of the compounding losses or gains of investments, prudent fiduciaries will compare relative performance of comparable investments, rather than just absolute performance. *Id*., ¶ 80.

The FAC includes year-over-year comparisons of two GICs against the SIF. Like the SIF, the Auto-Owners Life Insurance Company provided a "fully benefit responsive investment

---

[4] *See* www.dol.gov/agencies/ebsa/about-ebsa/about-us/erisa-advisory-council/2009-stable-value-funds-and-retirement-security-in-the-current-economic-conditions. Accessed March 10, 2026.

contract" with the event risks being improbable. *Id*., ¶ 78 (the "AOLIC" GIC"). Also like the SIF, the Variable Annuity Life Insurance Company provided a GIC in the Shands Jacksonville Retirement Plan ("Shands Plan"), where VALIC is "contractually obligated to repay the principal and interest at a specified interest rate" and event risks are improbable. *Id*. (the "VALIC GIC").

The Shands Plan included other SVFs, but that is of no moment because Plaintiff properly uses the VALIC GIC. The 2023 Form 5500 provided by Defendants states that: "The Plan's portfolios of investment contracts," including "the Lincoln Stable Value Account" and "the VALIC Fixed Account Plus," which is "a traditional investment contract and a portfolio of synthetic investment contracts[,]" *both* "meet the fully benefit-responsive investment contract criteria" and have a "rate" that is "based on a formula" and "reviewed" regularly "for resetting." Dkt 49-2, PageID #:2367. The only "difference between" the synthetic and traditional GICs is that "the Plan owns the underlying assets of the synthetic" GIC. *Id*. Defendants (improperly) provide SEC filings from *2007*, well before the Class Period started in 2019 (FAC, ¶ 32), that confirm what the Shands Plan's Form 5500 already states: the VALIC GIC is "fixed-return investment" that "is guaranteed to earn at least a minimum rate of interest as shown in your [plan specific] Contract." Dkt. 49-3, PageID #:2393. The outdated prospectus confirms the contract terms are *specific to each plan* and the withdrawal/transfer terms in 2007 were nugatory. *See* Dkt. 49-2.

For every year of the Class Period, there is a chart comparing the SIF to the VALIC and AOLIC GICs, and a chart of additional GICs. FAC, ¶¶ 83-99 (the "Comparators"). The Baylor College of Medicine Plan and American United Life Progress Sharing Plan and Trust were each used every year from 2019-2022. *Id*. The SIF underperformed against all of the Comparators. Notably, in 2020, the SIF underperformed the VALIC and AOLIC GICs by 75.62%, and 64.95% respectively; in 2021, the SIF underperformed VALIC and AOLIC GICs by 56.66% and 36.42%

5

respectively; in 2022, the SIF underperformed the VALIC and AOLIC GICs by 43.49% and 21.10% respectively; in 2023 the SIF underperformed the VALIC and AOLIC GICs by 37.82% and 22.99% respectively. *Id.*, ¶¶ 87-98. Although the Comparators all had similar risk considerations, the dramatic disparities between rates in all years demonstrate that any purported difference in GIC type or theoretical risk cannot be the reason for the SIF's dismal crediting rate. *Id.*, ¶¶ 101-02. Moreover, the Comparators are just illustrative to plausibly show numerous GICs were in the marketplace year after year that were prudent alternatives to the SIF.

## III. ARGUMENT

### A. Standard of Review

At this stage, facts are accepted as true and inferences must be "view[ed] [] in a light most favorable to Clinton." Order at 11. "[T]he inquiry is context specific, and the motion-to-dismiss touchstone is plausibility." *Id*. In all contexts, a fiduciary "has a continuing duty of some kind to monitor investments." *Hughes v. Nw. Univ.*, 595 U.S. 170, 177 (2022) ("*Hughes I*").

The Supreme Court has a "heighten[ed] [] fairness concern" for ERISA plaintiffs at the pleadings stage, because the justification (or lack thereof) for a fiduciary's decision will "turn on facts one would expect to be in the fiduciary's possession." *Cunningham v. Cornell Univ.*, 604 U.S. 693, 705 (2025); *see also Allen v. GreatBanc Tr. Co.*, 835 F.3d 670, 678 (7th Cir. 2016) (this makes it "sufficient for a plaintiff to plead facts indirectly" in ERISA cases). Like in *Cunningham* and *Hughes I*, the Supreme Court rejected arguments that would heighten a pleading standard and limit liability for ERISA fiduciaries, because the Court "do[es] not believe that the presumption [in favor of the fiduciaries that is proposed] here is an appropriate way to weed out meritless lawsuits." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014). Hence, although there may be "'alternative explanations for an ERISA fiduciary's conduct,' [] only '*obvious* alternative

6

explanations must be overcome at the pleadings.'" Order, at 3 (quoting *Hughes II*, 63 F.4th at 629–30). Of course, having inadequate or "no process for monitoring" a GIC is "not within a 'range of reasonable judgments'" a fiduciary makes. *Carter v. Sentara Healthcare Fiduciary Comm.*, 2025 WL 2427614, at *5 (E.D. Va. Aug. 11, 2025) (quoting *Hughes I*, 595 U.S. at 177).

**B.    Clinton's imprudent process allegations remain plausible**

The instant "allegations relating to the Investment Committee's process (or lack thereof) in selecting and retaining underperforming funds—and failing to negotiate accordingly—are process-based" inferences—not allegations of underperformance alone, nor allegations that Defendants were required to pick the best performing fund. Order at 4; *see also Allen*, 835 F.3d at 678–79 (a complaint can state "an inference that [Defendant] breached [their] fiduciary duty, [] by failing to conduct an adequate inquiry."). Defendants merely raise a merits defense that there was no imprudence and any performance was-not-that-bad or due to some other factor than imprudence. As with Defendants' prior motion, these are "alternative explanations [that] need not be conclusively ruled out at the pleading stage" (*Hughes II*, 63 F.4th at 628), particularly because these issues turn on facts in Defendants' sole possession. *See Cunningham,* 604 U.S. at 705; FAC, ¶¶ 60-64. Defendants recycle their prior rejected positions by relying on the same misplaced cases and strawman arguments.

First, this Court has already rejected the argument that Plaintiff alleges performance alone, because, as with the instant FAC, Plaintiff alleges numerous prudent processes that Defendants failed to undertake in failing to monitor the SIF. *See* FAC, ¶¶ 103-04. The minutia between SVFs and speculation about what may have affected rates are still not "*obvious*" explanations warranting dismissal. Order, at 3 (quoting *Hughes II*, 63 F.4th at 629–630) (emphasis in *Hughes II*). As the Third Circuit explained, a court errs in assuming fiduciaries were "justified and informed" in

selecting a GIC, and a challenged GIC's "terms" are "issues for trial" because "[t]he dramatic disparity between the interest rates [the challenged GIC] offered and those offered by other" GICs infers imprudence. *In re Unisys Sav. Plan Litig.,* 74 F.3d 420, 436-37 (3d Cir. 1996) ("*Unisys*"); *see also Allen*, 835 F.3d at 680 (whether the rate "was the result of normal economic forces or something more sinister is a matter for a later stage."); *Perkins v. United Surgical Partners Int'l, Inc.*, 2024 WL 1574342, at *3 (5th Cir. Apr. 11, 2024) (the defendants' reasoning was "severely undercut by the Plaintiffs' allegation that the Plan's" contracted rates "were significantly [worse] than those of comparable plans."). Here, the rate "discrepancy" "demonstrate[s] not only consistency but some likelihood that [Defendants] failed to conduct regular reviews of its investment." *Acosta*, 2024 WL 3888862, at *5; *see also Lucero v. Credit Union Ret. Plan Ass'n*, 2023 WL 2424787, at *3 (W.D. Wis. Mar. 9, 2023) (same). As with other upheld GIC cases, Plaintiff "provides several examples of what a prudent process would look like" (*Carter*, 2025 WL 2427614, at *6), such as "leverage[ing] the size of the plan." *Payne v. Hormel Foods Corp.*, 2024 WL 4228613, at *8 (D. Minn. Sept. 18, 2024); *see also* Order at 4 ("Courts have also recognized as plausible a fiduciary's ability to leverage its bargaining power in negotiations.").

Second, the deliberate act of agreeing to, and renewing, a contract for a set return when marketplace information is readily available before the decision is made also disproves Defendants' "hindsight" argument. This is because with GICs the "applicable interest rate is" determined "in advance." *Wood v. Prudential Ret. Ins.*, 2016 WL 5940946, at *1 (D. Conn. Sept. 19, 2016); *see also Miller v. AutoZone, Inc.*, 2020 WL 6479564, at *6 (W.D. Tenn. Sept. 18, 2020) ("monitor[ing] the GIF in appropriate six-month intervals" would have revealed that it "was consistently underperforming."); *Payne*, 2024 WL 4228613, at *8 (because SVFS "are intended

to perform consistently over time […] it [is] plausible that a prudent fiduciary in the circumstances alleged 'would have acted differently.'").

Third, Defendants reraise the same argument rejected by this Court and others: that because SVFs have the aim of preserving assets there can be no imprudence. Capital preservation is not the sole objective of GICs. Offering competitive rates is fundamental. Hence this is why there is high competition in the GIC marketplace and positive returns do not foreclose liability. *See* FAC, ¶ 76; *Miller*, 2020 WL 6479564, at *4 (a GIC "seeks to generate returns greater than" other investments with principal protection aims); *Abbott*, 725 F.3d at 806-07  (the SVF "had such "a low rate of return" that it did not "provide a meaningful retirement asset"); *Lacrosse*, 2024 WL 3564575, at *3  (denying dismissal where the rates were insufficient); *Payne*, 2024 WL 4228613, at *7 (same). Throughout their arguments, Defendants primarily focus on mutual fund cases and materially misrepresent other cases that did not have the same theory of liability as here and/or did not include comparisons. *See* n.5, *infra*. Defendants already attempted to persuade this Court with *Barchock*, and Plaintiff already explained the discussion on objectives in *Barchock* was that fund's particularized "stated objective" and the issue was not the rate of return, but instead "'***solely***' that the 'cash-equivalent allocation 'departed radically' from both industry averages and the underlying financial logic of SVFs.'" *Barchock v. CVS Health Corp*., 886 F.3d 43, 49, 52 (1st Cir. 2018) (emphasis added). "[T]he Complaint d[id] not compare [the comparators'] returns with the actual returns of the" challenged fund whatsoever. *Barchock v. CVS Health Corp*., No. 16-cv-061, 2017 WL 9324762, at *3 (D.R.I. Jan. 31, 2017). The FAC is materially distinguishable from *Barchock*. In fact, post-*Barchock*, the First Circuit instructed that fiduciaries may cause a loss even when the fund is conservative and "increases in absolute dollar value" because there would still be "a

9

measurable loss of opportunity" which is the proper "sophisticated" framework in ERISA cases. *Brotherston v. Putnam Invs., LLC,* 907 F.3d 17, 24, 31 (1st Cir. 2018). That is the case here.

### C.     The Comparator SVFs are meaningful

After considering the Parties' caselaw, Defendants' factual disputes, and applying Seventh Circuit precedent to the context of GICs, the Court granted dismissal solely based on Plaintiff's "failure to identify a uniform benchmark across the Class Period." Order at 4. The FAC now cures the sole reason for dismissal by including two year-over-year comparisons. *See* FAC, ¶¶ 83-98. The FAC realleges that "all stable value GICs, [] as pled, share fundamental attributes[,]" meaning that they "are intended to provide participants with an option that protects their assets and is shielded from risks of loss," which is sufficiently similar under *Hughes II* and *Albert*, and based on the definition of GICs used in other cases. Order at 7 (discussing *Ellis v. Fid. Mgmt. Tr. Co.*, 883 F.3d 1, 3 (1st Cir. 2018), and *Abbott*, 725 F.3d at 806); FAC ¶¶ 66-68. Although "differences exist among SVFs, […] any differences in degree (and their relevance) are questions for another day." *Id.*, at 7, 8 (citing *Miller v. Astellas US LLC*, 2021 WL 1387948, at *5 (N.D. Ill. Apr. 13, 2021)).

Defendants again insist this Court abandon Seventh Circuit precedent and adopt the holdings of more stringent courts by citing decisions not involving GICs. This Court aptly noted that the Seventh Circuit has an "undemanding" standard compared to other circuits. Order at 6 n.8. Regardless, the Court agreed with courts applying the more stringent meaningful benchmark standard in holding that comparisons of "separate and general account products" are allowable because "'[f]rom the perspective of a plan participant or investor, they [allegedly] provide the same benefit[:] […] a conservative, stable rate of return[,]" and Defendant "offer[s] no explanation as to why the [other type of GICs] would not be a reasonable substitute'" from a Plan participant's

10

viewpoint. *Id*., at 8 (quoting *Lacrosse*, 2024 WL 3564575, at *3 and citing *Payne*, 2024 WL 4228613, at *7).

The Court need not revisit its prior analysis because Defendants make the exact same arguments they made previously, using the same distinguishable cases centered on variable rate mutual funds and recordkeeping fees – not GICs.[5] In *Payne*, *Lacrosse*, and *Miller*, the "structure, objectives, strategy, and risk profile" were sufficiently similar compared to the other GICs that by nature have the "same benefits and expectation of returns." *Payne*, 2024 WL 4228613, at **6 7; *see also Lacrosse*, 2024 WL 3564575, at *3 (refuting arguments that plaintiffs must "allege facts about the characteristics, costs, or risks, of the TIAA Traditional Annuity" as these aspects "ha[ve] no bearing on the fund's ability to offer higher crediting rates."); *Miller*, 2020 WL 6479564, at **5-6 (A GIC's "underlying investment portfolio" is not relevant and does not undermine the plausibility of the unjustifiably low rates).

The FAC's EACR citations change nothing. Foundationally, citing the EACR in two footnotes is not enough to bring the EACR into factual deliberation at this stage, let alone to view inferences in Defendants' favor. *See Miller*, 2021 WL 1387948, at *3 (an ERISA case holding that a "booklet" that was "cited three times in the complaint [] cannot be said to be "central" to plaintiffs' claims" was thus not incorporated by reference); *Zimmerman v. Cedars-Sinai Med. Ctr.*,

---

[5] The discussion of bonds in *Meiners v. Wells Fargo & Co*., 898 F.3d 820 (8th Cir. 2018) applies to mutual funds but not GICs. *Hughes II* overturned the meaningful comparator reasoning behind the share class discussion in *Dale v. NFP Corp.,* 658 F. Supp. 3d 620 (N.D. Ill. 2023). *See Hughes II*, 63 F.4th at 622, 625, 634-36. *Abel v. CMFG Life Ins. Co*., 2024 WL 307489 (W.D. Wis. Jan. 26, 2024); *Luckett v. Wintrust Fin. Corp*., 2023 WL 4549620 (N.D. Ill. July 14, 2023) *Baumeister v. Exelon Corp*., 2023 WL 6388064 (N.D. Ill. Sept. 29, 2023); and *Lard v. Marmon Holdings, Inc*., 2023 WL 6198805 (N.D. Ill. Sept. 22, 2023) evaluated target date mutual funds. The complaints in *Smith v. CommonSpirit*, 37 F.4th 1160 (6th Cir. 2022) and *Matney v. Barrick Gold of N. Am*., 80 F.4th 1136 (10th Cir. 2023) challenged whether a categorical type of mutual fund was prudent. *Gosse v. Dover Corp.*, 2025 WL 2996795 (N.D. Ill. Oct. 24, 2025) involved recordkeeping fees.

2024 WL 1135773, at *3 (C.D. Cal. Feb. 18, 2024) (a "report" only cited in "five paragraphs" was not sufficiently incorporated by reference in an ERISA case); Order at 1 n.1 (all inferences are drawn in Clinton's favor). Defendants' reliance on the EACR additionally fails because the EACR does not provide anything beyond what the Court has already considered and held "are 'premature factual disputes' ill suited for a motion to dismiss." Order at 6. *C.f.,* Defs' Br. at 4, 13 (the EACR discusses differences between GIC types, such as the number of wrap providers and correlating risk (of provider default) and who owns the underlying assets); Order at 8 (finding these same aspects insufficiently dissimilar to warrant dismissal). It is merely Defendants' subjective belief that these differences matter. To be sure, the consensus of the EACR's testifiers was that GICs are overwhelmingly similar (*see* FAC ¶¶ 66-67), particularly from the view of investor-participants who want steady returns. These inferences are viewed in Clinton's favor. *See* Order at 1 n.1.

Worse yet, Defendants egregiously misrepresent the EACR to baldly state that Synthetic GICs do not use formulas set by insurers and cannot be negotiated by prudent fiduciaries. *See* Defs' Br. at 13. The EACR says no such thing. On the other hand, the later dated Form 5500 Defendants attach disproves Defendants' argument because both the synthetic and general/traditional GICs "held by the [Shands] Plan" utilize "[f]ormulas" that "adjusts renewal crediting rates," which "are reviewed [regularly] for resetting." 49-2, PageID: #:2367-68. Simply put, the EACR does not warrant changing this Court's well-deliberated holdings.

Furthermore, Defendants again attempt to rely on the summary judgment decision in *Ellis.* Yet, the Court did consider *Ellis* in holding that, "drawing inferences in Clinton's favor, it's reasonable to conclude that meaningful comparison is possible because the SIF shares core similarities with other identified SVFs." Order at 7 (discussing Dkt. 19 at 7–8; *Ellis*, 883 F.3d at 3). Whether the "differences [that] exist among SVFs," such as the number of wrap providers or

12

who "own the assets of the underlying funds," are material remain premature factual disputes. *Id*. Defendants' own case of *Iannone* is aligned with this Court's Order because the opinion *denied* the motion to exclude the plaintiff's expert, holding that "defendants may explore the differences between the GIF and Tobe's comparators using cross-examination." *Iannone v. AutoZone, Inc.*, 344 F.R.D. 319, 336 (W.D. Tenn. 2023). It is sufficient that the Comparators all "share core similarities." *Gaines v. BDO USA, LLP*, 663 F. Supp. 3d 821, 830 (N.D. Ill. 2023).

Defendants' sole issue with the AOIC GIC is that it is a general account GIC, which this Court has found insufficient to warrant dismissal. The VALIC GIC is also comparable. That it had fewer participants than the SIF in just one year of the Class Period is not an "*obvious*" alternative explanation for the rate disparities. Order at 6. To the contrary, the FAC alleges that larger assets under management gives fiduciaries "considerable leverage to bargain for higher crediting rates[,]" and therefore the SIF should have higher rates than the VALIC GIC due to its larger size. FAC, ¶ 103; *see also* Order at 4. Defendants also attach an improper prospectus from twelve years before the Class Period in an attempt to distinguish the VALIC GIC (although no prospectus for the SIF is under consideration). Defendants cite *Hecker* to insist the Court consider the outdated prospectus, but, as explained by the court in *Miller*, "the Seventh Circuit did not broadly hold that prospectuses can or must always be considered on a motion to dismiss. Rather, because the complaint in that case was based on the alleged inadequacy of disclosures," it was appropriate in *Hecker* "for the 'limited purpose' of evaluating the disclosures." *Miller*, 2021 WL 1387948, at *4 (quoting *Hecker v. Deere & Co.*, 556 F.3d 575, 582-83 (7th Cir. 2009)). Defendants' subjective and unverified opinion that the VALIC GIC had "significant restrictions" on participants removing funds, based on a prospectus that was outdated by 10+ years and not related to the Shands Plan's unique contract with VALIC, is not relevant. Defs' Br. at 14. Plus, Plaintiff disputes that the mere

13

restriction that Defendants cite is significant, not that it renders the VALIC GIC materially different from the SIF and justifies the consistent and extreme rate disparities. *See Unisys,* 74 F.3d at 436-37. It is also irrelevant that there were other GICs in the Shands Plan. Plaintiff is the master of his complaint.

Lastly, Defendants again ignore that the Plan was in the top 1% of plans regarding size (FAC, ¶ 11) in incorrectly "criticiz[ing] [Plaintiff] for not picking enough comparators based on the entire universe of 401(k) plans, the overwhelming majority (99.9%+) of which are far smaller than the" Plan. *Rodriguez v. Hy-Vee, Inc.*, 2022 WL 16648825, at *10 (S.D. Iowa Oct. 21, 2022); *see also Walter v. Kerry Inc.*, 2022 WL 1720095, at *3 (E.D. Wis. May 27, 2022) (performance standards are higher for exceptionally large plans); *Mazza v. Pactiv Evergreen Servs. Inc.*, 2023 WL 3558156, at *2 (N.D. Ill. May 18, 2023) (the Plan's size meant it had "substantial bargaining power" that went unleveraged). The Court has no reason to depart from its prior rejection of Defendants' arguments. The year-over-year Comparators render the FAC sufficiently plausible.

### D.     The Rates Alleged are Plausible

Defendants again rely on *mutual fund* cases to state that the duration and extent of underperformance is insufficient here. *But see Payne*, 2024 WL 4228613, at **6, 8 (GICs "by nature, are different from other types of investment options."). The SIF and Comparators' rates are reset regularly, unlike the variable rate mutual funds in Defendants' case of *Smith* that were "supposed to grow for fifty years." Defs' Br. at 8 (quoting *Smith*, 37 F.4th at 1166). In *Miller*, the court explained that, like here, allegations of imprudent processes are "not premised on underperformance alone, and" some "out-of-circuit" cases "do not stand for the proposition that there is any particular durational threshold required for underperformance allegations." *Miller*, 2021 WL 1387948, at *6 ("this short window of alleged underperformance […] is not, as a matter

14

of law, too fleeting to support" plausibility); *see also Russell v. Illinois Tool Works, Inc.*, 2024 WL 2892837, at *3 (N.D. Ill. June 10, 2024) (disregarding the defendants' opinion "that the performance of the funds in this case was entirely satisfactory.").

Also, Defendants again mispresent *Rodriguez*, 2022 WL 16648825 to argue that Plaintiff's performance metrics are "misleading" yet not incorrect. Defs' Br. at 15. Defendants improperly ask this Court to view inferences in Defendants' favor by only considering absolute performance returns. *But see* Order at 1 n.1. Proper metrics are a factual dispute. Plaintiff alleges, and it is accepted as true, that "[b]ecause of the compounding losses or gains of investments, prudent fiduciaries will compare relative performance of comparable investments, rather than just absolute performance." FAC, ¶ 80. In any event, the absolute returns are in line with the amounts upheld by GIC cases, which are the appropriate context for evaluating the FAC rather than mutual fund cases. *See Somers*, 2024 WL 4008527, at **3-4  (underperformance by 0.07% over a "five year period" was sufficient); *Miller*, 2020 WL 6479564, at *5 (2.20% was sufficient); *Carter*, 2025 WL 2427614, at *6 ("1.36% is sufficient."); *Payne*, 2024 WL 4228613, at **6-7 (0.71% inferred imprudence); *Lau*, 2016 WL 5957687, at *4 ("1.5% guaranteed rate of return" was not "unquestionably reasonable").

In sum, Plaintiff has stated a plausible claim for imprudence in Count I. Therefore, Count II is also plausible because it is "derivative of the underlying claim in Count I." Order at 12.

## VI.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' Motion, or in the alternative, grant Plaintiff leave to amend. With respect to this Court's rules, any purported relevant deficiencies identified by Defendants may be cured by amendment.

Dated: March 13, 2026                             Respectfully submitted,

15

**CAPOZZI ADLER, P.C.**

*/s/ Mark K. Gyandoh*
Mark K. Gyandoh, Esquire
James A. Maro, Esquire
312 Old Lancaster Road
Merion Station, PA 19066
Email: markg@capozziadler.com
            jamesm@capozziadler.com
Tel.: (610) 890-0200

*Counsel for Plaintiff and the Putative Class*

16

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 13, 2026, a true and correct copy of the foregoing document was filed with the Court utilizing its ECF system, which will send notice of such filing to all counsel of record.

By: /s/ *Mark K. Gyandoh*      
Mark K. Gyandoh, Esq.
