IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CHARLES CLINTON and MICHAEL LEDBETTER, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>  v.<br><br>BAXTER INTERNATIONAL INC., et al.,<br><br>    Defendants. | Civil Action No. 1:25-cv-03368<br><br>Honorable Lindsay C. Jenkins |

## DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

324647260v.8

**TABLE OF CONTENTS**

**Page**

DISCUSSION ........................................................................................................................ 1

I.     PLAINTIFFS DRAMATICALLY UNDERSTATE THEIR PLEADING
BURDEN. ................................................................................................................. 1

II.    PLAINTIFFS FAIL TO SHOW THERE WERE YEAR-IN, YEAR-OUT
BETTER-PERFORMING ALTERNATIVES THAT CAST DOUBT ON THE
INVESTMENT COMMITTEE'S PROCESS. ....................................................... 3

III.    PLAINTIFFS' COMPARATORS FAIL UNDER *ALBERT* AND, MORE
BASICALLY, UNDER THE WEIGHT OF THEIR OWN PLEADINGS. ....................... 5

IV.    PLAINTIFF'S MONITORING CLAIM (COUNT II) FAILS TO STATE ANY
CLAIM FOR RELIEF. .......................................................................................... 10

V.     CONCLUSION...................................................................................................... 10

324647260v.8

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abel v. CMFG Life Ins. Co.*,
   No. 22-cv-449, 2024 WL 307489 (W.D. Wis. Jan. 26, 2024)................................................1, 6

*Albert v. Oshkosh Corp.*,
   47 F.4th 570 (7th Cir. 2022) ........................................................................................................6

*Barchock v. CVS Health Corp.*,
   No. 16-061-ML, 2017 WL 1382517 (D.R.I. Apr. 18, 2018), *aff'd*, 886 F.3d 43
   (1st Cir. 2018) ..............................................................................................................................9

*Bogie v. Rosenberg*,
   705 F.3d 603 (7th Cir. 2013) .......................................................................................................7

*Davis v. Wash. Univ. in St. Louis*,
   960 F.3d 478 (8th Cir. 2020) .......................................................................................................6

*Fifth Third Bancorp v. Dudenhoeffer*,
   573 U.S. 409 (2014).....................................................................................................................2

*Hecker v. Deere & Co.*,
   556 F.3d 575 (7th Cir. 2009) ...............................................................................................5, 7, 8

*Hughes v. Nw. Univ.*,
   595 U.S. 170 (2022)..................................................................................................................2, 9

*Iannone v. AutoZone, Inc.*,
   344 F.R.D. 319 (W.D. Tenn. 2023) .............................................................................................4

*Jacobs v. Hackensack Meridian Health, Inc.*,
   No. 25-cv-1272, 2026 WL 710229 (D.N.J. Mar. 13, 2026) ....................................................6, 7

*Lacrosse v. Jack Henry & Assocs., Inc.*,
   Case No. 23-cv-05088, 2024 WL 3564575 (W.D. Mo. July 11, 2024)......................................9

*Massey v. Helman*,
   196 F.3d 727 (7th Cir. 1999) .......................................................................................................2

*Matney v. Barrick Gold of N. Am.*,
   80 F.4th 1136 (10th Cir. 2023) ....................................................................................................4

*Meiners v. Wells Fargo & Co.*,
   898 F.3d 820 (8th Cir. 2018) ...........................................................................................5, 6, 8–9

324647260v.8

*Miller v. AutoZone, Inc.*,
    No. 2:19-cv-02779, 2020 WL 6479564 (W.D. Tenn. Sept. 18, 2020) ....................................10

*Payne v. Hormel Foods Corp.*,
    No. 24-cv-545, 2024 WL 4228613 (D. Minn. Sept. 18, 2024)................................................10

*Wood v. Prudential Ret. Ins.*,
    No. 3:15-cv-1785, 2016 WL 5940946 (D. Conn. Sept. 19, 2016)............................................9

**Other Authorities**

ERISA Advisory Council, *Advisory Council Report on Stable Value Funds and Retirement Security in the Current Economic Conditions*, Emp. Benefits Sec. Admin. (2009), https://www.dol.gov/agencies/ebsa/about-ebsa/about-us/erisa-advisory-council/2009-stable-value-funds-and-retirement-security-in-the-current-economic-conditions ...............................................................................8, 9

324647260v.8

Plaintiffs' opposition rests almost entirely on the refrain that the Amended Complaint "cured" the "sole deficiency causing dismissal" in this Court's prior dismissal order (ECF 39) (the "Order"). This incorrect assertion misstates both the Order and binding Seventh Circuit precedent. Nothing in *Hughes II*, *Albert*, or this Court's application of them to Plaintiff's *original* Complaint relieved Plaintiffs of their burden to plead facts in the Amended Complaint plausibly showing meaningful, persistent benchmarks capable of supporting an inference of a flawed fiduciary process.

To the contrary, the Order stressed that "simply 'pointing to another investment that has performed better . . . does not plausibly plead an imprudent decision.'" (ECF 39 at 4 (citing *Abel v. CMFG Life Ins. Co.*, No. 22-cv-449, 2024 WL 307489, at *5 (W.D. Wis. Jan. 26, 2024).) Rather, a plaintiff must "plausibly allege[] meaningful comparisons." (*See* ECF 39 at 4.) Plaintiffs ignore these admonitions and rest their claim of imprudence on the allegation that a single cherry-picked SVF outperformed the SIF. Plaintiffs plead no detail to support that this alternate fund was a "meaningful comparator" and instead contend Defendants are barred from identifying differences in risk and structure, even where those factors are apparent in the pleadings.

By choosing to double-down on an outcome-based theory of liability that ERISA does not permit, the Amended Complaint fails to remedy the defects the Court identified. The Court should dismiss the Amended Complaint with prejudice.

## DISCUSSION

## I.      PLAINTIFFS DRAMATICALLY UNDERSTATE THEIR PLEADING BURDEN.

Plaintiffs contend that because the Court dismissed the Complaint for failing to cite a consistent comparator SVF for the putative class period, the Amended Complaint can survive so long as it cures that issue. Plaintiff's contention is wrong as a matter of law. "[A] plaintiff's new

1

324647260v.8

complaint wipes away prior pleadings[.]" *See Massey v. Helman*, 196 F.3d 727, 735 (7th Cir. 1999). Thus, the Amended Complaint must state a plausible claim on its own, independent of what Plaintiff pleaded in his prior Complaint.

Evaluating a motion to dismiss putative ERISA class action claims requires a "context specific" analysis of the operative pleading. *Hughes v. Nw. Univ.*, 595 U.S. 170, 177 (2022) (quoting *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014)). Holding Plaintiffs to the Supreme Court's standard is not "insist[ing] this Court abandon Seventh Circuit precedent." (ECF 50 at 10.) Rather, Defendants simply ask, consistent with *Hughes*, that Plaintiffs must meet the *Twombly/Iqbal* pleading standard and plausibly plead their claim. *See Hughes*, 595 U.S. at 177. As made clear in the Order, *Albert* and *Hughes II*, together, "set the contours for prudence analyses under ERISA" in this Circuit. (ECF 39 at 5.)

Nothing in the Order lessened Plaintiffs' pleading burden or limited the arguments available to Defendants in seeking dismissal of the Amended Complaint. In the context of the original Complaint, the Court agreed with Plaintiff that distinctions between SVFs presented "'premature factual disputes' ill-suited for a motion to dismiss." (ECF 39 at 6 (quoting ECF 30 at 11).) That conclusion, however, turned specifically on the context of the original Complaint. The Court reasoned that because "the [C]omplaint allege[d] only that all stable value funds provide plan participants a low-risk option, any differences in degree (and their relevance) [were] questions for another day." (ECF 39 at 8.) Those context-specific findings are not dispositive with respect to the Amended Complaint (which, of course, adds allegations not previously before the Court). Indeed, the allegations in the Amended Complaint, as detailed below and in the Motion, show that Plaintiffs' allegations there "fall on the *Albert* side of the dividing line," (*see* ECF 39 at 6), and

2

324647260v.8

should be dismissed because they rely exclusively on alleged comparators that materially differ from the SIF and thus do not present meaningful benchmarks.[1]

## II. PLAINTIFFS FAIL TO SHOW THERE WERE YEAR-IN, YEAR-OUT BETTER-PERFORMING ALTERNATIVES THAT CAST DOUBT ON THE INVESTMENT COMMITTEE'S PROCESS.

The Amended Complaint should be dismissed because Plaintiffs failed to correct the defect that resulted in dismissal of the Complaint. In dismissing the Complaint, the Court held that "[b]ecause Clinton's claims rely on allegations of chronic underperformance, his failure to identify a uniform benchmark across the Class Period is fatal." (ECF 39 at 4.) The Court further explained it was Plaintiffs' burden, to "show—at minimum—that there were year-in, year-out better-performing alternatives that cast doubt on the Investment Committee's process for monitoring and renewing its own funds." (*Id.* at 9.) This burden cannot be met through "cherry-picking" or by "simply 'pointing to another investment that has performed better." (*Id.* at 4, 9.)

Plaintiffs replead their already rejected comparators and then claim to have "cure[d] the sole reason for dismissal by including two year-over-year comparisons"—the AOIC Plan and the Shands Plan. (*See* ECF 50 at 15.) Plaintiffs' reliance on the VALIC fund in the Shands Plan contradicts their claimed "cure." Plaintiffs fail to rebut that the VALIC fund is *not* the fund identified as an SVF in the Shands Plan's Form 5500 (the SVF is the Lincoln Stable Value Account). Instead, Plaintiffs cite to a portion of that same Form 5500 that says the plan includes a "portfolio[] of investment contracts," including both the "the Lincoln Stable Value Account" and

---

[1] Plaintiffs wrongly criticize Defendants for "again attempt[ing] to rely on the summary judgment decision in *Ellis* [*v. Fid. Mgmt. Tr. Co.*, 883 F.3d 1 (1st Cir. 2018)]." (ECF 50 at 17.) The motion to dismiss the Amended Complaint makes no reference to *Ellis*.

3

324647260v.8

two VALIC funds. (ECF 50 at 10.) In reality, the VALIC fund cited in the Amended Complaint represented a miniscule 0.03% of the assets in that "portfolio." (*See* ECF 49-2 at 7, 11, 15.[2])

The VALIC fund is also miniscule in comparison to the SIF. At the end of 2023, the VALIC fund held just over $27,000, from just 43 participants, while the SIF held over $473 million. (ECF 49 at 10; ECF 45, ¶ 47.) Plaintiffs argue that this size difference does not impact whether the VALIC product can be a meaningful comparator because as the larger fund, the SIF should have been able to negotiate a higher rate than the VALIC fund. (ECF 50 at 18.) Not true. Reliance on a comparator of a grossly different size fails to state a meaningful benchmark. *See Matney v. Barrick Gold of N. Am.*, 80 F.4th 1136, 1156–57 (10th Cir. 2023) (granting motion to dismiss where "comparators" included only smaller plans in matter involving large plan, despite allegation that large plans should be able to obtain favorable terms; court held where plaintiff "proceeds by way of comparison, [] he has the burden to provide meaningful benchmarks"). Because the VALIC fund does not provide for a "meaningful comparison," Plaintiffs' conclusion requires a logical leap their comparator cannot support. It is just another cherry-picked data point that is not probative of the SIF's performance.[3]

The differences between the SIF and the VALIC product are not limited to their size. The fixed-return VALIC contract contains significant restrictions, including on participants' ability to withdraw their money from the fund. (*See* ECF 49 at 10, 19.) The Amended Complaint pleads no such restrictions for the SIF. (ECF 45, ¶ 72.) Plaintiffs do not deny this difference. Instead, with

---

[2] As the Form 5500 demonstrates, the contract Plaintiffs cited as a comparator held just $27,215 of the $87,618,305 in the "portfolio" of investment contracts in the Shands Plan at the end of 2023. (ECF 49-2 at 15.)

[3] The suggestion that *Iannone v. AutoZone, Inc.*, 344 F.R.D. 319 (W.D. Tenn. 2023) supports their cherry-picking, (ECF 50 at 18), misreads that decision. In *Iannone*, the court specifically criticized reliance on cherry-picked data. *Id.* at 335. While the court declined to exclude the at-issue expert report from a bench trial, the court did so based on its own ability (in a bench trial) to weigh evidence appropriately, not because it found cherry-picked data probative. *Id.*

4

324647260v.8

no explanation, they claim this difference is "nugatory" and deride it for being based on an "outdated" prospectus. (ECF 50 at 7, 10, 18.) But, though it was published in 2007, Plaintiffs identify *nothing* outdated in the prospectus, nor do they suggest the information it contains is inaccurate or not current.[4] More telling, Plaintiffs offer no facts as to why this substantiated difference between the funds does not negate the claim of a "meaningful benchmark." (*See* ECF 49 at 10, 19.) Nor can they. A fund requiring participants to surrender access to their assets for a longer duration than the SIF would be expected to provide greater return in exchange for those liquidity restrictions. This difference in characteristic eliminates this "comparator." *See Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 823 (8th Cir. 2018) (finding that a fund with different characteristics ultimately performed better does not establish the plan's funds were imprudent).

Plaintiffs' opposition offers no defense of the AOIC Plan—instead saying in a single sentence that the Order justifies reliance on it. (*See* ECF 50 at 18.) As detailed below, this is woefully deficient.

## III.    PLAINTIFFS' COMPARATORS FAIL UNDER *ALBERT* AND, MORE BASICALLY, UNDER THE WEIGHT OF THEIR OWN PLEADINGS.

Plaintiffs attempt to flatten the recognized differences between SVFs to obfuscate their utter failure to plead meaningful comparators. They contend any argument comparing the characteristics of the SIF and the putative comparators presents a "premature factual dispute" that cannot be addressed on a motion to dismiss. (ECF 50 at 17–18.)

---

[4] Notably, Plaintiffs do not express any concerns that that the EACR, issued in 2009, might similarly be "outdated." Further, *Hecker v. Deere & Co.*, 556 F.3d 575 (7th Cir. 2009) affirms it is appropriate to consider the prospectus at this stage. In *Hecker*, the plaintiffs objected to the District Court's inclusion of prospectuses that were (as here) not attached to the complaint. *See id.* at 582. The Seventh Circuit rejected that argument and held that, while not attached, they "were publicly available documents" and could be considered on a motion to dismiss. *Id.* at 582–83.

324647260v.8

Neither *Hughes II* nor *Albert* supports Plaintiffs' flawed, conclusory claims of comparability. Under *Albert*, a plaintiff seeking to support a plausible claim of imprudence must provide "detailed allegations" showing there is a "sound basis" for the comparison they are making. *Albert v. Oshkosh Corp.*, 47 F.4th 570, 581–82 (7th Cir. 2022) (quoting *Davis v. Wash. Univ. in St. Louis*, 960 F.3d 478, 484 (8th Cir. 2020) and *Meiners*, 898 F.3d at 822). Plaintiffs must plead "specific factual allegations demonstrating that the comparator funds actually 'hold similar securities, have similar investment strategies, and reflect a similar risk profile' to the investments ultimately chosen by the fiduciaries." *Abel*, 2024 WL 307489, at *4 (citations omitted).[5]

Plaintiffs' arguments for a lighter pleading burden for their SVF underperformance claims have been recently rejected elsewhere, including another recent case brought by Plaintiffs' counsel. *Jacobs v. Hackensack Meridian Health, Inc.*, No. 25-cv-1272, 2026 WL 710229, at *9–10 (D.N.J. Mar. 13, 2026). In *Jacobs*, the court rejected as "untenable" the plaintiffs' argument that, where they pled a claim of imprudence through comparisons to other products in the market, challenges to the suitability of their comparators in a motion to dismiss presented "premature" fact disputes at the pleading stage. *Id.* at *11. In rejecting these arguments, *Jacobs* found the standard Plaintiffs urge here would allow "a plaintiff [to] use any better-performing fund as an alleged comparator to survive a motion to dismiss as long as they allege that those two funds are substantially similar." *Id.* The court reasoned it could not simply deem a fund a comparator when, other than putative crediting rates, "the Court ha[d] little to no information to rely on for each of the comparator funds." *Id.* at *12. The Court thus dismissed the SVF underperformance claim

---

[5] Plaintiffs attempt to dismiss the reasoning of *Abel* and other cases simply because they involve mutual funds or target-date funds rather than SVFs. (*See* ECF 50 at 16 n.5.) As explained in *Jacobs*, Plaintiffs' reasoning is unpersuasive because SVFs—"like mutual funds and other investment products—involve tradeoffs between risks and rewards . . . . Thus, . . . all cases analyzing these tradeoffs, and whether a plaintiff is comparing products with similar risk-reward ratios" are applicable. *See Jacobs*, 2026 WL 710229, at *11 n.13.

6

because it found the general account GICs used in the complaint could not be used as meaningful benchmarks for the at-issue separate account product because they had different risk and return profiles. *Id.* at \*11–12.

As detailed in the Motion, the EACR cited in the Amended Complaint identifies significant differences between the different types of products that can be classified as SVFs. (*See* ECF 49 at 8.) Plaintiffs' primary response to those differences is to suggest the Court simply disregard the EACR. (ECF 50 at 16–17.) Plaintiffs should not be permitted to cite external sources when they think they support their claims and then ask the Court to ignore those same sources when they recognize that they do not. As they concede in their opposition, Plaintiffs originally cited the EACR to support their foundational premise that "all SVFs are 'a conservative, fixed income investment vehicle that provides a relatively stable rate of return.'" (ECF 50 at 8.) Because the comparability of SVFs—the point on which Plaintiffs rely on the EACR for support—is at the heart of Plaintiffs' claims, the Court may examine the accuracy of that citation at the pleading stage. *See Hecker*, 556 F.3d at 582 (noting court can consider on a motion to dismiss a concededly authentic document cited in the complaint and central to the claim presented). And when an exhibit incorporated into the complaint conflicts with the complaint, "the exhibit ordinarily controls." (ECF 39 at 10 n.11 (quoting *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013).) Thus, while differences between the types of stable value products might have presented factual disputes that could not be resolved on a motion to dismiss in the context of the original complaint, the EACR provides a basis for the Court to resolve them now with respect to the Amended Complaint.

The EACR disproves Plaintiffs' claims that all SVFs are interchangeable "conservative, fixed income investment vehicle[s]." (ECF 50 at 8.) To the contrary, the EACR specifically details the differences between traditional GICs, separate accounts, and synthetic GICs. While Plaintiffs

7

324647260v.8

would prefer the Court disregard discussion of those differences, there is no legal basis for the Court to do so. *Hecker*, 556 F.3d at 582.

Plaintiffs also dispute that the EACR suggests traditional and synthetic GICs use different processes for setting crediting rates. (*See* ECF 50 at 17.[6]) But the EACR specifically says traditional GICs hold assets in the insurer's general account and the crediting rates are guaranteed by the insurer, whereas, in a synthetic GIC, the crediting rate is set by formula "relative to a portfolio of assets held in an external trust."[7] And it is undisputed that plans with synthetic GICs retain ownership over the underlying assets and thus have protection against the risk of insurer default that does not exist in traditional GICs, where the insurer owns the assets.[8]

Plaintiffs acknowledge the SIF is a synthetic GIC while the AOIC Plan's SVF is a traditional GIC. (*See* ECF 45, ¶¶ 14, 69; ECF 50 at 18.) Plaintiffs plead no facts as to why this distinction is not germane in assessing the meaningfulness of this comparator. They cannot, because, as the EACR explains, these different types of SVFs carry different risk-reward tradeoffs. The fact that traditional GICs might have had higher returns than the SIF does not suggest the SIF was imprudent—only that differently-structured investments performed differently. *Meiners*, 898

---

[6] Plaintiffs mischaracterize Defendants' argument as "stat[ing] that Synthetic GICs do not use formulas set by insurers and cannot be negotiated by prudent fiduciaries." (ECF 50 at 17.) Defendants did not make this assertion. Thus, Plaintiffs attack an argument different from the one in Defendants' motion. Defendants instead pointed out that the EACR explains that the rates for synthetic GICs are set formulaically based directly on the performance of the underlying assets without insurer discretion. (*See* ECF 49 at 18.) The EACR belies the pleading's claim that synthetic and traditional GICs are fungible by clarifying that rates in traditional GICs and synthetic GICs are set using different methodologies. (*Id.*)

[7] ERISA Advisory Council, *Advisory Council Report on Stable Value Funds and Retirement Security in the Current Economic Conditions*, Emp. Benefits Sec. Admin. (2009), https://www.dol.gov/agencies/ebsa/about-ebsa/about-us/erisa-advisory-council/2009-stable-value-funds-and-retirement-security-in-the-current-economic-conditions.

[8] In the Order, the Court observed that it would not make sense for less protection in the event of insurer default (*i.e.*, more risk) to explain lower rates of return. (ECF 39 at 8.) But Plaintiffs' comparators present the opposite: the traditional GICs Plaintiffs are using as comparators carry more risk than synthetic GICs and would be expected to have higher returns than synthetic GICs. Because of these differing risk/return profiles, they are not suitable comparators for the SIF.

8

F.3d at 823 ("The fact that one fund with a different investment strategy ultimately performed better does not establish anything about whether the [Plan's funds] were an imprudent choice at the outset."). To allow Plaintiffs to allege the SIF was imprudent because the fiduciaries did not pursue modest crediting rate increases by offering a fundamentally different type of investment would fail to "give due regard to the range of reasonable judgments a fiduciary may make based on her experience and expertise." *Hughes*, 595 U.S. at 177.[9]

Plaintiffs' efforts to distinguish *Barchock v. CVS Health Corporation*, No. 16-061-ML, 2017 WL 1382517 (D.R.I. Apr. 18, 2018), *aff'd*, 886 F.3d 43 (1st Cir. 2018) further dispel their conclusory assertions of inherent comparability between SVFs. Plaintiffs argue *Barchock* is distinguishable because the SVF at issue there had a specific "stated objective" that influenced its asset allocation. (ECF 50 at 14.) But that argument supports Defendants' position—meaningful differences exist between SVFs—Plaintiffs plead nothing to account for those differences.

The cases Plaintiffs cite for support—namely, *Payne*, *Lacrosse*, and *Miller*—do not command a different result. For example, the court in *Lacrosse* found the plaintiff adequately pleaded that two alleged comparator funds were meaningful benchmarks where plaintiff alleged those comparators were similar in structure and risk tolerance to the challenged fund. *Lacrosse v.*

---

[9] Plaintiffs' hindsight argument is a red herring. While they allege crediting rates are determined "in advance," (ECF 50 at 13), they do so based on a quotation from the factual summary in *Wood v. Prudential Ret. Ins.*, No. 3:15-cv-1785, 2016 WL 5940946, at *1 (D. Conn. Sept. 19, 2016), in which the Court was describing the specific contract at issue there, not all SVFs generally. Indeed, while Plaintiffs claim "marketplace information is readily available before the decision" is made to renew an investment contract, (ECF 50 at 13), they notably do not rely on any prospectively-available "marketplace information" in the Amended Complaint that would be available prospectively (as they calculate "crediting rates" in hindsight, based on data in the Form 5500). Nor could they have, because as detailed in the EACR, crediting rates for synthetic GICs, like the SIF, are reset formulaically based on how the underlying investments perform (*which cannot be known prospectively*) and smooth gains and losses over time. ERISA Advisory Council, *supra* note 7.

9

*Jack Henry & Assocs., Inc.*, Case No. 23-cv-05088, 2024 WL 3564575, at *3–4 (W.D. Mo. July 11, 2024). The Amended Complaint is devoid of facts demonstrating those similarities.

Similarly, in *Payne v. Hormel Foods Corporation*, the court held that, to show a meaningful benchmark, a plaintiff "must not only identify . . . better performing options as comparators, but those alternative options must also be similar enough to raise a plausible inference that a prudent investor in like circumstances would not have selected the challenged investment." No. 24-cv-545, 2024 WL 4228613, at *6 (D. Minn. Sept. 18, 2024). *Payne* specifically found—contrary to Plaintiffs' arguments here—courts assessing the suitability of comparators on a motion to dismiss can consider the investments' "structure, objectives, strategy, and risk profile." *Id.*; *see also Miller v. AutoZone, Inc.*, No. 2:19-cv-02779, 2020 WL 6479564, at *7 (W.D. Tenn. Sept. 18, 2020) (finding plaintiffs met pleading burden where challenged SVF and comparator were both "(1) general account stable funds; (2) from the same investment provider; (3) with the same portfolio allocation; (4) the same duration; and (5) the same high-yield credit risk."). Defendants are not asking for a more rigorous standard than applied in *Hughes II*, *Albert*, or the out-of-circuit cases Plaintiffs rely on—Plaintiffs fail to meet the standards those cases applied.

## IV. PLAINTIFF'S MONITORING CLAIM (COUNT II) FAILS TO STATE ANY CLAIM FOR RELIEF.

For reasons detailed in Defendants' Motion and herein, because Count II is a derivative claim and Count I should be dismissed with prejudice, Count II should also be dismissed.

## V. CONCLUSION

Plaintiff has not pleaded sufficient facts to support the assertion that retention of the SIF fell outside the "range of a fiduciary's reasonable judgments." The Court should grant Defendants' motion and dismiss Plaintiff's Amended Complaint with prejudice.

10

324647260v.8

Respectfully submitted,

*s/ Thomas M. Horan*

Samuel M. Schwartz-Fenwick
Sschwartz-fenwick@seyfarth.com
Thomas M. Horan
Thoran@seyfarth.com
Mario D. Nimock
MNimock@seyfarth.com
**SEYFARTH SHAW LLP**
233 South Wacker Drive
Suite 8000
Chicago, Illinois 60606-6448

*Counsel for Defendants*

11

324647260v.8

**CERTIFICATE OF SERVICE**

I, Thomas M. Horan, an attorney, do hereby certify that I have caused a true and correct copy of the foregoing DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT to be presented to the Clerk of the Court for filing and uploading to the CM/ECF system, which will send notification of such filing to all counsel of record.

s/ *Thomas M. Horan*
Thomas M. Horan

12

324647260v.8