**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

Charles Clinton and Michael Ledbetter,

    *Plaintiffs,*

v.

Baxter International Inc. *et al.*,

    *Defendants.*

No. 25 CV 3368

Judge Lindsay C. Jenkins

**ORDER**

Baxter International Inc. sponsors a retirement plan ("the Plan") for its employees. Charles Clinton and Michael Ledbetter ("Plaintiffs"), who invested in one of the Plan's funds, filed this putative class action lawsuit against the company and its Investment Committee (together, "Baxter"). They allege that, as evidenced by its comparably low returns, Baxter mismanaged the Plan and therefore violated the Employee Retirement Income Security Act of 1974 ("ERISA"). 29 U.S.C. § 1101 *et seq.* Before the court is Baxter's second motion to dismiss Plaintiffs' two claims: (1) a breach of the fiduciary duty of prudence and (2) the wholly derivative failure to monitor fiduciaries. For the following reasons, the motion is granted.

## I.    Background[1]

The court's prior opinion details the pertinent facts. [Dkt. 39.] To summarize, Baxter sponsors a defined contribution plan for its employees—one of the nation's largest in both assets and participants. [Dkt. 45, ¶¶ 11–12, 25.] Upon enrollment, participants may direct contributions into any of eighteen investment options, including the Stable Income Fund ("the SIF"). [*Id.*, ¶ 44.] The SIF is a stable value fund ("SVF"), which are "conservative, fixed income investment vehicle[s] that provide[] a relatively stable rate of return." [*Id.*, ¶¶ 14, 66.] It invests in four synthetic guaranteed investment contracts ("GICs"), which provide guaranteed rates of return (crediting rates) during a specified period. [*Id.*, ¶¶ 14, 68.] Allegedly, these GICs "provided significantly lower rates of return than comparable stable value funds" from 2019 through 2023. [*Id.*, ¶ 14.]

Charles Clinton and Michael Ledbetter invested in the SIF during their employment with Baxter. [*Id.*, ¶¶ 21–22.] Though they lack knowledge of Baxter's decision-making process with respect to the Plan, they infer from the SIF's alleged

---

[1]    The court accepts as true plaintiff's well-pleaded allegations and draws all reasonable inferences in his favor. *Thomas v. Neenah Joint Sch. Dist.*, 74 F.4th 521, 522 (7th Cir. 2023).

underperformance (i.e. lower crediting rates) that Baxter failed to make decisions "based solely on the merits of each investment and what was in the interest of Plan's participants." [*Id.*, ¶¶ 60, 110.]

According to Plaintiffs, "identical stable value funds with higher crediting rates were available to the Plan, but were not selected by [Baxter]". [*Id.*, ¶ 77.] Across the entire Class Period (2019–2023), they identify two such funds with higher crediting rates each year: a fund in the Auto-Owners Life Insurance Company Retirement Savings Plan and one in the Shands Jacksonville Retirement Plan. [*Id.*, ¶ 78.] They also provide partial data for thirteen additional comparators. [*See id.*, ¶¶ 85, 88, 92, 95, 99.] From this, Plaintiffs calculate the following:

| Year | Baxter SIF Average Rate of Return | Comparator Average Rate of Return | Baxter SIF Percentage of Underperformance |
|---|---|---|---|
| 2019 | 2.77% | 3.94% | 29.70% |
| 2020 | 1.09% | 3.75% | 70.93% |
| 2021 | 1.92% | 4.19% | 54.18% |
| 2022 | 2.43% | 4.06% | 40.15% |
| 2023 | 2.68% | 3.85% | 30.39% |
| Average Underperformance during Class Period | | | 45.07% |

[*Id.*, ¶ 100.]

ERISA imposes strict fiduciary duties of loyalty and prudence on plan fiduciaries, which include "'a continuing duty of some kind to monitor investments and remove imprudent ones.'" [*Id.*, ¶ 7 (quoting *Hughes v. Northwestern Univ.*, 595 U.S. 170, 175 (2022)).] Inferring from the above data that, through flawed decision-making Baxter breached its fiduciary duties, Plaintiffs filed suit. [*Id.*, ¶¶ 64–65.]

## II.   Legal Standard

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a plaintiff's claims. To survive a motion to dismiss under Rule 12(b)(6), "a complaint's factual allegations 'must be enough to raise a right to relief above the speculative level.'" *Emerson v. Dart*, 109 F.4th 936, 941 (7th Cir. 2024) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). *See also Hughes v. Northwestern Univ.*, 63 F.4th 615, 628 (7th Cir. 2023) ("Plausibility is the basic test for pleadings on a motion to dismiss.") Although the court takes well-pleaded factual allegations as true, conclusory allegations are insufficient to avoid dismissal. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"In putative ERISA class actions, Rule 12(b)(6) motions are an 'important mechanism for weeding out meritless claims.'" *Albert v. Oshkosh Corp.*, 47 F.4th 570,

577 (7th Cir. 2022) (quoting *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014)). "Courts apply a 'careful, context-sensitive scrutiny of a complaint's allegations' to 'divide the plausible sheep from the meritless goats.'" *Id.* (quoting *Dudenhoeffer*, 573 U.S. at 425). "Courts must give due regard to alternative explanations for an ERISA fiduciary's conduct," but only "*obvious* alternative explanations must be overcome at the pleadings." *Hughes*, 63 F.4th at 629–630 (emphasis in original).

## III. Analysis

"[T]he ultimate outcome of an investment is not proof of imprudence." *Albert*, 47 F.4th at 579. Rather, "the prudence standard is processed-based, not outcome-based." *Martin v. CareerBuilder, LLC*, 2020 WL 3578022, at *4 (N.D. Ill. July 1, 2020). Therefore, clearing the pleading bar requires a plaintiff to allege "enough facts to '*infer* … that the process was flawed.'" *Matousek v. MidAmerican Energy Co.*, 51 F.4th 274, 278 (8th Cir. 2022) (citing *Davis v. Washington Univ. in St. Louis*, 960 F.3d 478, 482–83 (8th Cir. 2020)) (alterations in original). When speculating as much based on low returns, "[t]he key to nudging an inference of imprudence from possible to plausible is providing 'a sound basis for comparison—a meaningful benchmark.'" *Id.* (citing *Davis*, 960 F.3d at 484). *See also Albert*, 47 F.4th at 581 (citing Eighth Circuit authorities).

Plaintiffs acknowledge that they lack "actual knowledge of the specifics of Baxter's decision-making process with respect to the Plan, including Baxter's processes (and execution of such) for selecting, monitoring, and removing the Plan's investments." [Dkt. 45, ¶ 60.] They rely instead on so-called "reasonable inferences," rooted entirely in comparison. [*Id.*, ¶ 64] To survive the motion to dismiss, then, that comparison must be sound and meaningful. It is not.

Baxter's first motion to dismiss presented this court with the same question. The first complaint identified four to six comparators each year from 2019 to 2023—though none appeared across all five years. The absence of any consistent benchmark proved fatal. As the court observed,

> [i]t is axiomatic that 'the ultimate outcome of an investment is not proof of imprudence.' *Albert*, 47 F.4th at 579. Therefore, Clinton must show—at minimum—that there were year-in, year-out better-performing alternatives that cast doubt on the Investment Committee's process for monitoring and renewing its own funds. He provides none, only a rotating cast of other funds with higher crediting rates. This alone cannot support a claim of imprudence, or else—by a plaintiff's cherry-picking—all but a handful of funds each year would be subject to such attacks, even without a clear alternative.

3

[Dkt. 39, at 9.[2]] Notably, this decision did not turn on the features of the alleged comparators. Baxter had argued that, because the peer funds were SVFs of a different *type*, none was a true comparator. But pursuant to *Hughes*, this court rejected that argument, finding that Clinton alleged enough similarities, and that "any differences in degree … [were] questions for another day." [Dkt. 39 (citing *Miller v. Astellas US LLC*, 2021 WL 1387948, at *5 (N.D. Ill. Apr. 13, 2021)).][3] Still, no sound basis for comparison existed when the collective benchmark was itself so deficient.

Plaintiffs return with an update: two—and only two—year-in, year-out better-performing alternatives, *see* dkt. 45, ¶¶ 83–99, pulled from a "robust" marketplace where "many insurance companies offer[] GICs." [*Id.*, ¶ 76.] They insist that this amendment makes plausible the inference that Baxter's process was flawed. The court disagrees.

True, there is now a uniform benchmark. But again, Plaintiffs' obligation is *not* simply to point to better-performing investments and allege that, in comparison, "returns are too low." *Albert*, 47 F.4th at 581 (quoting *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 822 (8th Cir. 2018)). Rather, they must do so with enough substance to "nudg[e] an inference of imprudence from possible to plausible." *Matousek*, 51 F.4th at 278. They can't do that with just two comparators, at least not when they also allege that a "robust" marketplace exists with "many" comparators, dkt. 45 ¶ 76— some of whom, to be sure, they identify by name while omitting data from some or most of the Class Period. *See Baumeister v. Exelon Corp.*, at *6 (N.D. Ill. Sept. 29, 2023) ("Court cannot reasonably infer that the [] Fund performed worse than the proposed comparators when Plaintiffs fail to provide any information regarding more than half of those funds").

In the few instances that courts in this circuit have plausibly inferred flawed processes from comparative underperformance, they relied on some mix of (a) larger peer groups, (b) indices, and (c) more nuanced process allegations. *See, e.g.*, *Gaines v.*

---

[2]  Citations to docket filings generally refer to the electronic pagination provided by CM/ECF, which may not be consistent with page numbers in the underlying documents.

[3]  Baxter again argues that different SVFs "differ in their goals and their structure." [Dkt. 49, at 8.] Still, though, the court believes that *Hughes* established an existent but undemanding standard for comparison. *See England v. DENSO Int'l Am. Inc.*, 136 F.4th 632, 638 (6th Cir. 2025) ("The general allegation that comparable recordkeepers are 'equally capable of providing a high level of service' may have been enough for the *Hughes* court, but it is not specific enough for this one. That allegation explains neither what a 'high level of service' is and what services the plan utilized, nor whether those services were comparable to those provided to the asserted competitors.") Given that Plaintiffs provide—and, here, have fleshed out—a plausible "*reason* why this comparison is possible," *see Acosta v. Bd. of Trs. of Unite Here Health*, 2024 WL 3888862, at *7 (N.D. Ill. Aug. 21, 2024), more narrow distinctions would be better settled later in the litigation. *See Miller*, at *5 ("factual disputes regarding the aptness of the comparisons ... are inquiries that are inappropriate to resolve at this stage of the case").

*BDO USA, LLP*, 663 F. Supp. 3d 821, 830 (N.D. Ill. 2023) (indices and twenty peers); *Brown-Davis v. Walgreen Co.*, 2020 WL 8921399, at \*1 (N.D. Ill. Mar. 16, 2020) (indices and four peers); *Conlon v. N. Tr. Co.*, 2022 WL 23034017, at \*7 (N.D. Ill. Aug. 5, 2022) (indices and peers); *Dayak v. Reyes Holdings, LLC*, 2026 WL 881653, at \*7 (N.D. Ill. Mar. 31, 2026) (six commercial peers, plus expertise disparities between commercial and self-created suites); *Russell v. Illinois Tool Works, Inc.*, 2024 WL 2892837, at \*3 (N.D. Ill. June 10, 2024) (three peers, expertise disparities, and indices); *Miller*, 2021 WL 1387948, at \*2 (comparison to previously offered funds).

None has permitted such an inference from so few individual comparators. In fact, the court in *Gaines* explicitly observed that, "rather than providing two comparator funds as in *Matousek*, Gaines has provided twenty comparator funds—five for each alleged underperforming fund." *Gaines*, 663 F. Supp. 3d 821, 830 (N.D. Ill. 2023). *See also Laabs v. Faith Techs., Inc.*, 2023 WL 9321358, at \*8 (E.D. Wis. Aug. 30, 2023), *report and recommendation adopted,* 2024 WL 218418 (E.D. Wis. Jan. 19, 2024) ("by offering just a single comparator, the amended complaint lends itself to reasonable accusations of cherry-picking that further undermine any inference of plausibility").

Whether Plaintiffs even identified two is itself disputed. The identified "VALIC" fund in the Shands Plan, Baxter says, is mislabeled as an SVF. [Dkt. 49, at 10.] According to the Form 5500 that Plaintiffs rely on, the SVF in the Shands Plan is the "Lincoln Financial Stable Value Account," which Plaintiffs never mention. [*Id.* (citing Dkt. 49-2).] Plaintiffs, for their part, dispute only that the VALIC fund is materially different from the SIF, and they maintain that it's "irrelevant that there were other GICs in the Shands Plan" because "Plaintiff is the master of his complaint." [Dkt. 50, at 18–19.]

Even if there are similarities between the SIF and the VALIC fund, it is not *irrelevant* that Plaintiffs' own cited materials identify an SVF that the complaint ignores. [*See* Dkt. 45, ¶ 78.] Plaintiffs rely heavily on the idea that all SVFs are comparable, and so it stands to reason that the Shands Plan's lone SVF is a plausible comparator—if not a more apt one than the VALIC fund. Plaintiffs cannot explain away their decision to ignore it on master-of-his-complaint grounds, which is cherry-picking in different words. Again, their obligation is not to identify the few funds that outperformed the SIF; it's to plead enough context for the court to plausibly infer systemic imprudence. By openly and arbitrarily limiting an already-barebones sample, Plaintiffs negate the inference.

Meanwhile, the amended complaint still lists all but one of the comparators from the original complaint, and still with partial data. Of this group of thirteen (which excludes the AutoOwners Insurance Company Retirement Savings Plan, since it is now one of the two year-to-year comparators), seven are listed with data for just one year, and three have data for just two *non-consecutive* years. These unresolved

omissions also reinforce, rather than weaken, any argument that the meager list of two was cherry-picked. *See Baumeister*, at *5–6 (N.D. Ill. Sept. 29, 2023) (emphasizing missing data of alleged comparators).

The court's responsibility here is to "apply a 'careful, context-sensitive scrutiny of a complaint's allegations' to 'divide the plausible sheep from the meritless goats.'" *Albert*, 47 F.4th at 577 (quoting *Dudenhoeffer*, 573 U.S. at 425). The size of the comparator sample, and how it presents against the backdrop of the broader population, necessarily factors into that mandate. Accordingly, Plaintiffs' allegations show that the SIF may not have been best in class—nothing more.

## IV.     Conclusion

The motion to dismiss is therefore granted. Because Plaintiffs have already had one opportunity to amend, this dismissal is with prejudice.

Enter: 25-cv-3368
Date:   July 7, 2026

_____
Lindsay C. Jenkins

6